# EXHIBIT 1

# THE POLICY

If the insured dies while this policy is in force:

Catholic Family Life Insurance will pay the death benefit proceeds of this policy to the beneficiary, subject to the provisions herein. The death benefit proceeds are defined in Section IV. We also will provide the other rights and benefits of this policy.

READ YOUR POLICY CAREFULLY. This is a legal contract between you and Catholic Family Life Insurance. If there is a question, or if there is a claim, contact your representative or our Home Office.

RIGHT TO CANCEL. You may cancel this policy by delivering or mailing to us or the agent a written notice to Catholic Family Life Insurance, 1572 East Capitol Drive, Milwaukee, Wisconsin 53211, and returning the policy to us or our representative before midnight of the twentieth day after the date you receive the policy. Notice given by mail and return of the policy or contract by mail are effective on being postmarked, properly addressed and postage prepaid. We will return all payments made for this policy within ten days after we receive notice of cancellation and the returned policy.

Signed at our Home Office in Milwaukee, Wisconsin on the policy date.

Mary C. D'Amato
Secretary

David Lloyd
President

**20 YEAR LEVEL TERM LIFE INSURANCE**
**DEATH BENEFIT PAYABLE AT DEATH OF INSURED PRIOR TO THE EXPIRY DATE.**
**PREMIUMS PAYABLE AS SCHEDULED IN SECTION I AND II.**
**RENEWABLE TO AGE 70, CONVERTIBLE TO AGE 65.**
**PARTICIPATING.**

Catholic Family Life Insurance
1572 E. Capitol Drive • Milwaukee, WI 53211
1 800 227-CFLI

**A FRATERNAL BENEFIT SOCIETY**
**MILWAUKEE, WISCONSIN**

*Families are the heart of what we do.*

U-461-600

# TABLE OF CONTENTS

**Your policy contains the following sections:**


| | Page |
|---|---|
| POLICY DATA | 3 |
| TABLE OF TERM PERIODS AND PREMIUMS | 4 |
| DEFINITIONS | 5 |
| DEATH BENEFIT | 5-6 |
| Death Benefit Proceeds Defined | 5 |
| Suicide | 6 |
| Payment of Proceeds | 6 |
| PREMIUMS | 6-7 |
| Payment | 6 |
| Frequency | 6 |
| Grace Period | 6 |
| Nonpayment of Premiums | 7 |
| Change of Premium | 7 |
| Reinstatement | 7 |
| SURPLUS REFUNDS | 8 |
| Divisible Surplus | 8 |
| Surplus Refund Options | 8 |
| RENEWAL | 8-9 |
| Renewal Privilege | 8 |
| Renewal Term Periods | 8 |
| Renewal Premiums | 8 |
| Automatic Disability Renewal | 9 |

| | Page |
|---|---|
| CONVERSION | 9 |
| Conversion Privilege | 9 |
| Conversion Rules | 9 |
| Automatic Disability Conversion | 9 |
| SETTLEMENT OPTIONS | 10-11 |
| General | 10 |
| Conditions | 10 |
| Options | 10-11 |
| Settlement Option Agreement | 11 |
| Proof of Age and Survival | 11 |
| GENERAL PROVISIONS | 12-14 |
| The Contract | 12 |
| Membership | 12 |
| Owner | 12 |
| Change of Owner | 12 |
| Beneficiary | 13 |
| Change of Beneficiary | 13 |
| Assignment | 13 |
| Conformity | 13 |
| Incontestability | 13 |
| Misstatement of Age or Sex | 13 |
| Reserves and Maintenance of Solvency | 14 |
| Termination | 14 |

## SECTION 1
## POLICY DATA

AGE: 34 SEX: MALE

OWNER: MICHAEL LITTLEFIELD

PREMIUM CLASS: PREFERRED

TOTAL PREMIUMS AT ISSUE:

| | |
|---|---|
| ANNUAL: | $370.00 |
| SEMI-ANNUAL: | $188.70 |
| QUARTERLY: | $96.20 |
| MONTHLY: | $31.45 |

POLICY DATE: September 9, 2003

SURPLUS REFUND OPTION: On Deposit

EFFECTIVE ANNUAL INTEREST RATE FOR REINSTATEMENTS: 6.00%

Beneficiary: As stated in the application unless subsequently changed.

