# 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COLLEEN LITTLEFIELD
Plaintiff
vs. C.A. No. 06-157
CATHOLIC FAMILY LIFE INSURANCE COMPANY
Defendant

VIDEOTAPED DEPOSITION OF DONALD DEMERS
Thursday, December 28, 2006
10:00 a.m.
Law Office of Karen Davidson
One Ship Street
Providence, Rhode Island

---------- Ellen Zappia, RPR ----------
Capitol Court Reporting, Inc.
931 Jefferson Boulevard, Suite 2003
Warwick, Rhode Island 02886
(401) 739.3600





APPEARANCES:

LAW OFFICE OF KAREN DAVIDSON
Karen Davidson, Esq.
One Ship Street
Providence, Rhode Island 02903
for Plaintiff

LAW OFFICES OF VINCENT D. MORGERA
Vincent D. Morgera, Esq.
Turks Head Place, Suite 1110
Providence, Rhode Island 02903
for Plaintiff

EDWARDS ANGELL PALMER & DODGE LLP
Patricia A. Sullivan, Esq.
2800 Financial Plaza
Providence, Rhode Island 02903
for Defendant

ALSO PRESENT:
Colleen Littlefield
William White, videographer
Bert Tomassone, videographer





INDEX

WITNESS: DONALD DEMERS


| EXAMINATION BY: | PAGE: |
|---|---|
| Ms. Davidson | 4 |
| Ms. Sullivan | 175 |
| Ms. Davidson | 202 |

| PLAINTIFF'S EXHIBITS MARKED: | PAGE: |
|---|---|
| 1 Amended notice of deposition | 4 |
| 2 EMSI Work Order | 86 |
| 3 Life Underwriting Guidelines | 88 |
| 4 CFLI 2003 Application for Membership and Life Insurance | 99 |
| 5 Illustration of Proposed Coverage for Michael Littlefield | 114 |
| 6 CFLI Comparative Information Form | 140 |
| 7 Document entitled "Death Claims" | 142 |
| 8 Memo to Kim from Steph | 142 |
| 9 CFLI 1997 Application for Membership and Life Insurance | 143 |
| 10 Letter from CFLI to Michael Littlefield, dated August 23, 2004 with attachments | 147 |







| | |
|---|---|
| 11 Application of Funds From Old Contracts to New Business | 150 |
| 12 Risk Selection Life Underwriting Guidelines | 152 |

| DEFENDANT'S EXHIBITS MARKED: | PAGE: |
|---|---|
| A Preferred Underwriting Guidelines | 177 |
| B Agent's Statement | 186 |
| C Documents Bates numbered CFL000564 to CFL000585 | 192 |

**Q. So there's a huge reduction from year one to year two.**
A. Yes.
**Q. Is that true of all the policies that you sell?**
A. Yeah. They're all the same thing.
**Q. How do you service your policies?**
MS. SULLIVAN: Objection. If you understand what she means you can answer.
A. I'm not quite sure.
**Q. When you sell a policy to someone, how do you continue to service that person?**
MS. SULLIVAN: Objection.
A. It's too broad. I can't answer that.
**Q. After you've sold a policy to someone, do you continue to keep in touch with them?**
A. Do I keep in touch with them. Yes. Sometimes I do.
**Q. And do you have a diary that reminds you to follow up with people or how do you do that?**
A. No, I don't have a diary or anything like this.
**Q. When you say "sometimes I do," which ones do you follow up with and which ones do you not?**



MS. SULLIVAN: Objection.
A. It's too broad. I can't answer that.
**Q. What percentage of your clientele do you follow up with typically?**
A. I'm not quite sure what you want on that.
**Q. I want the percent of people whom you follow up with after you've sold a policy.**
A. I don't have that information at all.
**Q. You have no best estimate of that?**
MS. SULLIVAN: Objection.
A. Can you repeat that question again.
**Q. Do you have any best estimate of the -- the percentage of people whom you follow up with after you've sold them a policy?**
A. If there's any kind of correspondence, which I get a copy of all correspondence. In other words, they write to the home office and they say change beneficiary, okay, and then I get a copy of that letter, then I'll follow up on things like this. But to actually call up a person and saying that is there anything wrong with you, you know, everything else, I really don't do that because people don't like it. But I'll follow up on correspondence. Depends what it is, you know.



**Q. How do you get your clients?**
A. Through direct mail.
**Q. Direct mail by whom to whom?**
A. Direct mail from me to the...
**Q. Who do you send these direct mailings to?**
A. We send it to a zip code area. So many in that zip code and we send it out to everybody who has it.
**Q. Do you have a particular area where you sell policies?**
A. No.
**Q. Where do you get your leads?**
A. The leads itself is provided by the zip codes.
**Q. Are brochures left anywhere in particular for people to look at?**
A. Do I do that?
**Q. Does anybody do it at CFLI in Rhode Island?**
A. No.
**Q. So brochures are not left in churches for people to look at?**
A. No.
**Q. Who assigns and sets up your appointments?**
A. I do.



**Q. So you don't have anything to do with the folks in the office when you're contacting people?**
A. No.
**Q. Do you remember Michael Littlefield?**
A. Yes, I do.
**Q. And how do you remember him?**
A. When is that, the first time or the second time --
**Q. Let's start with the first time.**
A. Okay. How do I recognize him?
**Q. When did you first meet him?**
A. I met him basically at the -- when was it. Up his house that he had, introduced him -- myself to him.
**Q. How did you happen to go to his house?**
A. I -- he responded to a direct mail response, which I had the address and I met him over at his -- I went to his -- I called him up and got an appointment, went over to his house and that's when I first met him.
**Q. And you have a particular memory of meeting him the first time.**
A. Yes, I do.
**Q. Can you describe him to me, please.**

A. I can't describe him. I can't actually describe how he looks or anything like this.

**Q. How do you remember him?**

A. I recognize him -- I remember there was a big fish tank behind -- the table we sat on there was a big fish tank right there and I remember I -- and I recognize -- I remember what he did for a living.

**Q. Did you look at documents before you came here today?**

A. What do you mean "documents"?

**Q. Pieces of paper, documents.**

MS. SULLIVAN: Today?

MS. DAVIDSON: Yes. Before he came here today.

A. Yes.

**Q. And are all those documents documents you've provided to me?**

A. Yes.

**Q. And did those documents refresh your recollection of Michael Littlefield?**

MS. SULLIVAN: Objection. Are you asking about his physical appearance?

MS. DAVIDSON: I'm asking about any



recollection he's got --

MS. SULLIVAN: Okay.

MS. DAVIDSON: -- of Michael Littlefield.

A. Repeat the question again.

MS. DAVIDSON: Could you repeat it.

(Last question was read back by the reporter.)

MS. SULLIVAN: And I objected. I think what she means is did the documents help you to remember better --

THE WITNESS: Yes.

MS. SULLIVAN: -- in any way.

A. Yes.

**Q. What else do you remember about the first meeting?**

A. What did I remember.

MS. SULLIVAN: Objection. Do you want to hear inch by inch through the first meeting? I mean what --

MS. DAVIDSON: I want to know what he remembers about the first meeting with Michael Littlefield.

MS. SULLIVAN: Just very generally.

MS. DAVIDSON: Generally.



MS. SULLIVAN: Okay. Just very generally, what do you remember about the first meeting?

A. Okay. I remember that Mrs. -- Mrs. Littlefield was there and she came in late because she was jogging. I remember that. I remember the fishbowl -- the fish tank, the big fish tank in the back. That was a big... because we sat in the kitchen or the dining area, I'm not quite sure. And he talked a lot about his job, what he did. He was self-employed. Who he worked for, where I worked for. Kind of interested in that. And his education. We talked a little bit about that. And he talked about -- and he talked about how he needed life insurance and what he wanted -- we didn't get into detail of what he wanted for life insurance. And that's about it.

**Q. Did you make suggestions as to what type of life insurance would be appropriate for a man his age?**

A. Yeah. Well, he had a direct mail response which -- so he knew the products and the amount of money and he says let me start off with 50,000 because I can't -- couldn't afford or he couldn't



see right away what he could buy, and he left it -- so we left it like that.

**Q. And did you have him sign papers when you were there?**

A. What do you mean "papers," like?

**Q. Any kind of an application or information?**

A. Yes. When I was there the first time we completed an application and -- and also on Mrs. Littlefield too.

**Q. On both of them?**

A. Yes.

**Q. How long was Mrs. Littlefield at the meeting?**

A. That first meeting? How long. Well, she was there mostly all the meeting. She came in a little late. She was jogging or something.

**Q. How long do you think you spent there that day?**

A. Approximately an hour, hour and a half.

**Q. Is that the time of your typical appointment?**

A. Yeah.

**Q. Can you tell me the procedure. After you go to someone's home and they apply for insurance, what**

33

happens next when they're applying for life insurance?
A. Right.
MS. SULLIVAN: Is this in '97?
**Q. This is in '97.**
A. Okay. '97. What happens at that point?
**Q. Yeah.**
A. Let me see. They apply for life insurance, they give me the first month check and everything else. If everything is all right. And it's sent to the underwriting department and the underwriter does underwrite it and then after -- then after it's underwritten, and if it's approved, then after it goes to the policy issue department and it's sent to me after for delivery.
**Q. It goes to the what department?**
A. Policy issue.
**Q. Oh, policy issue. Okay. And is the policy issue department in Rhode Island or is that in Milwaukee?**
A. This is all Milwaukee.
**Q. And after the policy is issued you bring it to the customer?**
A. Yes.

34

**Q. Is that what you did on the case of Michael and Colleen Littlefield in '97?**
A. Yes, I did.
**Q. And both of them obtained a $50,000 policy, is that correct?**
THE WITNESS: Was that correct?
MS. SULLIVAN: If you remember. If it would help you to refresh your recollection with a document, maybe we can do that. But do you remember?
A. Yeah, it was $50,000 each. That's our minimum amount is 50,000.
**Q. And in the case of Michael and Colleen Littlefield, did you ask for authorization to obtain medical records?**
A. This is '97?
**Q. '97.**
A. Did I ask for medical records?
**Q. Yes.**
A. I don't ask for medical records. It's done by the underwriting office at Catholic Family Life.
**Q. So you don't have them sign anything saying I authorize you to release medical records?**
MS. SULLIVAN: I think that's a

35

different question. You asked him if he asked for medical records. Now you're asking him whether he got an authorization --
MS. DAVIDSON: You're right.
MS. SULLIVAN: -- for medical records.
MS. DAVIDSON: You're right.
**Q. Did you ask them for an authorization for obtaining medical records?**
A. Yeah. Part of the application is the authorization already built in.
**Q. And who decides whether or not to send for medical records?**
A. That's done by the home office.
**Q. You don't have anything to do with that?**
A. No.
**Q. Is the procedure that you've just described to me the same as the procedure you used in 2003?**
MS. SULLIVAN: Objection.
A. No, it isn't.
**Q. And how is the procedure different?**
A. Because the one in 2003, he applied for 300,000. So the underwriting medical requirements are more -- are larger or more required -- more underwriting requirements are requested.

36

**Q. Is the type of form that you make out with him any different?**
MS. SULLIVAN: From '97 to '93?
MS. DAVIDSON: No, to '03.
MS. SULLIVAN: Sorry. Sorry.
A. The application is different. It changed.
**Q. The application changed?**
A. Yeah.
**Q. How did the application change?**
A. How did it change. I'm not quite sure.
**Q. What in the application changed?**
A. The -- I'm trying to figure it out. I know right now -- the application we are using right now changed. I'm not quite sure if that changed or not.
**Q. Did you provide me with the applications from '97 and '03?**
A. Yes.
**Q. So by looking at those, I would be able to tell all of the changes between the two of them?**
A. Yes, you could.
**Q. Did you get a new sort of a booklet instructing you to do different kinds of examinations between '97 and '03 or questioning?**
A. Yes.

Q. Did you provide that booklet?
A. Yes, I did.
Q. I don't remember seeing that booklet. Could you tell me exactly what it is so that I can request it?
MS. SULLIVAN: You have it.
Is this what you're talking about, Mr. Demers?
THE WITNESS: Yeah.
Q. That's the change? All right.
And could you read me the name on that booklet.
A. Life Underwriting Guidelines.
Q. When did that come out?
A. I'm not quite sure.
Q. What booklet did you use for '97 or pamphlet or instructions?
A. It was a different one.
Q. Did you provide that?
MS. SULLIVAN: I don't believe it was asked for.
A. No.
MS. DAVIDSON: Anything related to the application of Michael Littlefield.