INSURED: MICHAEL LITTLEFIELD POLICY NUMBER: 99903082701

### SCHEDULE OF BENEFITS AND PREMIUMS

| BENEFITS DESCRIPTION | AMOUNT | MATURITY OR EXPIRY | ANNUAL PREMIUM | PREMIUM PAYABLE |
|---|---|---|---|---|
| 20 Year Level Term Renewable to age 70 | $300,000 | 09/09/2039 | $370.00 | 1 Year |

## SECTION II

## TABLE OF TERM PERIODS AND PREMIUMS

| TERM PERIOD | POLICY YEAR | CURRENT ANNUAL PREMIUM AS OF POLICY DATE | MAXIMUM GUARANTEED ANNUAL PREMIUM |
|---|---|---|---|
| 1 | 1 | $370.00 | $370.00 |
| 1 | 2-20 | $370.00 | $1,339.00 |
| 2 | 21-36 | $1,927.00 | $6,538.00 |

INSURED: MICHAEL LITTLEFIELD

POLICY NUMBER: 99903082701

# SECTION III

## DEFINITIONS

YOU or YOUR means the owner of this policy. The owner is as shown in Section I, Policy Data, unless later changed as provided in this policy. The owner may be someone other than the insured.

WE, OUR or US means Catholic Family Life Insurance.

The INSURED is the person named as the insured in Section I.

The PAYEE is any person who has the right to receive the proceeds according to the provisions of Section IX.

The BENEFICIARY is the person who has a right to receive the death benefit proceeds.

The POLICY is this basic document plus any amendments or endorsements, not including the application or any riders.

A RIDER is an attachment to the policy. It provides additional benefits.

The CONTRACT is this policy, together with the application and any riders. Our Articles of Incorporation and By-Laws also are part of the contract.

AGE means the age of the insured on his or her last birthday.

The POLICY DATE is the date this policy goes into effect. It is shown in Section I.

Policy YEARS, ANNIVERSARIES and MONTHS are measured from the policy date shown in Section I. Policy anniversary means the same month and day as the policy date for each year the policy remains in force. The first policy year begins on the policy date and ends at 11:59 p.m. on the day prior to the first policy anniversary. Subsequent policy years begin on a policy anniversary and end at 11:59 p.m. on the day prior to the next policy anniversary.

WRITTEN NOTICE means information received at our Home Office. Such information must be written, signed by you, and acceptable to us.

IN FORCE means the insured's life remains insured under the terms of this policy. This policy is in effect.

TERMINATE means the insured's life is no longer insured under any of the terms of this policy. This policy is no longer in effect.

# SECTION IV

## DEATH BENEFIT

### DEATH BENEFIT PROCEEDS DEFINED

Your policy has the following value which is determined on the date of the insured's death. These proceeds consist of:

a. the death benefit amount as shown in Section I; plus
b. the value of any surplus refunds left on deposit; plus
c. any premium paid beyond the calendar month in which the insured's death occurs; minus
d. any premium due.

### SUICIDE

If the insured dies by intentional self-destruction within two years (except one year when required by law) of the policy date, the only amount payable to the beneficiary will be the sum of the premiums paid.

### PAYMENT OF PROCEEDS

The death benefit proceeds will be paid to the beneficiary within thirty days after we receive due proof of the insured's death. The proceeds will be paid in a single sum unless a settlement option has been selected. All payments by us are payable at our Home Office.

Interest will accrue on death benefit proceeds from the date of the insured's death to the date of payment. The rate of such interest will be determined by us, but never less than the rate required by law.

## SECTION V

## PREMIUMS

### PAYMENT

The first premium is due and must be paid as of the policy date. All premiums after the first premium are payable on or before the date they are due and must be mailed to our Home Office or paid to an authorized representative. If you want a receipt for premium payment, we will give you one upon request.

The premiums for your policy are payable for the period shown in Section I or until the prior death of the insured.

### FREQUENCY

You may pay your premiums once a year, twice a year, four times a year, or twelve times a year. These premiums are shown in your policy as the annual, semiannual, quarterly or monthly premiums. Monthly premium payment is subject to the rules established by us.

Premium due dates are determined by the frequency you select:

a. Annual premiums are due on the first day of each policy year;
b. Semiannual premiums are due on the first day of each policy year and every 6 months thereafter;
c. Quarterly premiums are due on the first day of each policy year and every 3 months thereafter;
d. Monthly premiums are due on the same day in each calendar month as the day in the policy date.