MS. SULLIVAN: Well, I thought this case was focused on the 2003 application but...
MS. DAVIDSON: It actually says both.
MS. SULLIVAN: I'll review the request --
MS. DAVIDSON: And I would like that.
MS. SULLIVAN: -- and if it's covered, and if it's still in existence we'll provide it.
MS. DAVIDSON: Thank you.
Q. How many times did you meet with Michael Littlefield over the years?
A. Basically four times.
Q. Could you tell me what those four times were.
A. In '97 -- in '97 when the policy was issued -- application was taken first time. Then in '97 again when the policy was delivered. Then later on in 2003 when we took the application again, and 2003 when I delivered the policy.
Q. Those are the only meetings you had?
A. Yes.
Q. Did Michael Littlefield purchase any other type of insurance from you or was it solely these life insurance policies?



A. Solely life insurance.
Q. And did all of the meetings take place at Michael Littlefield's home?
A. Yes.
Q. And was Colleen Littlefield there for all of the meetings?
A. Now, which meeting?
Q. You've told me about four meetings. You've told me she was there for the first '97 meeting when you took the application information. Correct?
A. Yes.
Q. Was she there for the '97 meeting when you delivered the policy?
A. Yes.
Q. Was she there for the '03 meeting when you took another policy application?
A. No.
Q. Was she there for the delivery of the '03 policy?
A. No.
Q. What notations did you make, other than making out the forms, when you went to the '97 meeting for Michael Littlefield?
MS. SULLIVAN: Objection.



Q. Do you keep a notebook?
A. I'm not sure...
Q. In 1997, when you went to get information from the Littlefields for a policy, did the information you took down get taken down solely on the forms of the insurance company, or did you also keep a pad of paper or a notebook with information?
A. Well, I kept a diary of what my appointment book was.
Q. When you say you kept a diary of your appointment book, would that be simply the time of the appointment and the place of the appointment?
A. Yes.
Q. It didn't have any information with regard to the actual application or history or medicals or anything, did it?
A. No.
Q. How about in '03 when you went to take the policy application, did you simply make out the form as provided to you by CFLI or did you take other information down in any kind of a notebook or papers?
A. Did I take -- repeat that. I'm not quite sure what you want.

break?
A. No.
Q. Now, I'd like to go back to the '03 meeting that you said occurred at Mr. Littlefield's grandmother's house. You have said that no one was there at that meeting, correct?
A. Yes.
Q. Are you certain of that?
A. Yes, I am.
Q. You don't remember Colleen Littlefield sitting at the table with you and Mr. Littlefield?
A. No.
Q. You don't remember Colleen Littlefield interjecting and having a heated discussion with you with regard to the policy change from 60,000 to 300,000?
A. No.
Q. You don't recall Colleen Littlefield telling you that it was ridiculous that Michael had to take another medical examination if he had already done one?
A. No. He did not have one for the first one.
Q. Didn't the first insurance policy have a two-year wait period?



A. Yes, it did.
Q. So, in fact, his wait period was over after the first policy was issued in '99, correct?
A. Yes.
Q. And after the 2003 policy was issued by you he had to begin a new wait period, correct?
A. Yes.
Q. And you don't recall Michael and Colleen discussing with you that they did not think it was fair that he'd have to endure another wait period?
MS. SULLIVAN: Objection. Compound. Are you asking him whether he had that conversation with either, both? I'm not sure how that question is.
Q. Do you recall any conversation at the 2003 home visit with Michael Littlefield -- with either Michael or Colleen --
A. Colleen was not there at that time.
Q. I understand that that's your assertion. I'm asking you, do you recall any argument with regard to the wait period in 2003?
A. No.
Q. Do you recall Elizabeth being there, that she is the child, in 2003?



A. No, I don't.
Q. Don't you recall Michael Littlefield saying he wanted to up his insurance policy because he had had a child?
A. Did he mention it?
Q. Don't you recall Michael Littlefield saying he wanted to up his insurance policy because he had had a child?
A. No, I don't.
Q. Don't you recall being introduced to Elizabeth?
A. No, I don't.
Q. Don't you recall Michael and/or Colleen Littlefield telling you they wanted to up the insurance policy because her brother-in-law had died very young without adequate insurance?
A. Do I remember him saying that?
Q. Him or her.
A. No, I don't.
Q. Do you recall Michael Littlefield getting up and having to let the dog out?
A. No.
Q. And you've already told us you don't recall the dog being in the room. Is that right?



A. Yeah. Yes.
Q. Did Colleen Littlefield, to your knowledge, apply for the $10,000 increase on her $50,000 policy when Michael did?
A. That I'm not quite sure on.
Q. You indicated that the process for taking applications in 2003 has changed now. What is the current process for taking applications?
A. The process is the same thing, except that you go from 50,000 or $60,000 to $300,000 it's completely different.
Q. What is the change?
A. Well, the only thing is because of the higher amount they require a paramedical examination, urine, blood work and -- that type of -- that -- they require additional information.
Q. Has the form itself that CFLI provides you with changed from 2003 to the present?
A. I'm not quite sure. I know you have the forms. If you compare one to the other you can see if there's any difference.
Q. But you don't recall -- you don't know?
A. Not that I know of. I'm not quite sure unless I look at them both.

identification)

Q. I'm passing you Exhibit 9. Can you tell me what this is.

A. This is the '97 application for $50,000; 20-year term.

Q. For Michael Littlefield?

A. Michael Littlefield, yeah.

Q. And that's dated November 5th, '97 at the top?

A. Yep.

Q. And looking at the bottom it says policy date February 3rd, '98. Why is there such a long period in between, any idea? Do you know why there's a three-month period between application and issuance?

A. No, I don't.

Q. Are you the agent who prepared this policy?

A. Yes.

Q. And can you tell me, looking at the rest of the pages of Exhibit 9, what pages you prepared.

A. Okay. 465, 466, 467, 468, 469, 29 -- 470, 471, 472, 473 and 474.

Q. So you prepared this entire packet yourself, correct?



A. Yes. I realize -- now I'm thinking about why there's such a big difference in time and everything else, is that when the two applications -- I noticed something inside the notes. When the application was taken it was taken on Michael and Colleen, okay, the application. Normally what we do is if a husband and wife takes out applications we kind of hold the application and deliver to both at the same time. On Colleen's, because of her medical history, they waited a while. We had trouble getting a statement from her doctor. So his was approved right away. Just stayed with her -- with her --

Q. I understand.

A. -- until she's approved. Then they moved on.

Q. Okay. It looks as though CFL 466, which says, "Underwriting information," that was made out by you in '97, correct?

A. Right. Yeah.

Q. But in '03 you did not make out the underwriting information?

A. No. Applications completely changed.

Q. And when did they change, Mr. Demers?



A. I can tell a little bit...

MS. SULLIVAN: What are you looking for?

THE WITNESS: The 2003.

MS. SULLIVAN: The application?

THE WITNESS: Any page will do. I can tell by the numbers at the bottom. If I can read it.

MS. SULLIVAN: Do you see the bottom, though?

THE WITNESS: No, I can't. I thought I could tell by the numbers at the bottom, but I can't.

Q. Does U 465400 mean anything to you?

A. Yeah. But it doesn't -- I thought there would be a date next to it or something.

Q. Okay.

A. There isn't.

Q. Do you know why the procedure changed completely?

A. Because the new privacy act.

Q. So as I understand it, when you did the 2003 Michael application, you went and had him fill out that one-page application.

A. Right.



Q. But none of the medical information other than what was on that one page, is that correct?

A. Yes.

Q. And it is the underwriting department that's responsible for filling out all of the medical information, is that correct?

A. Yes.

Q. And the -- I take it the nurse who does the examination.

A. Yeah. That's considered part of the underwriting department.

Q. You've told me originally that you had only done the two life insurance policies for Michael Littlefield, is that correct?

A. Yes.

(Plaintiff's Exhibit 10, was marked for identification)

Q. I'm going to show you what's been marked Plaintiff's 10 and ask you if you recognize that. Do you recognize Plaintiff's 10?

MS. SULLIVAN: Give him a minute.

A. Okay.

MS. SULLIVAN: Go ahead.

Q. Do you recognize that, sir?

185

when I deliver the policy I have to have the amendment signed saying that they have agreed to the information -- the information on page two and three is correct, and I agree that the information upon the home office and telephone interview is correct and the paramedical facility is correct too.
**Q. And did you go over this form with Mr. Littlefield?**
A. No. Actually going over the form itself, I told him -- I showed him the form. I says why don't you read it and if you want you can read it in detail. And he glanced at it and that's about it.
**Q. Did he look at the two attached pages that he is directed towards?**
A. Yes.
**Q. After he reviewed it, did he sign it in your presence?**
A. Yes, he did.
**Q. And is that his signature which appears on the line that says "signature of applicant/owner"?**
A. Yes.
**Q. And did you sign the form also?**
A. Yes.
**Q. Where were you when you -- you and he went**

186

**over these pages?**
A. Outside of his house delivering the policy.
**Q. Other than Mr. Littlefield and yourself, was anyone else present?**
A. No. Not that I know of. I don't know about the dog.
**Q. I'd like to direct your attention, stay with Exhibit 3, to the very end of the exhibit where your calendar pages appear.**
A. Okay.
**Q. For the appointment in -- on August 25 of 2003, what time of day was that appointment?**
A. Oh, 7:00 o'clock.
**Q. 7:00 in the evening or 7:00 in the morning?**
A. 7:00 in the evening.
**Q. When you met with Mr. Littlefield to deliver the policy, did you also deliver to him the check?**
A. For $39 and something? Yes, I did.
**Q. Yes. And did you tell him what that check was for?**
A. Well, he already signed the papers. He knew what it was for.
**Q. Did he understand, based on what you said to him --**

187

A. Yes.
**Q. -- that that policy was cancelled?**
MS. DAVIDSON: Objection. Foundation, speculation.
**Q. You can answer.**
A. Okay. When I delivered the policy to him we started off by -- I started off by giving him the check the first thing because that's a check, and I told him that was the cancellation of it -- the cancellation of the thing. He knew what it was about so I just didn't -- I didn't have to explain it to him.
MS. SULLIVAN: Could you mark this, please.
(Defendant's Exhibit B, was marked for identification)
**Q. Mr. Demers, I've passed you a document that we've marked Exhibit B. First of all, take a moment to look at this two-page document, which is Bates numbered 14 and 15. Can you identify these pages?**
A. Yeah. This is supposed to -- these are part of the replacement form. It's an agent statement which has to be completed every time there's a replacement form.

188

**Q. And when you say "replacement form," replacement for what?**
A. Replacing the one policy with another policy.
**Q. Why is this form filled out?**
A. Because it was replacing the -- it was replacing the '78 form with the 2003 form.
**Q. Did Mr. Littlefield sign the form?**
A. Yes, he did.
**Q. Did he sign it in your presence?**
A. Yes, he did.
**Q. And is that his signature that appears on the second page where it says "signature of applicant"?**
A. Yeah.
**Q. And you signed the form too?**
A. Yes.
**Q. And I think you said that there -- there was, pardon me, more to this form, is that correct?**
A. Yes, there is.
**Q. Have you seen the other pages of this form during your testimony today?**
A. Yes, but I don't know where it is.
**Q. Because I'm not sure myself whether it's in**

any of the documents that have already been marked, I think I'm going to mark another document.
A. Here it is.
**Q. Found it. Good. Where is it?**
A. Life Underwriting Guidelines, number three and it's 535.
**Q. And 536?**
A. Yeah.
**Q. Did you provide Mr. Littlefield with an opportunity to review this two-page document before he signed it on page 536?**
A. Yes. But he just glanced over it quickly and then he just signed it.
**Q. Directing your attention on page 535 to the second paragraph there, the first sentence where it says, "Whether it is to your advantage to replace your existing insurance coverage, only you can decide." Do you see that, sir?**
A. Right.
**Q. Did you discuss with Michael Littlefield the fact that it was his decision whether he wanted to cancel the $50,000 policy?**
A. Yes.
**Q. And what did he tell you?**



A. He told me that it was -- he just told me that he wanted to cancel that one and he just wanted one policy.
**Q. Did he tell you why he wanted to cancel rather than keep the old policy and add onto it?**
A. Well, you can't add onto it. You gotta get another policy for -- for 250,000 and keep the other -- the rest -- keep the 60,000 in force.
**Q. Did you discuss that alternative with him?**
A. I think the reasons why he did it is that from '97 -- it was a ten-year term. And it was -- it was a ten-year term, which will expire in the year 2007. So he figured that by doing that he won't -- it won't really do anything.
MS. DAVIDSON: Let the record reflect that Attorney Morgera and Colleen Littlefield are leaving now.
**Q. Mr. Demers, I'd like to go back to the 1997 policy, and I think there's a copy of it somewhere in these materials.**
MS. DAVIDSON: There is. Which number is it?
MS. SULLIVAN: Plaintiff's 9.
**Q. Was Mr. Littlefield present during your**



**discussions with Mrs. Littlefield of her policy application?**
A. Back in '79?
**Q. Yes.**
A. '97, I'm sorry.
**Q. '97. Sorry.**
A. Yes, she was. She came in a little later. I remember that. She was jogging. Or going for a walk or something like that.
**Q. And I think you testified earlier that her policy was at -- ultimately issued at substandard rates?**
A. Right.
**Q. And that was because of a health issue?**
A. Yes.
**Q. Was that health issue disclosed during the appointment where Mr. Littlefield was present?**
A. Yes.
**Q. Did you have any conversation with Mr. or Mrs. Littlefield, while Mr. Littlefield was present, regarding what would happen in connection with follow-up investigation because of the disclosure of the heart problem?**
A. Can you repeat that, please.