You may change the frequency of your premium payment with our approval.

### GRACE PERIOD

You are allowed a grace period of 45 days for the payment of all premiums after the first premium. This means that if a premium is not paid on or before the date it is due, you may pay that premium during the 45-day period immediately following the due date. During this grace period your policy continues in force. If the insured should die during the grace period, the amount of any due and unpaid premium will be deducted from the proceeds.

## NONPAYMENT OF PREMIUMS

If any premium due is unpaid at the end of the grace period, your policy will terminate.

## CHANGE OF PREMIUM

The Schedule of Benefits and Premiums in Section I and Table of Term Periods and Premiums in Section II shows the actual annual premium for this policy on the policy date. The actual annual premium is the premium that is payable; it remains in effect unless changed in accordance with this provision.

Commencing on the first policy anniversary, we annually will review the actual premiums to be charged the ensuing policy year according to future expectations as to one or more factors, including:

a. mortality;
b. interest;
c. expenses; and
d. persistency.

The actual annual premium in effect on any policy anniversary during the first term period, however, may never be greater than the maximum guaranteed annual premium shown in Section II. The actual annual premium during any renewal term period may not be greater than the maximum guaranteed annual premium for that renewal term period, also as shown in Section II. Extra premiums charged due to a special premium class will not be subject to annual review. Premiums for riders attached to this policy are not subject to annual review.

No change in premium will occur because of a change in health of the insured. Any change in premium will not result in a change in the guaranteed benefits provided by this policy.

Any change in premium will be on a uniform basis for all insureds:

a. with the same age at issue;
b. of the same sex; and
c. in the same premium class,

and whose policies have been in force for the same length of time.

## REINSTATEMENT

Within five years after termination, you may restore your policy and any attached riders to a premium paying basis. We will require:

a. your written notice to reinstate the policy;
b. evidence of insurability satisfactory to us;
c. payment of all past due premiums on your policy;
d. payment of interest at the rate shown in Section I on all past due premiums.

# SECTION VI

# SURPLUS REFUNDS

## DIVISIBLE SURPLUS

Our Board of Directors determines annually if this policy will share in the divisible surplus accruing from participating polices. This share, if any, is called a surplus refund and is credited to this policy on the policy anniversary. As of the policy date, we do not expect any divisible surplus to accrue from this policy.

## SURPLUS REFUND OPTIONS

At your option, surplus refunds may be:

a. left on deposit at interest at such rate as our Board of Directors may from time to time declare, but never less than 3%; or
b. paid in cash; or
c. used to pay a premium on this contract.

Surplus refund accumulations may be withdrawn at any time upon written notice. Unless elected otherwise, Option a. will be applied.

# SECTION VII

# RENEWAL

## RENEWAL PRIVILEGE

If this contract is in force at the end of any term period, we will renew this contract for an additional term period. No evidence of insurability will be required.

## RENEWAL TERM PERIODS

Renewal term periods are shown in Section II.

Renewal term periods begin on a policy anniversary for the policy year shown in Section II. Renewal term periods end on the last day of the policy year shown in Section II. The final expiry date for this policy is shown in the Schedule of Benefits and Premiums in Section I.

All the benefits provided by this contract remain in force during a renewal term period, provided premiums are paid in accordance with policy provisions.

## RENEWAL PREMIUMS

To renew this contract you must pay a renewal premium on or before the end of the preceding term period or within a grace period of 45 days thereafter. We will notify you of the renewal premium amount. Renewal premiums thereafter are payable, and are subject to change, in accordance with the premium provisions in Section V. The guaranteed maximum annual renewal premiums for this policy, along with the annual premiums for any riders attached to this policy and any additional annual premiums charged because of a special premium class, are shown in Section II.

## AUTOMATIC DISABILITY RENEWAL

If, at the end of any renewal term period which is prior to the policy anniversary on or following the insured's 65th birthday, premiums are being waived in accordance with a disability waiver of premium benefit rider attached to this policy, this contract will be renewed automatically. In this event, any renewal premiums falling due during the continuation of such disability will be waived.