**Q. During that meeting with Mr. and Mrs. Littlefield.**
A. Right.
**Q. Did you explain to them what would happen as a result of her disclosure of a heart problem?**
A. Yes.
**Q. What did you say?**
A. I told her we'd do an application, then after they would have to give -- medical records would have to be researched or sent to us, then after we could -- they could do a couple of things. They could issue as is, they could change money, and charge extra money or they could decline the policy, which those three alternatives I talked to her about. She was pretty well I think aware already concerning another company, concerning her alternatives, and coming to find out they issued -- how they -- extra money and it was affordable for her to take it.
MS. SULLIVAN: Do you need to change the tape? Okay.
THE VIDEOGRAPHER: We're going off the record. Off the record.
(A discussion was held off the record.)

THE VIDEOGRAPHER: This is tape four.
Back on the record.
MS. SULLIVAN: Could I have that marked, please.
(Defendant's Exhibit C, was marked for identification)
**Q. Don, would you take a look at what we have marked as Exhibit C, which is Bates ranges 564 through 585, and tell me whether you can identify that as coming from one of your files or constituting complete contents of one of your files. I should frame the question that way. Take a moment.**
**(Pause.)**
A. Okay.
**Q. Can you identify this document, Exhibit C?**
A. Yeah. All these are -- looks like they're Kathleen (sic) Littlefield's underwriting files of her files.
**Q. And are these your files that you located in your office in response to the subpoena?**
A. Yes.
**Q. After Mrs. Littlefield's medical problem was identified, did she receive letters notifying her**



**that doctors had been -- that inquiry had been made of one or more physicians?**
A. Can you repeat that question a different way. I didn't quite understand it.
**Q. After you met with Mr. and Mrs. Littlefield and you took the application and Mrs. Littlefield identified a health problem, was -- first of all, let me ask a threshold question, as far as you know, was inquiry made directly of her physicians regarding her health circumstances?**
A. Yes.
**Q. And when the inquiry was sent to her physicians, did she receive a letter notifying her that inquiry had been made of her physicians? And I direct your attention to page 579 of that document.**
A. Yes.
**Q. And is page 579 a true copy of a letter that you maintained in your file, sent to Mrs. Littlefield informing her that her physicians had been asked to provide medical records?**
A. Yes.
**Q. In connection with Michael Littlefield's 2003 application, to your knowledge did the underwriting process include going to his physicians**



and getting copies of actual medical records?
A. No.
**Q. Why not?**
MS. DAVIDSON: Objection. Speculation.
**Q. You can answer.**
A. No. Because there was no need for it. There was no medical history.
**Q. And what is your basis for saying that there was no medical history? What do you mean by that?**
A. Meaning there was no substantial medical history which they would make a -- they would charge extra premiums for or anything like this.
**Q. And is that based on the information that Michael Littlefield provided to you, to the nurse, and to the teleunderwriter?**
MS. DAVIDSON: Objection. Speculation.
A. Yes.
**Q. And I apologize if I already asked you this question. When Mrs. -- Mrs. Littlefield ultimately did receive the $50,000 policy, correct?**
A. Right.
**Q. But it took a long time, right?**
A. Yes.
**Q. And when the policy issued it was for a**



**higher premium, is that right?**
A. Yes.
**Q. When Michael Littlefield signed the application form, which has been marked as Exhibit 4, did you direct his attention to the portion of the form that's in the big box above the signatures, and specifically I am interested in the second sentence which says, "All responses are true and complete to the best of my (our) knowledge and belief"? Did he have an opportunity to read that before he signed it?**
MS. DAVIDSON: Objection. Asked and answered.
A. I'm not quite sure if he read it or not.
**Q. Did you give --**
A. I gave him permission -- not permission. I gave him the -- I told him if you want you can just read it. Take the time he wants to read it, but actually reading sentence and sentence, I don't think he did.
**Q. And did you give him that opportunity to read it before he signed it?**
A. Yes.
MS. DAVIDSON: Objection.

foundation --
A. No.
MS. DAVIDSON: -- already asked and answered.
**Q. Mr. Demers, do you have an understanding of what type of insurance company Catholic Family Life is?**
A. Yes.
**Q. What is that?**
A. It's a fraternal benefit organization. We're a nonprofit organization. We're the oldest fraternal in the United States, at 136 years old. We're in 26 states, and as being a fraternal benefit, we're a nonprofit organization and that general idea.
**Q. Mr. Demers, I don't recall whether we went over this or not, but I just want to go back to Exhibit 11, which is somewhere in this file. Here it is. Exhibit 11. And I'd like to direct your attention to the third page of Exhibit 11, page 22.**
A. Page 20?
**Q. Page 22. Is this a copy of the check that you delivered to Michael Littlefield at the same**



**time that you delivered the policy?**
A. Yes. See, it says right on the corner surrender refunds.
**Q. And what does that mean, "cash surrender proceeds"?**
A. The amount of money that she -- he cashed -- well, it's not really cash surrendering. It says cash surrender proceeds, because they stop the policy. It was a term policy which they stopped.
**Q. And --**
A. It should be really term proceeds -- term refund proceeds.
**Q. When you provided this check to Mr. Littlefield, did you tell him that these were the proceeds of the policy that was now terminated?**
A. Yes. When I delivered the other policy I brought it with me and I just gave it to him at the same time.
**Q. And you told him that the other policy was now terminated.**
A. Yes.
MS. SULLIVAN: This may be all I have.
(Pause.)
MS. SULLIVAN: That's all I have.



MS. DAVIDSON: I have a few questions.
FURTHER EXAMINATION BY MS. DAVIDSON:
**Q. Could you look at Exhibit B, which is a two-page document. I think it is right there. And looking at Exhibit B, I can't read it. Could you read it for me. It says, "primary reasons for my recommending the proposed replacement of existing insurance by new life policy -- new life" --**
A. "Does not meet" -- "does not meet the insured's needs."
**Q. You don't give the reason why it doesn't meet his needs, do you?**
A. No.
**Q. You don't say anything about his young daughter or the fact that his brother-in-law just died without leaving adequate insurance coverage, do you?**
A. No.
MS. SULLIVAN: Objection. Foundation.
**Q. And then it says, "My recommendation as to the existing insurance is that it be lapsed." So what does that mean?**
A. It's a term policy and there's no cash value to it. There's nothing like this. So lapse,



meaning just let it go.
**Q. And that's what he did, right?**
A. Right. After the first one was -- was approved and he had it.
**Q. After the second one was approved?**
A. Second one, yeah. Sorry.
**Q. And then further down it says, "The existing life insurance does not meet the insured/buyer's needs for insurance because" and I can't see what that says.**
A. "Needs more life insurance."
**Q. And underneath it says, "specific reasons must be given." Is that a specific reason?**
A. Half and half.
**Q. But it doesn't say why he needed more life insurance, right?**
A. Right.
**Q. With regard to Exhibit A, that would be this one.**
A. Okay.
**Q. You indicated to your counsel that you had asked Mr. Littlefield all of the questions on Exhibit A, is that correct?**
A. Yes.

Catholic Family Life Insurance

Application for Membership and Life Insurance to:
Catholic Family Life Insurance, 1572 E. Capitol Drive Milwaukee, Wisconsin 53211 • (800)2
*(Please print in black ink.)*

Proposed Primary Insured ✓ Proposed Other Insured ____
Name: MICHAEL LITTLEFIELD
Street:
City: M
Home P
Social S
Previous

REDACTED

Occupation: [illegible] State of Birth: RI
Birthdate: ___ thday: 34
Where can y... REDACTED ...ation?
Phone: ___
Best Days: M T W TH F
Best Times: ANY DAY ☐ a.m. ☑ p.m.

Amount remitted with this application in exchange for the Society's receipt: $ 96.30
(See Receipt and Conditional Life Insurance Agreement)
Primary Beneficiary: COLLEEN LITTLEFIELD
Relationship to Proposed Insured: WIFE
Social Security Number: REDACTED
Contingent Beneficiary:
Relationship to Proposed Insured: [illegible]
Social Security Number:

Is this policy to replace any existing insurance or annuity(ies)? ☑ Yes ☐ No
If yes, indicate company names(s) [illegible]
Is the Proposed Insured a U.S. Citizen? ☑ Yes ☐ No
Has the Proposed Insured used tobacco in any form in the past 12 months? ☐ Yes ☑ No
Is the Proposed Insured Catholic? ☑ Yes ☐ No
Parish:

Face Amount: $ 300,000 ☐ Tobacco ☑ Non-Tobacco
Plan of Insurance: 20 YR PREF Term
Mode: ☐ Ann. ☐ Semi-Ann. ☑ Quarterly ☐ EFT ☐ 1 ☐ 15
(UL only) Option: ☐ #1 Level ☐ #2 Increasing
UL planned premium: $___

Has the Proposed Insured ever been told he/she had or been treated for diabetes, cancer, heart disease, alcoholism, drug abuse, or high blood pressure? ☐ Yes ☑ No
Has the Proposed Insured ever had insurance or reinstatement refused, postponed, limited, or offered on a substandard basis? ☐ Yes ☑ No

Riders: ☐ WP (OL3 or term) ☐ Waiver of Monthly deduction (UL)
☐ Waiver of Planned Premium (UL) $___ ☐ ADB (UL or OL3 only) $___ ☐ GIR(UL or OL3)$___
☐ Term Rider (Primary Insured) $___ ☐ Acceleration of Death Benefit Rider (UL)
☐ Term Rider (Other Insured) $___ (Complete a separate application for each person.)
☐ Children's Term ___ Units (Complete a separate application for each child.)

Authorization to obtain and disclose information: I (we) have read all the questions and answers in the application. All responses are true and complete to the best of my (our) knowledge and belief. No coverage will be in effect until: a full application has been signed by the Proposed Insured; and a policy has been issued: and the full first premium has been received by the Society; and any amendments are signed. Any coverage will be subject to the terms and conditions of the policy.

I (we) have received the notification about the Federal Fair Credit Reporting Act and the Medical Information Bureau.

I AUTHORIZE the following to release information about me to Catholic Family or its reinsurers. Those authorized include a physician, medical practitioner, hospital, clinic, other medical or medically related facility, insurance or reinsuring company, the Medical Information Bureau, a consumer reporting agency, and/or employers. I UNDERSTAND that this information may include diagnosis, treatment, and prognosis with respect to any physical or mental condition and/or treatment, and other non-medical information concerning me. I authorize all sources, except MIB, to give records or knowledge to any agency employed by Catholic Family Life Insurance. I authorize them to collect and transmit such information. I UNDERSTAND they will use the information obtained through this Authorization to determine eligibility for insurance. Any information obtained will not be released to any person or entity EXCEPT to reinsuring companies, or other persons or organizations performing business or legal services with my application. The Society may release this information when lawfully required, or as I further authorize.

I KNOW that I may request a copy of this Authorization. I AGREE that a photographic or faxed copy of this Authorization shall be as valid as the original. I ACKNOWLEDGE that I received the "Notice to Applicant" form. I AGREE this Authorization shall be valid for one year from the date shown below.

Signed at (city and state) N. KINGSTOWN RI — [signature] Signature of Proposed Insured (if age 18 or over)

Date signed (Month/day/year) 7/25/02 — ___ Signature of Owner/Applicant, if other than Proposed Insured

Representative: To the best of your knowledge, will this policy replace or change any existing life insurance or annuity certificate(s)
☑ Yes ☐ No

[signature] Signature of Representative — DONALD C. DEMERS 1074 Print Representative's name and number

POLICY DATE POLICY NUMBER SERIAL NUMBER

Catholic Family Life Insurance

*Financial security with the fraternal touch - since 1868.*

To Agent: This form to be used where the existing and proposed policies are written by the <u>same</u> company.

IMPORTANT NOTICE REGARDING REPLACEMENT OF LIFE INSURANCE

Our agent is recommending that you purchase a life insurance policy from us. In connection with this purchase you have indicated, either as a result of his recommendation or at your own initiative, that you may terminate or change your existing policy issued by our company or that you may obtain a loan from our company against your existing policy to pay premiums on the proposed policy. Any of these actions is a replacement of life insurance. This notice must be given to you along with a Comparative Information Form which includes preliminary information comparing the proposed policy with your existing policy to be replaced. Please read this notice and the Comparative Information Form carefully.

Whether it is to your advantage to replace your existing insurance coverage, only you can decide. It is in your best interest, however, to have adequate information before a decision to replace your present coverage becomes final so that you may understand the essential features of the proposed policy and of your existing insurance coverage.