# SECTION VIII

# CONVERSION

## CONVERSION PRIVILEGE

At any time prior to the policy anniversary on or following the insured's 65th birthday, this policy may be converted to a new policy upon your written request, provided:

a. this policy is then in force, and
b. the insured is not then eligible for any disability waiver of premium benefit attached to this policy.

## CONVERSION RULES

The following rules will apply:

a. The new policy may be any permanent life insurance plan we then issue.
b. The death benefit amount of the new policy may not be less than the minimum amount we then issue for the plan selected or greater than the death benefit amount of this policy.
c. Evidence of insurability will not be required. If you request riders to be added to the new policy, satisfactory evidence of insurability for those riders may be required. If a disability waiver of premium rider is in effect in this contract and the insured is not disabled at the time of conversion, the new contract automatically will contain a waiver of premium rider, unless you decide otherwise.
d. The premium for the new policy will be determined according to the sex and age last birthday of the insured on the date of conversion, and according to the same premium class as this policy.
e. The policy date of the new policy will be the date of conversion.
f. The first premium on the new policy must be paid on or before the date of conversion.
g. The Suicide and Incontestability provisions of the new policy will be measured from the policy date of this policy.

## AUTOMATIC DISABILITY CONVERSION

If, on the policy anniversary on or following the insured's 65th birthday, premiums are being waived in accordance with a disability waiver of premium benefit rider attached to this policy, this policy will be converted automatically to a whole life policy with the same death benefit amount as this policy. A disability waiver of premium benefit rider also will be included automatically with the new contract. In this event, any premium on the new contract falling due during continuation of such disability will be waived.

The date of conversion will be the policy anniversary on or following the insured's 65th birthday. The other conversion rules set forth in the Conversion Rules provision above, as appropriate, will apply to this conversion.

# SECTION IX

## SETTLEMENT OPTIONS

### GENERAL

Normally at the insured's death the proceeds of the policy are paid in a single sum. However, prior to the insured's death, you may select any other form of settlement which may be mutually agreed upon with us, unless the previous choice provides otherwise.

If no settlement option has been selected at the insured's death, the beneficiary may make such a selection.

A person named to receive payments under an option is a payee under the option.

### CONDITIONS

A choice of a settlement option must be in writing in a form approved by us. Our consent is needed for a settlement option to be used for any payee under any of these conditions:

a. The payee is not a natural person.
b. The proceeds to be applied to the option are less than $5,000.
c. Each payment to the payee would be less than $100.

### OPTIONS

You may select one of the following options. In addition, you may select any other option, or combination of options, which is mutually agreeable.

OPTION 1. INSTALLMENTS FOR A FIXED PERIOD. We will pay a monthly, quarterly, semiannual or annual income for a fixed number of installments. The amount of each installment is based on a rate of interest of 3% per annum. If the payee dies before all installments have been paid, the remaining installments will be paid to the beneficiary of this settlement option. The amount of annual or monthly income per $10,000 of proceeds is:

**INSTALLMENTS**

| Years Payable | Annual | Monthly |
|---|---|---|
| 5 | $2,119.95 | $179.07 |
| 6 | 1,792.21 | 151.38 |
| 7 | 1,558.31 | 131.63 |
| 8 | 1,383.07 | 116.82 |
| 9 | 1246.93 | 105.32 |
| 10 | 1138.16 | 96.14 |
| 15 | 813.27 | 68.89 |
| 20 | 652.58 | 55.12 |

Amounts for other durations or frequencies will be furnished upon request.

OPTION 2. LIFE ANNUITY WITH PERIOD CERTAIN. We will pay a monthly income to one specified payee for a specific period of 10 or 20 years. We will continue the monthly payments after the expiration of the specified period as long as that payee is alive. If that payee dies before the expiration of the specified period, the remaining monthly payments will be paid to the beneficiary of this settlement option. The amount of monthly income per $10,000 of proceeds is:

**- - - LIFE ANNUITY WITH PERIOD CERTAIN - - -**

| | 10 Years | | 20 Years | |
|---|---|---|---|---|
| Age | Male | Female | Male | Female |
| 45 | $41.97 | $39.21 | $41.09 | $38.83 |
| 50 | 45.10 | 41.77 | 43.65 | 41.09 |
| 55 | 49.07 | 45.05 | 46.58 | 43.83 |
| 60 | 54.21 | 49.34 | 49.74 | 47.05 |
| 65 | 60.79 | 54.97 | 52.78 | 50.53 |
| 70 | 68.74 | 62.30 | 55.17 | 53.75 |

Amounts for other ages will be furnished upon request.