To this end, we are required to give you a Policy Summary including complete information on the proposed policy no later than when the policy is delivered to you. In addition, we will at your request furnish you with additional information concerning your existing policy. You may want to discuss your purchase with other advisors. The information you receive will be of value to you in reaching a final decision.

If either the proposed policy or the existing insurance you intend to replace is a participating policy, you should be aware that dividends may materially reduce the cost of insurance and are an important factor to consider. Dividends, however, are not guaranteed.

1572 East Capitol Drive • Milwaukee, Wisconsin 53211 • 414/961-0500 • FAX 414/961-2059

You should also recognize that a policy which has been in existence for a period of time may have certain advantages to you over a new policy. If the policy coverages are basically similar, the premiums for a new policy may be higher because rates increase as your age increases. Under your existing policy, the period of time during which our company could contest the policy because of a material misstatement or omission on your application, or deny coverage for death caused by suicide, may have expired or may expire earlier than it will under the proposed policy. Your existing policy may have options which are not available under the policy being proposed to you or may not come into effect under the proposed policy until a later time during your life. Also, your proposed policy's cash values and dividends, if any, may grow slower initially because the company will incur the cost of issuing your new policy. On the other hand, the proposed policy may offer advantages which are more important to you.

If you are considering borrowing against your existing policy to pay the premiums on the proposed policy, you should understand that in the event of your death, the amount of any unpaid loan, including unpaid interest, will be deducted from the benefits of your existing policy thereby reducing your total insurance coverage.

After we have issued your policy, you will have ten days from the date the new policy is delivered to you to cancel the policy issued on your application and receive back all payments you made to us.

**CAUTION**

If, after studying the information made available to you, you do decide to replace the existing life insurance with our company with a new life insurance policy issued by our company, you are urged not to take action to terminate or alter your existing life insurance coverage until after you have been issued the new policy, examined it and have found it acceptable to you. If you should terminate or otherwise materially alter your existing coverage and fail to qualify for the life insurance for which you have applied, you may find yourself unable to purchase other life insurance or able to purchase it only at substantially higher rates.

I have received and read a copy of the Replacement Notice.

(Signed) [signature] Date 8-25-03

Catholic Family Life Insurance

Application for Membership and Life Insurance to:
Catholic Family Life Insurance, Milwaukee, Wisconsin 53211
*(Please print in black ink.)*

Today's Date: 11/5/97
Agent No.: 1014

**INFORMATION REGARDING PROPOSED INSUREDS**

Birthdate: REDACTED ate/Country of Birth: RI Age Last Birthday: 28
Sex ☑M ☐F Height: 5 9 Weight: 160 Marital Status: MARRIED
Social Security Number REDACTED one Number: REDACTED

Legal Name - First: Michael Middle: — Last: Littlefield
Previous Name(s):

Address (number and street or P.O. box, state, zip): REDACTED
Previous Address Within Two Years (check if none): ☐

Owner (if not proposed insured — does not apply to minors): Relationship:
Address:
Premium Notices and Correspondence to: ☑ Insured ☐ Owner Social Security No. / /

**2. OCCUPATIONAL DATA**

Occupation of Primary Proposed Insured: Home cleaner Insurance (self employed)
Business Phone:
Occupation of Spouse if Applying:
Employer's Name and Address - Primary Proposed Insured: ME Dealer Dr Services —
Employer's Name and Address - Spouse:

**3. OTHER FAMILY MEMBERS TO BE INSURED, IF APPLICABLE**

| Name: | Relationship to Ins'd: | Sex: | Age: | Date of Birth: | Social Security No.: | Hgt./Wgt.: | Birthplace: |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

PLAINTIFF'S EXHIBIT 9 12-28-06 JL

**4. LIFESTYLE UNIVERSAL LIFE**

☐ Tobacco ☐ Non-Tobacco
Face Amount: $________
Death Benefit Option: ☐ #1 (level) ☐ #2 (increasing)
Additional Benefits Applied for:
☐ Waiver of Monthly Deduction
☐ Waiver of Planned Premium Benefit Rider $________
☐ Accidental Death Benefit Rider $________
☐ *Guaranteed Insurability Option Rider* $________
☐ Additional Term Rider $________(primary insured)
☐ Children's Term Rider________(units)
☐ Acceleration of Death Benefit Rider
☐ Other Insured Rider (complete item #3)
Other Insureds (including spouse):

| Name | Amount | Tob. | Non |
|---|---|---|---|
| 1 | | ☐ | ☐ |
| 2 | | ☐ | ☐ |
| 3 | | ☐ | ☐ |

**5. TRADITIONAL LIFE**

☐ Tobacco ☑ Non-Tobacco
Face Amount: $ 50,000 Base Plan 20 YR term
Additional Benefits Applied for:
☐ Waiver of Premium
☐ Accidental Death Benefit, (excluding term plans) $________
☐ Children's Insurance Rider________(units)
☐ *Guaranteed Insurability Rider Amount* $________
☐ Term Rider, Primary Insured Amount $________ Duration ________

Dividend Option: ☐ Accumulated - On Deposit
☐ Paid Up Life Additions
☐ ________

**6. PREMIUM AND BILLING INFORMATION**

Mode (check one) ☐ Annual ☑ Semi-Annual ☐ Monthly PAC ☐ 1 ☐ 15 Include With Policy No. ________
Total Premium Quoted $ 42.59 Total Premium Collected $ 42.59 UL Planned Premium $________ UL Lump Sum $________

**7. BENEFICIARY DESIGNATION** (Beneficiaries in each class equally, unless otherwise indicated.)

| Primary | % | S.S. # | Relationship | Contingent | % | S.S. # | Relationship |
|---|---|---|---|---|---|---|---|
| Colleen Littlefield | | REDACTED | wife | REDACTED | | REDACTED | step daughter |
| | | | | | | | |
| | | | | | | | |

Amendments and Corrections (For Home Office Use Only)

CFL000465

| Policy Date | Policy Number | Serial Number |
|---|---|---|
| 2-3-98 | 97111101 | 65609 |

U-416-595

**LIFE INSURANCE IN FORCE OR PENDING** ☐ YES ☑ NO (If yes, complete below.)

| ame of Proposed Insured | Company | Amount |
| --- | --- | --- |
| | None | |
| | | |

**UNDERWRITING INFORMATION - PART 1**

ROPOSED INSURED(S) MUST COMPLETE ALL QUESTIONS. ALL "YES" ANSWERS MUST BE EXPLAINED AND EFERENCED IN THE BOX AT THE BOTTOM OF THIS PAGE!

las or does the person(s) proposed for insurance coverage: YES NO

1.) Ever engaged in or expect to engage in any of the following:

a. Aviation activities as a pilot or crew member? If yes, attach Aviation Questionnaire. ☐ ☑

b. Skin or Scuba Diving; motor vehicle or motor boat racing; mountain climbing, professional rodeo competition; skydiving; other hazardous activities? If yes, attach Hazardous Activities Questionnaire. ☐ ☑

2.) a. Drink alcoholic beverages? If yes, how much per week? ☐ ☑
(One drink = 12 oz. beer, 4 oz. wine, or 1 oz. hard liquor.) Amount:____________

b. Now or ever been a user of heroin, cocaine, marijuana, or illegal, restricted or controlled substance, except as prescribed by a physician? If yes, attach Drug and Alcohol Questionnaire. ☐ ☑

c. Ever had or been advised by a physician, practitioner, or court of law to have treatment for alcohol, drug, or substance abuse? If yes, attach Drug and Alcohol Questionnaire. ☐ ☑

3.) a. Had insurance or reinstatement refused, postponed, limited, offered, or quoted on a rated or substandard basis? ☐ ☑

b. Will this insurance replace or change any existing life insurance or annuity contract? ☐ ☑

c. Within the past 5 years, applied for or received disability or Worker's Compensation Benefits? ☐ ☑

4.) a. Driver's License No.____ REDACTED ____ State RI

b. Ever been cited for driving while intoxicated (DWI), or driving under the influence (DUI)? ☐ ☑

c. Ever been cited for any other driving violation in the past 3 years? If yes, please provide full details. ☐ ☑

d. Ever been convicted in a court of law for any reason? ☐ ☑

5.) Have you lived or traveled outside the United States within the past 12 months or do you plan to travel or live outside of the United States within the next 12 months? ☐ ☑

6.) Are you a U.S. citizen, or do you have permanent residence status? ☑ ☐
If not a U.S. citizen, please provide I-151 (green card) number ____________

7.) Do you now use or have you ever used tobacco or nicotine in any form? If yes, indicate the type of tobacco used; (cigarettes, pipe, cigar, chewing tobacco, other) and if applicable, the date you stopped. ☐ ☑

8.) a. Have a history in parents, brothers or sisters of mental illness, diabetes, heart, kidney or liver disease, high blood pressure, stroke or cancer? If yes, name person(s), relationship(s), age(s), condition(s), and age when disease began. ☐ ☑

b. Give name, cause and age at death of father, mother, brother(s), sister(s) if deceased____________

9.) Full name and complete address of personal physician; the date, reason last seen, and diagnosis:
No personal physician at this time

| Question Number | Details |
| --- | --- |
| | |
| | |
| | |
| | |

CFL000466

## 0. UNDERWRITING INFORMATION - PART 2

COMPLETION OF QUESTIONS 1-8 IS REQUIRED IN ALL CASES. ANY "YES" ANSWERS MUST BE FULLY EXPLAINED AND REFERENCED IN THE BOXES AT THE BOTTOM OF THIS PAGE.

AIDS TEST RESULTS OBTAINED AT AN ANONYMOUS COUNSELING AND TESTING SITE DESIGNATED BY THE STATE EPIDEMIOLOGIST OR AT A SIMILAR FACILITY IN ANOTHER JURISDICTION ARE CONFIDENTIAL AND NEED NOT BE DISCLOSED. NONE OF THESE APPLICATION QUESTIONS SHOULD BE INTERPRETED AS ASKING ABOUT AIDS, UNLESS THE QUESTIONS SPECIFICALLY MENTIONS AIDS.

| Has the person(s) proposed for insurance coverage: | YES | NO |
|---|---|---|
| 1.) Ever had or now have symptoms of or been diagnosed as having a disorder, disease or persistent discomfort of the following systems: | | |
| a. Respiratory (lungs, bronchi, trachea, etc.) such as, but not limited to, TB, asthma, emphysema, bronchitis, shortness of breath? | ☐ | ☑ |
| b. Circulatory (heart, blood, arteries, veins, etc.) such as, but not limited to, high blood pressure, heart attack, chest pains, murmur? | ☐ | ☑ |
| c. Digestive (throat, esophagus, stomach, intestine, liver, gall bladder, etc.) such as, but not limited to, ulcer, colitis, cirrhosis, hemorrhoids, bleeding? | ☐ | ☑ |
| d. Nervous (brain, nerves, etc.) such as, but not limited to, paralysis, stroke, fainting, dizziness, epilepsy, convulsions, recurring headaches? | ☐ | ☑ |
| e. Musculo-skeletal (muscles, bones, joints, spine, etc.) such as, but not limited to, neck/back problems, fracture, arthritis? | ☐ | ☑ |
| f. Genito-urinary (kidney, bladder, reproductive organs, etc.) such as, but not limited to, kidney stones, infection, bleeding, male or female disorders? | ☐ | ☑ |
| g. Glandular (thyroid, pancreas, adrenal, lymph glands, etc.) such as, but not limited to, abnormal growth or function, including diabetes? If yes to diabetes, attach Diabetic Questionnaire. | ☐ | ☑ |
| 2.) Ever had or now have impaired sight, hearing, ear or eye disorder, venereal disease, hernia, or skin disease? | ☐ | ☑ |
| 3.) Ever had or now have any mental, nervous, psychological, or emotional condition or disorder, such as, but not limited to, anxiety, depression, or nervous breakdown? | ☐ | ☑ |
| 4.) Now have or ever been diagnosed or treated for cancer, tumor, cyst, or growth? | ☐ | ☑ |
| 5.) Gained or lost more than 10 pounds in the past year? Amount ______ Cause ______ | ☐ | ☑ |
| 6.) Within the past 5 years: (Refer to disclaimer concerning AIDS test results at top of page) | | |
| a. Had any other impairment, sickness, injury, surgery not described above or any diagnostic test such as x-ray, EKG, lab tests? | ☐ | ☑ |
| b. Had a physical examination? If yes, list the reason for and results below. | ☐ | ☑ |
| c. Been advised to have or do the following which was <u>not completed</u> 1) any diagnostic test; 2) surgery; 3) hospitalization? | ☐ | ☑ |
| d. Been on, or now on, prescribed diet or medication? | ☐ | ☑ |
| 7.) Ever had any past or present complications of pregnancy (such as C-section) or now pregnant? | ☐ | ☑ |
| 8.) a. Been treated or diagnosed by a member of the medical profession as having any disorder of the blood or immune system, including Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐ | ☑ |
| b. Ever been treated by a member of the medical profession as having the AIDS (HTLV-III) virus or tested positive to FDA licensed blood tests? | ☐ | ☑ |

| Question Number | Condition, Diagnosis, Injury Illness, Disorder (Name any operation performed) | Dates of Treatment Hospitalization, Recurrences | Types of Treatment/ Medications | Degree of Recovery | Name(s), address(es) and telephone number(s) of doctors, hospitals, or clinics involved |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

CFL000467

J-416-595

## 11. AGREEMENT (Check one only)

☑ Catholic Family Life Insurance conditional coverage receipt was given for this life insurance plan. I acknowledge that I have read the receipt provided and understand its terms, conditions and limitations. I understand that I will not receive any insurance coverage for my money unless a policy is issued as applied for.