OPTION 3. INSTALLMENTS FOR A FIXED AMOUNT. We will make equal payments every one, three, six or twelve months as chosen. The payments will run until the proceeds applied together with interest at the rate of at least 3% a year on the unpaid balance are fully paid. The final payment will be any balance equal to or less than one payment. If the payee dies before all installments have been paid, the remaining balance, including accrued interest, will be paid to the beneficiary of this settlement option.

OPTION 4. PROCEEDS AT INTEREST. We will pay interest annually on the proceeds retained at the rate of at least 3% per annum. At the death of the payee we will pay the principal and any accrued interest to the beneficiary of this settlement option.

We may, at the time a settlement option is exercised under Options 1 or 2, provide a monthly income in excess of that guaranteed above.

In addition to the payment guaranteed under Options 3 and 4, excess interest may be paid or credited from time to time at such rate as our Board of Directors shall declare.

## SETTLEMENT OPTION AGREEMENT

We will issue a settlement option agreement on the date of settlement. It will show the rights and benefits of the payee under the settlement option elected. The agreement will include provisions regarding withdrawal rights and the payment of proceeds remaining at the death of the payee. So far as permitted by law, no amount payable under these settlement options shall be assigned or pledged or subject to the claims of creditors of the payee.

## PROOF OF AGE AND SURVIVAL

Before making payments under Option 2, we may require satisfactory proof of the age and sex of the person on whose life payments are based. If payment under an option depends on survival of the payee, we may require satisfactory evidence that the payee is living when the payment becomes due.

# SECTION X

## GENERAL PROVISIONS

### THE CONTRACT

This contract is issued in consideration of:

a. your application;
b. the payment of premiums; and
c. the policy and rider provisions.

The contract consists of:

a. this policy;
b. any additional benefits provided by rider;
c. the attached application;
d. any required medical examination or declaration of insurability; and
e. our Amended and Restated Articles of Incorporation and By-Laws, as amended from time to time.

No change in our Articles or By-Laws made after the policy date shall reduce or change the benefits promised in this policy.

All statements made in the application are representations and not warranties. We cannot use any statement to invalidate the policy nor to defend against a claim unless that statement is contained in the written application.

No agent or person other than the President or Secretary has the authority to change or modify this policy or waive any of its provisions.

### MEMBERSHIP

A Benefit Member is a practicing Catholic 18 years of age or more upon whose life a policy of insurance or annuity has been issued, or who receives a settlement agreement benefit by virtue of such insurance. This membership cannot be transferred. The membership rights are stated in our Amended and Restated Articles of Incorporation and By-Laws. This policy may be continued in force even if membership in our society is terminated.

### OWNER

The owner is the person named in Section I, Policy Data. The rights and privileges contained in this policy may be exercised only by you, the owner. This includes the right to change the ownership. You can exercise those rights by making written request to us.

### CHANGE OF OWNER

The owner may transfer all ownership rights and privileges to a new owner. The transfer must be in writing on a form satisfactory to us. The change will be effective when we receive it. Any payment made or any action taken or allowed by us before the change is recorded will not prejudice us. If not provided otherwise, a change of owners will not affect the interest of any beneficiary.

## BENEFICIARY

The beneficiary:

a. will receive the proceeds when the insured dies;
b. is named in the application for this policy; and
c. may be changed by the owner. The change is subject to the terms shown in the Change of
d. Beneficiary provision.

If not otherwise provided:

1. The interest of any beneficiary who dies before the insured will pass to any other beneficiaries according to their interests.
2. If no beneficiary survives the insured, the proceeds will be paid in one sum to the owner, if living. If the owner is not living, the proceeds will be paid to the owner's estate.

## CHANGE OF BENEFICIARY

The owner may change the beneficiary designation:

a. while the insured is alive; and
b. if the prior designation does not prohibit such a change.

A change will revoke any prior designation. No change is effective until we record it. Once recorded, the change is effective as of the date you signed it. We have the right to require that you send us this policy so we can record the change.

## ASSIGNMENT

An assignment of this policy will not be binding on us unless:

a. it is in writing; and
b. it is received by us at our Home Office.