☐ No conditional coverage receipt was given for this insurance plan. I acknowledge that I have not paid any premium for this insurance. I understand that this insurance is not in effect and that the first premium must be paid upon delivery of the policy.

I hereby apply for insurance in the amount on the plan, and at the rate stated in this application. I agree that the entire contract consists of this application, the policy, the statement of insurability, any medical examination statements, the Articles of Incorporation and By-Laws of the Society.

IT IS AGREED...

1) All statements in this application (pages 1, 2, and 3) are to the best of my knowledge and belief complete and true.

2) All information given to the agent in response to the questions in this application has been recorded correctly.

3) No information acquired by any agent shall bind the Society unless set out in writing in this application.

4) No agent can accept risks or modify policies, or waive any rights or requirements of the Society.

5) Unless otherwise provided in a conditional receipt bearing the date of the application, no liability exists until a contract is delivered, accepted by the owner and the first payment made. This must occur during the lifetime and insurability of the applicant under this contract.

6) The contract applied for shall take effect on the later of the date requested by the applicant, or the approval date of the application from the Society at the Home Office.

7) When you accept the contract issued on this application, you are approving and ratifying any corrections, additions, or changes made by the Society. We do not make changes in the plan of insurance or payment without your written consent.

The proposed insured acknowledges receipt of notices relating to the Medical Information Bureau and/or the Fair Credit Report Act. THIS AGREEMENT (or a copy of it) authorizes any person or business listed as follows to give Catholic Family Life Insurance, Milwaukee, Wisconsin, or its reinsurers, any records or knowledge of me or my health to a) any licensed physician, medical practitioner, hospital, clinic, or other medical or medically related facility; b) any insurance company; or c) the Medical Information Bureau or other agency employed by Catholic Family Life Insurance.

**THE APPLICATION IS A LEGAL DOCUMENT. READ IT CAREFULLY.**
**THE POLICY COULD BE RESCINDED IF QUESTIONS ARE NOT ANSWERED COMPLETELY AND TRUTHFULLY.**

If you wish, you may return the policy within
20 days after delivery for full refund.

Dated at West WARWICK (City) RI (State) on 10 (Month) 8 (Day) 97 (Year)

[signature] Signature of Proposed Insured — [signature] Donald P. Demers Signature of Agent — 1017 Agent No.

Signature of Other Insured — Signature of Owner (if other than insured)

CFL000468

## GENT REPORT

1.) a. Is the proposed insured a practicing Catholic? ☑ Yes ☐ No (If no, explain in remarks.) b. Parish is ______

2.) Are you related to proposed insured by blood or marriage? ☐ Yes ☑ No My relationship is ______

3.) How long have you known the proposed insured? JUST MET 4.) Council or Branch No. ______

4.) Did you see the proposed insured at the time this application was completed? ☑ Yes ☐ No (If no, explain in remarks.)

5.) Do you know of any information regarding the health, habits, character, avocations, hazardous activities, sports, or environment of the proposed insured which might affect insurability? ☐ Yes ☑ No (If yes, explain in remarks.)

6.) Has the proposed insured ever applied for a CFLI policy that was declined, postponed, or not taken? ☐ Yes ☑ No

7.) To the best of your knowledge, does the policy applied for replace any existing insurance or annuity? ☐ Yes ☑ No
If yes, have you complied with the appropriate requirements? ☐ Yes ☐ No (If no, explain in remarks.)

8.) Have you explained and left with the proposed insured the NOTICE TO APPLICANT, Parts One and Two? ☑ Yes ☐ No

9.) What is average earned income (past 3 years) of primary insured? 29,000

10.) Purpose of Insurance ______

11.) Source of Prospect:

| | | | |
|---|---|---|---|
| | ☐ Solicited by Agent | ☐ Applicant Requested | |
| ☐ Policy Holder | ☐ Personal Acquaintance | ☑ Direct Mail | ☐ Family Member or Self |
| ☐ Business Acquaintance | ☐ Cold Canvass | ☐ Referred Lead | ☐ Other______ |

12.) Is Family Friend Requested? ☐ Yes ☐ No

## REMARKS

Note 1 check for 107.69 To be divided As follows
1) Michael Littlefield — 42.57 /SA
2) Colleen Littlefield — 65.03 /SA

X Donald C. Demers 1014 % (split) 11/5/97
Licensed Agent Agent Number Date

X ______ % (split)
Licensed Agent Agent Number Date

## AUTHORIZATION TO OBTAIN INFORMATION AND ACKNOWLEDGEMENT STATEMENT

I AUTHORIZE the following to release information about me to Catholic Family. Those authorized include a physician, medical practitioner, hospital, clinic, other medical or medically related facility, insurance or reinsuring company, the Medical Information Bureau, a consumer reporting agency, and/or employers. I UNDERSTAND that this information may include diagnosis, treatment, and prognosis with respect to any physical or mental condition and/or treatment, and other non-medical information concerning me.

I authorize all sources, except MIB, to give records or knowledge to any agency employed by Catholic Family Life Insurance. I authorize them to collect and transmit such information. I UNDERSTAND they will use the information obtained through this Authorization to determine eligibility for insurance.

Any information obtained will not be released to any person or entity EXCEPT to reinsuring companies, or other persons or organizations performing business or legal services with my application. The Society may release this information when lawfully required, or as I further authorize.

I KNOW that I may request a copy of this Authorization.

I AGREE that a photographic or faxed copy of this Authorization shall be as valid as the original.

I ACKNOWLEDGE that I received the "Notice to Applicant" form.

I AGREE this Authorization shall be valid for one year from the date shown below.

Signed on this 11 (Month) 5 (Day) 1997 (Year) [signature] Signature of Proposed Insured

______ Name of Minor Child ______ Name of Minor Child ______ Other Insured Signature

______ Name of Minor Child ______ Name of Minor Child ______ Other Insured Signature

# HEALTH STATEMENT

Supplement to Application TO CATHOLIC FAMILY LIFE INSURANCE MILWAUKEE WISCONSIN

Name of Proposed Insured: MICHAEL LITTLEFIELD
Address of Proposed Insured: WEST WARWICK RI 02893

Date of Original Application: 11-05-97

## ALL PROPOSED INSUREDS

| | Yes | No | Please Give Full Details Below |
|---|---|---|---|
| Since date of application (or medical examination, if later), have you, so far as you know and believe - | | | |
| 1. Consulted or been treated by any physician or practitioner?............ | | ✓ | |
| 2. Had any physical impairment, sickness, mental disorder, injury?......... | | ✓ | |
| 3. Had an operation, or has operation, restricted diet or use of heart or blood pressure medicine been advised?............ | | ✓ | |
| 4. Changed in weight? (If yes, give amount; cause; present weight.)......... | | ✓ | LB 2-17-98 |
| 5. a. Applied for new or reinstated insurance?..... | | ✓ | |
| b. Become covered under Veterans Administration or medicare programs, a hospital or surgical service plan or similar insurance................ | | ✓ | |
| If yes, give details...... | | | |

I agree that the information given above will become a part of the original application, including any supplement to the application, and that, so far as I know and believe, the original application as modified above is true, complete and up to date.

Donald P. Dion (signature) — Witness

M. Littlefield (signature) — Signature

2/9/98 — Date

CFL000470

U-294-388

SECTION 1
DATA PAGE

AGE: 28 SEX: MALE

TOTAL PREMIUMS AT ISSUE:

| | |
|---|---|
| ANNUAL | $83.50 |
| SEMI-ANNUAL | $42.59 |
| QUARTERLY | $21.71 |
| MONTHLY | $7.10 |

OWNER: MICHAEL LITTLEFIELD

PREMIUM CLASS: STANDARD NON-TOBACCO

POLICY DATE: February 03, 1998

DIVIDEND OPTION: LEFT ON DEPOSIT

EFFECTIVE ANNUAL INTEREST RATE FOR REINSTATEMENTS: 6.00%

Beneficiary: As stated in the attached application for this policy until changed as stated in the latest of any attached designation of beneficiary form. The beneficiary may be changed in accordance with policy provisions.

INSURED: MICHAEL LITTLEFIELD POLICY NUMBER: 97111101

SCHEDULE OF BENEFITS AND PREMIUMS

| BENEFITS | AMOUNT | MATURITY OR EXPIRY | ANNUAL PREMIUM | YEARS PAYABLE |
|---|---|---|---|---|
| 20 Year Term | $50,000 | Feb. 03, 2018 | $83.50* | 020 |

* ACTUAL PREMIUM FOR FIRST POLICY YEAR
MAXIMUM GUARANTEED PREMIUM $167.00

STATEMENT OF POLICY COST AND BENEFIT INFORMATION

›REPARED FOR THE INSURED: MICHAEL LITTLEFIELD POLICY NUMBER: **REDACTED**

ISSUE DATE: Feb. 03, 1998 ISSUE AGE: 28

:his policy is issued by:

Catholic Family Life Insurance
1572 East Capitol Drive
Milwaukee, Wisconsin 53211
(414) 961-0500

For further information about this statement, contact the home office

SCHEDULE OF BENEFITS AND PREMIUMS

| 3ENEFITS | AMOUNT | MATURITY OR EXPIRY | ANNUAL PREMIUM | YEARS PAYABLE |
|---|---|---|---|---|
| :0 Year Term | $50,000 | Feb. 03, 2018 | 83.50* | 020 |

* ACTUAL PREMIUM FOR FIRST POLICY YEAR.
MAXIMUM GUARANTEED PREMIUM $167.00

At any time within 20 days after its receipt by the purchaser this policy may be returned by delivering it or mailing it to the insurer or to the intermediary thru whom it was purchased. Immediately upon such delivery or mailing, the policy will be deemed void from the beginning, and any premium paid on it will be refunded.

TOTAL ANNUAL PREMIUM AT ISSUE: $83.50

STATEMENT OF POLICY COST AND BENEFIT INFORMATION

REPARED FOR THE INSURED: MICHAEL LITTLEFIELD

**REDACTED**

POLICY NUMBER:

SSUE DATE: 02/03/1998

ISSUE AGE: 28

PREMIUMS, VALUES AND COST INDEXES FOR:
20 Year Term

| OLICY YEAR | CURRENT ANNUAL PREMIUM | DEATH BENEFIT | CASH VALUE | MAXIMUM ANNUAL PREMIUM | DEATH BENEFIT | CASH VALUE |
|---|---|---|---|---|---|---|
| 001 | $83.50 | $50,000 | $0.00 | $167.00 | $50,000 | $0.00 |
| 002 | $83.50 | $50,000 | $0.00 | $167.00 | $50,000 | $0.00 |
| 003 | $83.50 | $50,000 | $0.00 | $167.00 | $50,000 | $0.00 |
| 004 | $83.50 | $50,000 | $0.00 | $167.00 | $50,000 | $0.00 |
| 005 | $83.50 | $50,000 | $0.00 | $167.00 | $50,000 | $0.00 |
| 010 | $83.50 | $50,000 | $0.00 | $167.00 | $50,000 | $0.00 |
| 015 | $83.50 | $50,000 | $0.00 | $167.00 | $50,000 | $0.00 |
| 020 | $83.50 | $50,000 | $0.00 | $167.00 | $50,000 | $0.00 |
| .T AGE | | | | | | |
| 048 | $83.50 | $50,000 | $0.00 | $167.00 | $50,000 | $0.00 |

LIFE INSURANCE COST INDEXES

| POLICY YEAR | CURRENT SURRENDER | CURRENT NET PAYMENT | MAXIMUM SURRENDER | MAXIMUM NET PAYMENT |
|---|---|---|---|---|
| 10 | $1.67 | $1.67 | $3.34 | $3.34 |
| 15 | $1.66 | $1.66 | $3.34 | $3.34 |
| 20 | $1.66 | $1.66 | $3.34 | $3.34 |

*An explanation of the intended use of these indexes is provided in the "LIFE INSURANCE BUYER'S GUIDE"

This policy and 'statement of policy cost and benefit information' have been delivered to me and explained by the agent.