We will not be responsible for the validity of any assignment. We reserve the right to require this policy for endorsement of any assignment.

## CONFORMITY

This policy is subject to the laws of the state in which this policy is delivered. If part of it does not follow that law, it will be treated as if it does.

## INCONTESTABILITY

Except for nonpayment of premiums, we cannot contest this policy after it has been in force during the lifetime of the insured for two years (one year in Missouri and North Dakota) from the policy date.

If this policy is reinstated, it will be contestable during the lifetime of the insured for two years (one year in Missouri and North Dakota) from the effective date of reinstatement. Any contest will be based only on statements made in the application for reinstatement and attached to this policy.

## MISSTATEMENT OF AGE OR SEX

If the issue age or sex of the insured is not correctly shown in Section I, we will adjust the death benefit. The amount will be based upon what the premiums paid would have purchased according to the insured's correct issue age and sex.

## RESERVES AND MAINTENANCE OF SOLVENCY

The reserves held on your policy are computed according to the standards prescribed by law. They are based on the 1980 Commissioners Standard Ordinary Table, age last birthday, sex distinct, smoker distinct. They are computed according to the Commissioners Reserve Valuation Method, 4.5% interest, continuous functions. If, for any reason at any time, we do not have sufficient assets to cover the reserves, the amount of such deficiency shall be equitably apportioned to all outstanding policies. The amount thus apportioned to your policy shall either:

a. be paid in cash by you; or
b. be an indebtedness against your policy at a rate of interest of 6% per annum.

## TERMINATION

The policy will terminate:

a. when we receive written notice to terminate; or
b. when the insured dies; or
c. if any premium due is unpaid at the end of the grace period; or
d. on the expiry date shown in Section I.

Catholic Family Life Insurance

*Families are the heart of what we do.®*

# Amendment of Application

It is hereby understood and agreed that the application forming a part of Policy Number 99903082701 amended as follows:

**I have reviewed pages 2 and 3 of the application in this policy. I agree that the information obtained by the home office in a telephone interview or by a paramedical facility is correct.**
**All statements made in any application and medical forms attached to the policy are subject to all the general provisions listed in "The Contract" section of the policy.**

A copy of this Amendment and Alteration of Application, the signed original of which is to be recorded at the Home Office of the Society, shall be attached to and shall apply to any policy issued thereon.

I certify that the health of the person proposed for coverage has not changed since the date of the original application.

SIGNATURE OF APPLICANT/OWNER ______________________________

SIGNED AT ______________________________
(City and State)

DATED ______________________________

WITNESSED BY ______________________________

**TWO COPIES ARE TO BE SIGNED, DATED AND WITNESSED;**
**ONE COPY IS IN THE POLICY**
**ONE COPY IS TO BE RETURNED TO THE HOME OFFICE**

U-465-1100

1572 E. Capitol Drive • P.O. Box 11563 • Milwaukee, Wis. 53211-0563 • 414/961-0500 • Toll Free 800/227-2354 • FAX 414/961-2059 • mail@cfli.org

*The oldest Catholic fraternal in the U.S.—Established 1868.*

**Karen Davidson**
**Attorney At Law**

January 8, 2007

Patricia A. Sullivan, Esquire
Partner
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, Rhode Island 02903

Re: Littlefield v. Catholic Family Life Insurance

Dear Pat:

I am writing regarding to the depositions of your clients, Kim Ingram, the 30 (b)(6) designee and Cathy Hartwig. I am not able to take their depositions on the days you proposed since I am fully booked and I would like the depositions here in Providence, not in Milwaukee. You indicated that you would like to finish before January 31st. The days I currently have available are January 11th, January 15th after 11:00 a.m., January 19th, January 22nd after 10:00 a.m., January 24th, January 25th, January 26th, January 29th and January 31st. I understand that you have not determined whether Cathy Hartwig is the 30(b)(6) designee. Consequently I will notice her deposition specifically and it is enclosed herewith.

I am waiting to hear back from Ms. Littlefield regarding her deposition and the pending question.

Kindly respond to my January 4th letter.

Very truly yours,

Karen Davidson

KD/sdr

**One Ship Street, Providence, RI 02903**
**401-453-6200; Fax 401-331-6110**
**kldavidsonjd@yahoo.com**