OWNER AGENT 2/4/98 DATE

J-287-787

DATE PREPARED: 02/03/98



CFL000473

# HEALTH STATEMENT

Supplement to Application TO CATHOLIC FAMILY LIFE INSURANCE MILWAUKEE WISCONSIN

Name of Proposed Insured: MICHAEL LITTLEFIELD
Address of Proposed Insured: WEST WARWICK RI 02893

Date of Original Application: 11-05-97

## ALL PROPOSED INSUREDS

| | Yes | No | Please Give Full Details Below |
|---|---|---|---|
| Since date of application (or medical examination, if later), have you, so far as you know and believe - | | | |
| 1. Consulted or been treated by any physician or practitioner?............ | | ✓ | |
| 2. Had any physical impairment, sickness, mental disorder, injury?......... | | ✓ | |
| 3. Had an operation, or has operation, restricted diet or use of heart or blood pressure medicine been advised?............ | | ✓ | LB 2-17-98 |
| 4. Changed in weight? (If yes, give amount; cause; present weight.).......... | | ✓ | |
| 5. a. Applied for new or reinstated insurance?..... | | ✓ | |
| b. Become covered under Veterans Administration or medicare programs, a hospital or surgical service plan or similar insurance................ | | ✓ | |
| If yes, give details...... | | | |

I agree that the information given above will become a part of the original application, including any supplement to the application, and that, so far as I know and believe, the original application as modified above is true, complete and up to date.

Donald P Dunn (signature) — Witness
(signature) — Signature
2/9/98 — Date

CFL000474

U-294-388

## AGENT'S STATEMENT

The primary reasons for my recommending the proposed replacement of existing insurance by new life insurance are:*

Does not [illegible] meet the insured needs

______________________________________________

My recommendations as to the existing insurance is that it be:
___ Not Changed ✓ Lapsed ___ Surrendered ___ Reduced Paid-Up
___ Extended Term ___ Other (Explain) ______________________

______________________________________________

Borrowed Upon (Explain and state the amount to be borrowed) ______
N/A Term

The existing life insurance does not meet the insured/buyer's needs for insurance because:* [illegible]
Needs more life [illegible]

*Specific reasons must be given. For example, if you believe the existing life insurance cannot meet the insured/buyer's needs, you must specify why you think it does not.

## INSTRUCTIONAL NOTES FOR AGENT

Existing life insurance must be identified by name of insurer and the policy number. In the event that a policy number has not been assigned by the existing insurer, alternative identification information such as an application or receipt number must be shown.

If the premium for the basic policy or any rider or benefit changes, indicate the changes; attach schedules, if necessary.

If the death benefit for the basic policy or any rider or benefit changes, indicate the changes; attach schedules, if necessary.

If the premium for benefits is not separable from the premium for the basic certificate, insert "Included" in Basic Certificate Premium.

If more than one existing life insurance certificate is to be replaced, a separate Comparative Information Form is to be provided for each such certificate, or separate information is to be provided in one Comparative Information Form for each such certificate, and a summary of all the separate certificate information must also be included to the extent possible.

With respect to the existing certificate, complete only the information which may be obtained from the certificate itself. The existing insurer will provide all other information such as future dividends.

DEFENDANT'S EXHIBIT
B
12-28-06 [illegible]

CFL000014

## AGENT'S CERTIFICATION

I hereby certify that prior to taking an application for a certificate, I have provided the applicant with the Notice Regarding Replacement of Life Insurance and that the information in this Comparative Information Form is true and correct to the best of my knowledge and belief.

(Signature of Agent) (Date) 8/25/03

I have received and read a copy of this Comparative Information Form.

(Signature of Applicant) (Date) 8/25/03




DEFENDANT'S EXHIBIT

12-28-06 C 82

REDACTED

Colleen Littlefield,
, $50,000, non-tobacco, female,
Other Insured(no name given), $50,000, non-tobacco, male, DOB

REDACTED

CFL000566

DCUN0211DE CFL Catholic Family Life Insurance 10/03/01
DISPLAY Display Policy Summary 13:38:12

Sex PIN
Policy ID : REDACTED Ins: LITTLEFIELD, COLLEEN M F REDACTED T
As of/sts . 10/03/2001 A DOB: REDACTED
Trm date : Dsp:
Iss date : 02/03/1998 Pyr: LITTLEFIELD, COLLEEN M F T
MEC date :
Pdto date : 02/03/2002
Last paid : 08/06/2001 WEST WARWICK
Premium . : 106.15 RI US ZIP 02893 Postal
Freq/skip : S Meth: D 1 Spc rte: Dir recog Bill reduction
Div . . . : APL : Own: LITTLEFIELD, COLLEEN M F REDACTED
DBO . . . : NFO : Ben:
Stop bill : 1035: Pro: DEMERS, DONALD C M
Suspend . : Rpl : AsO:

| Cov | Plan | Ben | Sts | Iss Date | Sts | Units | Age | Sk | Tx | Oc | Re | Premium | Sst |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 20YT F NS | BAS | P | 02/03/1998 | A | 50.0000 | 39 | | | | | 106.15 | Y |

F3=Exit F5=Refresh F11=Notes F12=Cancel F13=Cov F14=Dsp Prm F15=Fnd Hst
F16=Sst F17=Fin Act F18=Cov Ins F19=Pol Rel F20=Bill Dtl F21=Corr F22=COLA Hst

Catholic Family Life Insurance

*Families are the heart of what we do.*℠

# OFFICE MEMO

To: DON DEMERS

From: Roberta Bicha

Date: January 29, 1998

Applicant: COLLEEN LITTLEFIELD

Application REDACTED

DON:

After reviewing medical records on Colleen Littlefield we find that she will have a table 3 (75%) rating. Because this application is almost three months old we will need an answer by February 6.

Roberta Bicha, FLMI
Underwriter

Catholic Family Life Insurance

Application for Membership and Life Insurance
Catholic Family Life Insurance, Milwaukee, Wisconsin 53211
*(Please print in black ink.)*

Today's Date: 11/5/97 | Agent No.: 1054

## 1. INFORMATION REGARDING PROPOSED INSUREDS

Birthdate REDACTED State/Country of Birth: CALF. Age Last Birthday: 39

Sex ☐M ☑F Height: 5 5 Weight: 125 Marital Status: MARRIED

Social Security Number REDACTED Phone Number REDACTED

Legal Name - First: COLLEEN Middle: M Last: LITTLE FIELD

Previous Name(s)

Address (number and street or P.O. box, state, zip): REDACTED

Previous Address Within Two Years (check if none): ☑

Owner (if not proposed insured—does not apply to minors): Relationship:
Address:

Premium Notices and Correspondence to: ☑ Insured ☐ Owner Social Security No. / /

## 2. OCCUPATIONAL DATA

Occupation of Primary Proposed Insured: Home Cleaning (self employed)

Business Phone: ( )

Occupation of Spouse if Applying:

Employer's Name and Address - Primary Proposed Insured: DIVERSIFIED SERVICES

Employer's Name and Address - Spouse:

## 3. OTHER FAMILY MEMBERS TO BE INSURED, IF APPLICABLE

| Name: | Relationship to Ins'd: | Sex: | Age: | Date of Birth: | Social Security No.: | Hgt./Wgt.: | Birthplace: |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## 4. LIFESTYLE UNIVERSAL LIFE

☐ Tobacco ☐ Non-Tobacco

Face Amount: $______

Death Benefit Option: ☐ #1 (level) ☐ #2 (increasing)

Additional Benefits Applied for:

- ☐ Waiver of Monthly Deduction
- ☐ Waiver of Planned Premium Benefit Rider $______
- ☐ Accidental Death Benefit Rider $______
- ☐ Guaranteed Insurability Option Rider $______
- ☐ Additional Term Rider $______ (primary insured)
- ☐ Children's Term Rider______ (units)
- ☐ Acceleration of Death Benefit Rider
- ☐ Other Insured Rider (complete item #3)

Other Insureds (including spouse):

| | Name | Amount | Tob. | Non |
|---|---|---|---|---|
| 1 | | | ☐ | ☐ |
| 2 | | | ☐ | ☐ |
| 3 | | | ☐ | ☐ |

## 5. TRADITIONAL LIFE

☐ Tobacco ☑ Non-Tobacco

Face Amount: $ 50,000 Base Plan 20 YR Term

Additional Benefits Applied for:

- ☐ Waiver of Premium
- ☐ Accidental Death Benefit, (excluding term plans) $______
- ☐ Children's Insurance Rider______ (units)
- ☐ Guaranteed Insurability Rider Amount $______
- ☐ Term Rider, Primary Insured Amount $______ Duration ______

Dividend Option: ☐ Accumulated - On Deposit ☐ Paid Up Life Additions ☐ ______

## 6. PREMIUM AND BILLING INFORMATION

Mode (check one) ☐ Annual ☑ Semi-Annual ☐ Monthly PAC ☐ 1 ☐ 15 Include With Policy No. ______

Total Premium Quoted $ 65.03 Total Premium Collected $ 65.03 UL Planned Premium $______ UL Lump Sum $______

## 7. BENEFICIARY DESIGNATION (Beneficiaries in each class equally, unless otherwise indicated.)

| Primary | % | S.S. # | Relationship | Contingent | % | S.S. # | Relationship |
|---|---|---|---|---|---|---|---|
| Michael Littlefield | 50% | REDACTED | HUSBAND | REDACTED | | | NIECE |
| REDACTED | 50% | | DAUGHTER | | | | |

Amendments and Corrections (For Home Office Use Only)

CFL000569

| Policy Date | Policy Number | Serial Number |
|---|---|---|
| 2-3-98 | 97111102 | 65610 |

U-416-595

Catholic Family Life Insurance

Application for Membership and Life Insurance to:
Catholic Family Life Insurance, Milwaukee, Wisconsin 53211
*(Please print in black ink.)*

Today's Date: 11/5/97
Agent No.: 1014

## 1. INFORMATION REGARDING PROPOSED INSUREDS

Birthdate: REDACTED State/Country of Birth: CALF Age Last Birthday: 3

Sex ☐M ☑F Height: 5 5 Weight: 125 Marital Status: MARRIED

Social Security Number: REDACTED Phone Number REDACTED

| Legal Name - First | Middle | Last | Previous Name(s) |
|---|---|---|---|
| COLLEEN | M | LITTLE FIELD | |

Address (street, P.O. box, state, zip): REDACTED

Previous Address Within Two Years (check if none): ☑

Owner (if not proposed insured—does not apply to minors): Relationship:
Address:
Premium Notices and Correspondence to: ☑ Insured ☐ Owner Social Security No. / /

## 2. OCCUPATIONAL DATA

| Occupation of Primary Proposed Insured | Business Phone | Occupation of Spouse if Applying: |
|---|---|---|
| Home Cleaning (self employed) | ( ) | |

Employer's Name and Address - Primary Proposed Insured: DIVERSIFIED SERVICES

Employer's Name and Address - Spouse:

## 3. OTHER FAMILY MEMBERS TO BE INSURED, IF APPLICABLE

| Name: | Relationship to Ins'd: | Sex: | Age: | Date of Birth: | Social Security No.: | Hgt./Wgt.: | Birthplace: |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## 4. LIFESTYLE UNIVERSAL LIFE

☐ Tobacco ☐ Non-Tobacco
Face Amount: $________
Death Benefit Option: ☐ #1 (level) ☐ #2 (increasing)
Additional Benefits Applied for:
☐ Waiver of Monthly Deduction
☐ Waiver of Planned Premium Benefit Rider $________
☐ Accidental Death Benefit Rider $________
☐ Guaranteed Insurability Option Rider $________
☐ Additional Term Rider $________(primary insured)
☐ Children's Term Rider________(units)
☐ Acceleration of Death Benefit Rider
☐ Other Insured Rider (complete item #3)
Other Insureds (including spouse):

| Name | Amount | Tob. | Non |
|---|---|---|---|
| 1. | | ☐ | ☐ |
| 2. | | ☐ | ☐ |
| 3. | | ☐ | ☐ |

## 5. TRADITIONAL LIFE

☐ Tobacco ☑ Non-Tobacco
Face Amount: $ 50,000 Base Plan 20 YR End.
Additional Benefits Applied for:
☐ Waiver of Premium
☐ Accidental Death Benefit, (excluding term plans) $________
☐ Children's Insurance Rider________(units)
☐ Guaranteed Insurability Rider Amount $________
☐ Term Rider, Primary Insured
Amount $________ Duration ________

Dividend Option: ☐ Accumulated - On Deposit
☐ Paid Up Life Additions
☐ ________

## 6. PREMIUM AND BILLING INFORMATION

Mode (check one) ☐ Annual ☑ Semi-Annual ☐ Monthly PAC ☐ 1 ☐ 15 Include With Policy No. ________

Total Premium Quoted $ 65.63 Total Premium Collected $ 65.63 UL Planned Premium $________ UL Lump Sum $________

## 7. BENEFICIARY DESIGNATION (Beneficiaries in each class equally, unless otherwise indicated.)

| Primary | % | S.S. # | Relationship | Contingent | % | S.S. # | Relationshi |
|---|---|---|---|---|---|---|---|
| Michael Littlefield | 50% | REDACTED | HUSBAND | REDACTED | | | NIECE |
| REDACTED | 50% | | DAUGHTER | | | | |

Amendments and Corrections (For Home Office Use Only)

CFL000570

| Policy Date | Policy Number | Serial Number |
|---|---|---|
| | | 65010 |

**8. LIFE INSURANCE IN FORCE OR PENDING** ☐ YES ☑ NO (If yes, complete below.)

| Name of Proposed Insured | Company | Amount |
|---|---|---|
| | None | |
| | | |
| | | |

**9. UNDERWRITING INFORMATION - PART 1**

PROPOSED INSURED(S) MUST COMPLETE ALL QUESTIONS. ALL "YES" ANSWERS MUST BE EXPLAINED AND REFERENCED IN THE BOX AT THE BOTTOM OF THIS PAGE!

| Has or does the person(s) proposed for insurance coverage: | YES | NO |
|---|---|---|
| 1.) Ever engaged in or expect to engage in any of the following: | | |
| a. Aviation activities as a pilot or crew member? If yes, attach Aviation Questionnaire. | ☐ | ☑ |
| b. Skin or Scuba Diving; motor vehicle or motor boat racing; mountain climbing, professional rodeo competition; skydiving; other hazardous activities? If yes, attach Hazardous Activities Questionnaire. | ☐ | ☑ |
| 2.) a. Drink alcoholic beverages? If yes, how much per week? (One drink = 12 oz. beer, 4 oz. wine, or 1 oz. hard liquor.) Amount:________ | ☐ | ☑ |
| b. Now or ever been a user of heroin, cocaine, marijuana, or illegal, restricted or controlled substance, except as prescribed by a physician? If yes, attach Drug and Alcohol Questionnaire. | ☐ | ☑ |
| c. Ever had or been advised by a physician, practitioner, or court of law to have treatment for alcohol, drug, or substance abuse? If yes, attach Drug and Alcohol Questionnaire. | ☐ | ☑ |
| 3.) a. Had insurance or reinstatement refused, postponed, limited, offered, or quoted on a rated or substandard basis? | ☐ | ☑ |
| b. Will this insurance replace or change any existing life insurance or annuity contract? | ☐ | ☑ |
| c. Within the past 5 years, a[illegible]ability or Worker's Compensation Benefits? | ☐ | ☑ |
| 4.) a. Driver's License No. REDACTED State RI | | |
| b. Ever been cited for driving w[illegible] (DWI), or driving under the influence (DUI)? | ☐ | ☑ |
| c. Ever been cited for any other driving violation in the past 3 years? If yes, please provide full details. | ☐ | ☑ |
| d. Ever been convicted in a court of law for any reason? | ☐ | ☑ |
| 5.) Have you lived or traveled outside the United States within the past 12 months or do you plan to travel or live outside of the United States within the next 12 months? | ☐ | ☑ |
| 6.) Are you a U.S. citizen, or do you have permanent residence status? If not a U.S. citizen, please provide I-151 (green card) number ________ | ☑ | ☐ |
| 7.) Do you now use or have you ever used tobacco or nicotine in any form? If yes, indicate the type of tobacco used; (cigarettes, pipe, cigar, chewing tobacco, other) and if applicable, the date you stopped. | ☐ | ☑ |
| 8.) a. Have a history in parents, brothers or sisters of mental illness, diabetes, heart, kidney or liver disease, high blood pressure, stroke or cancer? If yes, name person(s), relationship(s), age(s), condition(s), and age when disease began. | ☐ | ☑ |
| b. Give name, cause and age at death of father, mother, brother(s), sister(s) if deceased________ | | |

9.) Full name and complete address of personal physician; the date, reason last seen, and diagnosis: [illegible] None [illegible]

| Question Number | Details |
|---|---|
| | |
| | |
| | |
| | |

CFL000571

U-416-595

## 10. UNDERWRITING INFORMATION - PART 2

COMPLETION OF QUESTIONS 1-8 IS REQUIRED IN ALL CASES. ANY "YES" ANSWERS MUST BE FULLY EXPLAINED AND REFERENCED IN THE BOXES AT THE BOTTOM OF THIS PAGE.

AIDS TEST RESULTS OBTAINED AT AN ANONYMOUS COUNSELING AND TESTING SITE DESIGNATED BY THE STATE EPIDEMIOLOGIST OR AT A SIMILAR FACILITY IN ANOTHER JURISDICTION ARE CONFIDENTIAL AND NEED NOT BE DISCLOSED. NONE OF THESE APPLICATION QUESTIONS SHOULD BE INTERPRETED AS ASKING ABOUT AIDS, UNLESS THE QUESTIONS SPECIFICALLY MENTIONS AIDS.

| Has the person(s) proposed for insurance coverage: | YES | NO |
|---|---|---|
| 1.) Ever had or now have symptoms of or been diagnosed as having a disorder, disease or persistent discomfort of the following systems: | | |
| a. Respiratory (lungs, bronchi, trachea, etc.) such as, but not limited to, TB, asthma, emphysema, bronchitis, shortness of breath? | ☐ | ☑ |
| b. Circulatory (heart, blood, arteries, veins, etc.) such as, but not limited to, high blood pressure, heart attack, chest pains, murmur? | ☑ | ☐ |
| c. Digestive (throat, esophagus, stomach, intestine, liver, gall bladder, etc.) such as, but not limited to, ulcer, colitis, cirrhosis, hemorrhoids, bleeding? | ☐ | ☑ |
| d. Nervous (brain, nerves, etc.) such as, but not limited to, paralysis, stroke, fainting, dizziness, epilepsy, convulsions, recurring headaches? | ☐ | ☑ |
| e. Musculo-skeletal (muscles, bones, joints, spine, etc.) such as, but not limited to, neck/back problems, fracture, arthritis? | ☐ | ☑ |
| f. Genito-urinary (kidney, bladder, reproductive organs, etc.) such as, but not limited to, kidney stones, infection, bleeding, male or female disorders? | ☐ | ☑ |
| g. Glandular (thyroid, pancreas, adrenal, lymph glands, etc.) such as, but not limited to, abnormal growth or function, including diabetes? If yes to diabetes, attach Diabetic Questionnaire. | ☐ | ☑ |
| 2.) Ever had or now have impaired sight, hearing, ear or eye disorder, venereal disease, hernia, or skin disease? | ☐ | ☑ |
| 3.) Ever had or now have any mental, nervous, psychological, or emotional condition or disorder, such as, but not limited to, anxiety, depression, or nervous breakdown? | ☐ | ☑ |
| 4.) Now have or ever been diagnosed or treated for cancer, tumor, cyst, or growth? | ☐ | ☑ |
| 5.) Gained or lost more than 10 pounds in the past year? Amount _____ Cause _____ | ☐ | ☑ |
| 6.) Within the past 5 years: (Refer to disclaimer concerning AIDS test results at top of page) | | |
| a. Had any other impairment, sickness, injury, surgery not described above or any diagnostic test such as x-ray, EKG, lab tests? | ☐ | ☑ |
| b. Had a physical examination? If yes, list the reason for and results below. | ☐ | ☑ |
| c. Been advised to have or do the following which was not completed 1) any diagnostic test; 2) surgery; 3) hospitalization? | ☐ | ☑ |
| d. Been on, or now on, prescribed diet or medication? | ☐ | ☑ |
| 7.) Ever had any past or present complications of pregnancy (such as C-section) or now pregnant? | ☐ | ☑ |
| 8.) a. Been treated or diagnosed by a member of the medical profession as having any disorder of the blood or immune system, including Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐ | ☑ |
| b. Ever been treated by a member of the medical profession as having the AIDS (HTLV-III) virus or tested positive to FDA licensed blood tests? | ☐ | ☑ |

| Question Number | Condition, Diagnosis, Injury Illness, Disorder (Name any operation performed) | Dates of Treatment Hospitalization, Recurrences | Types of Treatment/ Medications | Degree of Recovery | Name(s), address(es) and telephone number(s) of doctors, hospitals, or clinics involved |
|---|---|---|---|---|---|
| 1B | PACEMAKER | since 1987 | | | Dr HORDES |
| | | | | | |
| | | | | | PAWTUCKET RI |
| | | | | | last visit 5/97 |
| | | | | | Tel (401) 723-1210 |
| | | | | | in good health |

CFL000572

11. AGREEMENT (Check one only)

☐ Catholic Family Life Insurance conditional coverage receipt was given for this life insurance plan. I acknowledge that I have read the receipt provided and understand its terms, conditions and limitations. I understand that I will not receive any insurance coverage for my money unless a policy is issued as applied for.

☐ No conditional coverage receipt was given for this insurance plan. I acknowledge that I have not paid any premium for this insurance. I understand that this insurance is not in effect and that the first premium must be paid upon delivery of the policy.

I hereby apply for insurance in the amount on the plan, and at the rate stated in this application. I agree that the entire contract consists of this application, the policy, the statement of insurability, any medical examination statements, the Articles of Incorporation and By-Laws of the Society.

IT IS AGREED...

1) All statements in this application (pages 1, 2, and 3) are to the best of my knowledge and belief complete and true.

2) All information given to the agent in response to the questions in this application has been recorded correctly.

3) No information acquired by any agent shall bind the Society unless set out in writing in this application.

4) No agent can accept risks or modify policies, or waive any rights or requirements of the Society.

5) Unless otherwise provided in a conditional receipt bearing the date of the application, no liability exists until a contract is delivered, accepted by the owner and the first payment made. This must occur during the lifetime and insurability of the applicant under this contract.

6) The contract applied for shall take effect on the later of the date requested by the applicant, or the approval date of the application from the Society at the Home Office.

7) When you accept the contract issued on this application, you are approving and ratifying any corrections, additions, or changes made by the Society. We do not make changes in the plan of insurance or payment without your written consent.

The proposed insured acknowledges receipt of notices relating to the Medical Information Bureau and/or the Fair Credit Report Act. THIS AGREEMENT (or a copy of it) authorizes any person or business listed as follows to give Catholic Family Life Insurance, Milwaukee, Wisconsin, or its reinsurers, any records or knowledge of me or my health to a) any licensed physician, medical practitioner, hospital, clinic, or other medical or medically related facility; b) any insurance company; or c) the Medical Information Bureau or other agency employed by Catholic Family Life Insurance.

**THE APPLICATION IS A LEGAL DOCUMENT. READ IT CAREFULLY.**
**THE POLICY COULD BE RESCINDED IF QUESTIONS ARE NOT ANSWERED COMPLETELY AND TRUTHFULLY.**

If you wish, you may return the policy within
20 days after delivery for full refund.

Dated at West Warwick (City), RI (State) on 11 (Month) 5 (Day) 1997 (Year)

[signature] Signature of Proposed Insured — [signature] Signature of Agent — 1614 Agent No.

Signature of Other Insured — Signature of Owner (if other than insured)

CFL000573

J-416-595

## AGENT REPORT

1.) a. Is the proposed insured a practicing Catholic? ☑ Yes ☐ No (If no, explain in remarks.) b. Parish is ______

2.) Are you related to proposed insured by blood or marriage? ☐ Yes ☑ No My relationship is ______

3.) How long have you known the proposed insured? JUST MET 4.) Council or Branch No. ______

4.) Did you see the proposed insured at the time this application was completed? ☑ Yes ☐ No (If no, explain in remarks.)

5.) Do you know of any information regarding the health, habits, character, avocations, hazardous activities, sports, or environment of the proposed insured which might affect insurability? ☐ Yes ☑ No (If yes, explain in remarks.)

6.) Has the proposed insured ever applied for a CFLI policy that was declined, postponed, or not taken? ☐ Yes ☑ No

7.) To the best of your knowledge, does the policy applied for replace any existing insurance or annuity? ☐ Yes ☑ No
If yes, have you complied with the appropriate requirements? ☐ Yes ☐ No (If no, explain in remarks.)

8.) Have you explained and left with the proposed insured the NOTICE TO APPLICANT, Parts One and Two? ☑ Yes ☐ No

9.) What is average earned income (past 3 years) of primary insured? 18,000

10.) Purpose of Insurance ______

11.) Source of Prospect: ☐ Solicited by Agent ☐ Applicant Requested
☐ Policy Holder ☐ Personal Acquaintance ☐ Direct Mail ☐ Family Member or Self
☐ Business Acquaintance ☐ Cold Canvass ☐ Referred Lead ☐ Other______

12.) Is Family Friend Requested? ☐ Yes ☐ No

## REMARKS

X Donald C. Demers — Licensed Agent | 1014 — Agent Number | % (split) | 11/5/97 — Date

X ______ Licensed Agent | Agent Number | % (split) | Date

## AUTHORIZATION TO OBTAIN INFORMATION AND ACKNOWLEDGEMENT STATEMENT

I AUTHORIZE the following to release information about me to Catholic Family. Those authorized include a physician, medical practitioner, hospital, clinic, other medical or medically related facility, insurance or reinsuring company, the Medical Information Bureau, a consumer reporting agency, and/or employers. I UNDERSTAND that this information may include diagnosis, treatment, and prognosis with respect to any physical or mental condition and/or treatment, and other non-medical information concerning me.

I authorize all sources, except MIB, to give records or knowledge to any agency employed by Catholic Family Life Insurance. I authorize them to collect and transmit such information. I UNDERSTAND they will use the information obtained through this Authorization to determine eligibility for insurance.

Any information obtained will not be released to any person or entity EXCEPT to reinsuring companies, or other persons or organizations performing business or legal services with my application. The Society may release this information when lawfully required, or as I further authorize.

I KNOW that I may request a copy of this Authorization.

CFL000574

I AGREE that a photographic or faxed copy of this Authorization shall be as valid as the original.

I ACKNOWLEDGE that I received the "Notice to Applicant" form.

I AGREE this Authorization shall be valid for one year from the date shown below.

Signed on this 11 (Month) 5 (Day) 1997 (Year) ______ Signature of Proposed Insured

______ Name of Minor Child | ______ Name of Minor Child | ______ Other Insured Signature

______ Name of Minor Child | ______ Name of Minor Child | ______ Other Insured Signature

AGENT ADVISE MEMO

NOVEMBER 18, 1997

CATHOLIC FAMILY LIFE INSURANCE
NEW BUSINESS DEPARTMENT

TO: DONALD C DEMERS
RE: POLICY: REDACTED
NAME COLLEEN M LITTLEFIELD

THE ABOVE NUMBERED POLICY IS PENDING DUE TO THE ITEMS HIGHLIGHTED BELOW. MAKE THE NECESSARY ARRANGEMENTS IF YOU HAVE NOT ALREADY DONE SO.

(R) - PLEASE REFER TO REMARKS BELOW CONCERNING FURTHER INFORMATION.

PARAMED EXAM/HOU
BLOOD PROFILE
MEDICAL EXAMINATION BY MD
TWO ADDITIONAL HOU'S
WE HAVE WRITTEN TO DOCTOR/CLINIC FOR A STATEMENT OF MEDICAL HISTORY
APPLICATION NEEDS TO BE COMPLETED (R)
ADDITIONAL MATERIALS ARE REQUIRED (R)
INSPECTION REPORT (Ordered by Home Office)
THIS APP IS DUE FOR CANCELLATION IN 10 DAYS IF THE FOLLOWING
ITEM(S) ARE NOT RECEIVED (R)
THIS APPLICATION HAS BEEN CANCELLED BECAUSE OF THE FOLLOWING (R)
MOTOR VEHICLE REPORT

HIV CONSENT FORM

```
   Mail   Jennifer Chri 1/16  6:20a  PENDING REPORT FOR 1-14
 ZD Attachments DDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDD(Tab next attachment)D?
 3 MESSAGE         P001014.TXT                                                3
 3                                                                            3
 @DDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDY
                                                                              Z
   Plans         Units       DESC     ORDERED  RECEIVED   PROVIDER NAME       Z
   20YT F NS        50.0000 APS1     11/18/97            BLACKSTONE CARDIOLOG Z
                            MIB      11/11/97            MEDICAL INFORMATION  Z
                            REVIEW   11/11/97                                 Z
                            TIA      11/11/97                                 Z
            Policy Note dated: 01/08/1998                                     Z
            Notify on: 01/18/1998                                             Z
            Reason:    ROBERTA                                                Z
            Additional information required from Blackstone                   £
            Cardiology.F/U MAILED 12/23/97. F/U CALL MADE TO                  Z
            DR'S OFFICE 1/8 INFO SHOULD BE COMPLETED SOON.                    Z
   Policy Totals                                                              Z
      Days Pending:  Life Ins Units:  Annual Prem:  Cash with App:            Z
            70           50.0000          12750.00         65.03              Z
                             ££££££££££££££££££££££££££££££££££££££££££Z
 DDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDD
 Previous      Next      [ ] Private                                    Close
 1 Move  2 Delete  3 Save  4 Forward  5 Reply  6 Info  7 More Actions...
```

REDACTED

Mail Roberta Bicha12/ 8 11:52a Colleen Littlefield
ZD Attachments DDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDD(Tab next attachment)D?
3 MESSAGE 3
3 3
@DDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDY

To: ddemers
Date: Monday, December 8, 1997 11:52 am
Subject: Colleen Littlefield 98111102

Don:

The APS we received was very sketchy, therefore, we will be writing to Blackstone Cardiology with some specific questions.

Robert

DDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDDD
Previous Next [ ] Private Close
1 Move 2 Delete 3 Save 4 Forward 5 Reply 6 Info 7 More Actions...

Catholic Family Life Insurance
A Twenty Year Level Term Life Insurance Plan
A Life Insurance Illustration Prepared for Colleen Littlefield

Tabular Detail

Gender: Female
Age: 39

Initial Face Amount: $50,000
Planned Semiannual Premium: $106.14

Rate Class: Non-Standard Non-Tobacco
Table 3 for 31 years

| End of Year | Age | --Guaranteed-- Contract Premium | ---Non-Guaranteed--- --Illustrated-- Premium Outlay | ---Non-Guaranteed--- ---Midpoint--- Premium Outlay | Guaranteed Death Benefit |
|---|---|---|---|---|---|
| 1 | 40 | $212.28 | $212.28 | $212.28 | $50,000 |

91.11

833 5206

repared by:
gent:
onday February 2, 1998

Representing:
Catholic Family Life Insurance
RI Version 100197





CFL000578

Catholic Family Life Insurance

*Financial security with the fraternal touch - since 1868.*

NOVEMBER 18, 1997

COLLEEN M LITTLEFIELD
**REDACTED**

RE:

DEAR MS. COLLEEN M LITTLEFIELD

Congratulations on taking the first step toward protecting your loved ones by applying for life insurance. We appreciate the confidence you have shown in our society.

In order to evaluate your application, medical records have been requested from your physician(s). Because of this, the underwriting process will take approximately six (6) to eight (8) weeks. You can expedite the underwriting process by encouraging your physician to respond promptly to our request for medical records.

We appreciate your patience, and would like to thank you for choosing Catholic Family for your insurance needs. If you have any questions about your application during the underwriting process, please contact DONALD C DEMERS at (401) **REDACTED**

Sincerely,

Kathy Maio

Kathy Maio
Manager New Business

CC: DONALD C DEMERS

CFL000579

Catholic Family Life Insurance
A Twenty Year Level Term Life Insurance Plan
A Life Insurance Illustration Prepared for Colleen Littlefield

Tabular Detail

Gender: Female
Age: 39

Initial Face Amount: $50,000
Planned **Semiannual** Premium: $65.03

Rate Class: Standard Non-Tobacco

| End of Year | Age | --Guaranteed-- Contract Premium | --------Non-Guaranteed-------- --Illustrated-- Premium Outlay | ---Midpoint--- Premium Outlay | Guaranteed Death Benefit |
|---|---|---|---|---|---|
| 1 | 40 | $130.06 | $130.06 | $130.06 | $50,000 |

CFL000580

-epared by:
jent:
onday February 2, 1998

Representing:
Catholic Family Life Insurance
RI Version 100197

NO POSTAGE NECESSARY IF MAILED IN THE UNITED STATES

**BUSINESS REPLY MAIL**
FIRST CLASS MAIL PERMIT NO. 4368 MILWAUKEE WI

POSTAGE WILL BE PAID BY ADDRESSEE

CATHOLIC FAMILY LIFE INSURANCE
P.O. Box 11563
Milwaukee, Wisconsin 53211-9948

#1014

CFL000581

CFL000582

I'd like more information about:

- ___ College Funding
- ___ Retirement Planning
- ___ Estate Planning
- ___ Business Insurance Planning
- ___ Mortgage Repayment/ Protection
- ___ Tax-Deferred Annuities & IRAs
- ___ Disability Income Insurance

NOV 0 4 1997

Catholic Family Life Insurance

Name C-lleen Little Scott

Address REDACTED

City

A.M. Pho

Amount of Insurance Desired 50,000 Tobacco ☐ Non-Tobacco ☒

Date of Birth REDACTED Male ☐ Female ☒

I wish to pay my premiums:

☐ Annually ☐ Semi-Annually ☒ Monthly Bank Draft

Additional Insured:

Name

Amount of Insurance Desired 50,000 Tobacco ☐ Non-Tobacco ☒

Date of Birth REDACTED Male ☒ Female ☐



# LEAD REPORT FORM

TO: Don Demers DATE: 11/4/97

Here's a sales lead for you from our Term Stuffers Marketing Program

Name: ___

Address: REDACTED 3

Phone Number: ______

Please be sure to:

-contact the individual as soon as possible

-deliver a n/a

-complete the bottom portion of this form after you have completed your interview and return it to the Sales Department

**REMEMBER:** *TIME IS OF THE ESSENCE!*

Date of Contact: ________________ Appointment Setup? ___ Yes ___ No

If not, why? ________________________________________

________________________________________

If yes, results of interview: ________________________________________

________________________________________

________________________________________

________________________________________

________________________________________

________________________________________

________________________________________

________________________________________

(signed)

________________________________________

(date)



CFL000583

# CATHOLIC FAMILY LIFE INSURANCE

## Ten Year Convertible Term

November 5, 1997

Agent: DONALD DEMERS
Prepared for: COLLEEN LITTLEFIELD
Face Amount: $50,000

State of Issue: RI
Age 39, Female, Non-Smoker
Initial Semi-Annual Premium: $51.00

| | | CURRENT VALUES | | | GUARANTEED VALUES | | |
|---|---|---|---|---|---|---|---|
| YEAR | AGE | ANNUAL PREMIUM | WAIVER PREMIUM | ACCUMULATED PREMIUM | ANNUAL PREMIUM | WAIVER PREMIUM | ACCUMULATED PREMIUM |
| 1 | 40 | 102 | 0 | 102 | 102 | 0 | 102 |
| 2 | 41 | 102 | 0 | 204 | 214 | 0 | 316 |
| 3 | 42 | 102 | 0 | 306 | 214 | 0 | 530 |
| 4 | 43 | 102 | 0 | 408 | 214 | 0 | 745 |
| 5 | 44 | 102 | 0 | 510 | 214 | 0 | 959 |
| 6 | 45 | 102 | 0 | 612 | 214 | 0 | 1,173 |
| 7 | 46 | 102 | 0 | 714 | 214 | 0 | 1,387 |
| 8 | 47 | 102 | 0 | 816 | 214 | 0 | 1,601 |
| 9 | 48 | 102 | 0 | 918 | 214 | 0 | 1,816 |
| 10 | 49 | 102 | 0 | 1,020 | 214 | 0 | 2,030 |

This product is not guaranteed renewable beyond its initial 10 year duration. Renewal for each 10 year period is subject to new evidence of insurability.

MODAL PREMIUMS

Annual Premium: $100.00
Semi-Annual Premium: $51.00
[redacted]
Monthly Premium: $8.50

CFL000584

# CATHOLIC FAMILY LIFE INSURANCE

## Ten Year Convertible Term

November 5, 1997

Agent: DONALD DEMERS
Prepared for: MALE AGE 28
Face Amount: $50,000

State of Issue: RI
Age 28, Male, Non-Smoker
Initial Semi-Annual Premium: $36.72

| | | CURRENT VALUES | | | GUARANTEED VALUES | | |
|---|---|---|---|---|---|---|---|
| YEAR | AGE | ANNUAL PREMIUM | WAIVER PREMIUM | ACCUMULATED PREMIUM | ANNUAL PREMIUM | WAIVER PREMIUM | ACCUMULATED PREMIUM |
| 1 | 29 | 73 | 0 | 73 | 73 | 0 | 73 |
| 2 | 30 | 73 | 0 | 147 | 136 | 0 | 209 |
| 3 | 31 | 73 | 0 | 220 | 136 | 0 | 345 |
| 4 | 32 | 73 | 0 | 294 | 136 | 0 | 480 |
| 5 | 33 | 73 | 0 | 367 | 136 | 0 | 616 |
| 6 | 34 | 73 | 0 | 441 | 136 | 0 | 752 |
| 7 | 35 | 73 | 0 | 514 | 136 | 0 | 887 |
| 8 | 36 | 73 | 0 | 588 | 136 | 0 | 1,023 |
| 9 | 37 | 73 | 0 | 661 | 136 | 0 | 1,159 |
| 10 | 38 | 73 | 0 | 734 | 136 | 0 | 1,294 |

This product is not guaranteed renewable beyond its initial 10 year duration. Renewal for each 10 year period is subject to new evidence of insurability.

MODAL PREMIUMS

Annual Premium: $72.00
Semi-Annual Premium: $36.72
~~Quarterly Premium: $[illegible].72~~
Monthly Premium: $6.12

CFL000585