UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COLLEEN LITTLEFIELD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-157 ML |
| | : | |
| CATHOLIC FAMILY LIFE INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT CATHOLIC FAMILY LIFE INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Patricia A. Sullivan (#2120)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

Attorneys for Defendant
Catholic Family Life Insurance
Company

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ i

I. INTRODUCTION ........ 1

II. LEGAL ARGUMENT ........ 1

A. Rhode Island's Statutory Mandate that Life Insurance Misrepresentation Must be Determined by a Jury is Not Applicable to This Case and Cannot be Applied in this Court ........ 1

B. Plaintiff's Argument Discloses No Factual Dispute Regarding The Material Misrepresentations Made To CFLI In Connection With Mr. Littlefield's 2003 Life Insurance Application ........ 4

1. Summary Judgment in Favor of the Insurer Is Appropriate Where Applicant Justifies Nondisclosure by Claiming that Hernia and Related Physician Names Were Disclosed and a HIPPA Form Was Signed ........ 4

2. Summary Judgment in Favor of the Insurer Is Appropriate Where Applicant Seeks to Justify Nondisclosure of Medical Appointments Based on Physician Reassurance that Everything Seems Okay ........ 7

3. Summary Judgment in Favor of the Insurer Is Appropriate where the Only Factual Dispute Is the Oral Representations Made to the Agent ........ 8

4. CFLI Has Sustained its Burden of Establishing that Michael Littlefield's Misrepresentations Were Material ........ 10

III. THE LOCAL RULES OF THIS COURT DO NOT PROHIBIT CITATION TO UNPUBLISHED OPINIONS ........ 13

IV. CONCLUSION ........ 13




PRV_907046_1.DOC/PSULLIVAN

# TABLE OF AUTHORITIES

## Cases

*Accident Ins. Dept. v. Brooks*, 216 Ala. 605, 114 So. 6 (1926) .................... 2
*Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525 (1958) .................... 4
*Chorney v. Metropolitan Life Ins. Co.,* 54 R.I. 261, 172 A. 392 (R.I. 1934) .................... 3
*Columbian Nat. Life Ins. Co. v. Indus. Trust Co.*, 57 R.I. 325, 190 A. 13 (1937) .................... 7, 11
*Hanna v. Plumer,* 380 U.S. 460, 470 (1965) .................... 4
*Herron v. S. Pac. Co.*, 283 U.S. 91 (1931) .................... 3
*Jerrett v. John Hancock Mut. Ins. Co.*, 18 R.I. 754, 30 A. 793 (R.I. 1894) .................... 12
*Keatley v. Grand Fraternity*, 198 F. 264 (D. Del. 1912) .................... 2
*LeBus v. Northwestern Mutual Life Ins. Co.,* 55 F.3d 1374 (8th Cir. 1995) .................... 6, 7, 8
*New England Life Ins. Co. v. Taverna*, 2002 WL 718755 (E.D.N.Y. 2002) .................... 9, 12, 13
*Prudential Ins. Co. of Am. v. Tanembaum*, 167 A. 147 (R.I. 1933) .................... 3, 7, 8
*Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W. 3d 584 (Tenn. Ct. App. 2006)3, 9, 11, 12
*Sovereign Camp W.O.W. v. Beard*, 26 Ga. App. 130, 105 S.E. 629 (1921) .................... 2, 3

## Statutes

R.I. Gen. Laws § 27-25-23 .................... 1, 2
R.I. Gen. Laws § 27-25-34 .................... 2
R.I. Gen. Laws § 27-29-4 .................... 2
R.I. Gen. Laws § 27-4-10 .................... 1, 2, 3

## Other Authorities

C. Wright & A. Miller, 9 Fed. Prac. & Procedure § 2303, at 61-62 (1995) .................... 3

## Rules

Fed. R. Civ. Pro. 56 .................... 3

## I. INTRODUCTION

Essentially conceding that Mr. Littlefield failed to disclose information requested by defendant Catholic Family Life Insurance Company ("CFLI") during its application process, plaintiff Colleen Littlefield ("Plaintiff") instead opposes this motion for summary judgment principally in reliance upon an inapplicable provision of Rhode Island law, which mandates a jury even when the facts are undisputed. Plaintiff also ignores the undisputed evidence regarding the material misrepresentations that are at the core of this summary judgment motion; instead, she argues that the disclosure of hernia surgery and the failure to disclose as yet undiagnosed cancer excuse or render Mr. Littlefield's admitted misrepresentations immaterial. Finally, she contends that the factual dispute regarding oral statements allegedly made by the agent of Catholic Family Life Insurance Company ("CFLI") prevents summary judgment.[1]

None of these arguments is availing.

## II. LEGAL ARGUMENT

### A. Rhode Island's Statutory Mandate that Life Insurance Misrepresentation Must be Determined by a Jury is Not Applicable to this Case and Cannot be Applied in this Court.

Plaintiff attempts to avoid the clear intent of the Rhode Island General Assembly to exempt fraternal benefit societies from provisions of the insurance laws, including R.I. Gen. Laws § 27-4-10, unless otherwise specified. R.I. Gen. Laws § 27-25-23. In support

---

[1] As CFLI's Response to Plaintiff's Statement of "Disputed" Facts reveals, except for Facts pertaining to the oral statements made at the meeting on August 25, 2003, with CFLI agent Donald Demers, none of Plaintiff's Facts are actually disputed. Specifically, Plaintiff's "Disputed" Facts ¶¶ 6, 7, 9, 10, 13, 15, 17, 18-21, 23, 27, 29, 35-38, 44-46, 49 and 53 are undisputed. Plaintiff's "Disputed" Facts ¶¶ 1-3, 8, 11-12, 22, 28, and 39 are undisputed for purposes of this motion. Plaintiff's "Disputed" Facts ¶¶ 4-5, 14, 24-26, 30, 32-34, 41-43, 47-48, 50-52, and 54-56 articulate the Fact so as to misstate the cited record, or they are incomplete or argumentative; nevertheless, in all instances, the underlying record evidence is undisputed. Finally, Facts ¶¶ 16, 39-40 and 46 pertain to the oral statements made in the meeting with Mr. Demers on August 25, 2003; these are disputed. This dispute is immaterial to the outcome of this motion. *See infra* at 8-10.

of her argument, she points to the provision of the Rhode Island Fraternal Code, which provides that fraternal benefit societies are subject to the "laws and regulations of the Commissioner of Insurance **prohibiting unfair trade practices**." R.I. Gen. Laws § 27-25-34 (emphasis supplied). This provision clearly makes fraternal societies subject to Chapter 29 of Title 27 of the Rhode Island General Laws, which contains a lengthy provision prohibiting all insurers from committing unfair trade practices, including misrepresentation. R.I. Gen. Laws § 27-29-4. That section and the supporting regulations address unfair trade practices (including misrepresentation) committed **by the insurer**. Neither R.I. Gen. Laws § 27-25-34 nor R.I. Gen. Laws § 27-29-4 has anything to do with misrepresentation **by the insured,** which is at issue here. Therefore, R.I. Gen. Laws § 27-25-34 does not require this Court to read the unusual jury mandate of R.I. Gen. Laws § 27-4-10 into the Chapter on Fraternal Benefit Societies.

In further support of her argument, Plaintiff replies on three cases from the period early in the twentieth century when fraternal benefit societies were more common. Two of them – *Accident Ins. Dept. v. Brooks*, 216 Ala. 605, 114 So. 6 (1926), and *Keatley v. Grand Fraternity*, 198 F. 264 (D. Del. 1912) – do not deal at all with whether a statute regarding misrepresentation by the insured is applicable to a fraternal society. However, *Sovereign Camp W.O.W. v. Beard*, 26 Ga. App. 130, 105 S.E. 629 (1921), does address the interpretation of language in the fraternal society statute somewhat analogous to R.I. Gen. Laws § 27-25-23. In *Beard*, facing the argument that an immaterial misrepresentation nevertheless could void an insurance contract, the court focused on whether it was the purpose and intent of the Georgia legislature to repeal settled rules of construction governing insurance contracts. *See* 105 S.E. at 630. The court stretched (its



PRV_907046_1.DOC/PSULLIVAN

discomfort with its interpretation is plain in the text of the opinion) to find a way to hold that the insurance contract was subject to principles of construction developed through the common law and embodied in the legislative scheme. *Id.* By contrast, here, R.I. Gen. Laws § 27-4-10 has been much criticized; indeed, the Rhode Island Supreme Court has made clear that it should be narrowly interpreted so as to avoid applicability in cases where the material misrepresentation is undisputed. *Prudential Ins. Co. of Am. v. Tanembaum*, 167 A. 147, 149-50 (R.I. 1933). *See also Chorney v. Metropolitan Life Ins. Co.,* 54 R.I. 261, 172 A. 392, 393 (1934) (narrowly interpreting predecessor to R.I. Gen. Laws § 27-4-10 as inapplicable to case where false representation of good health voided a life policy that made good health a condition of the policy).

Finally, and if this Court is inclined to conclude that R.I. Gen. Laws § 27-4-10 is nevertheless applicable so that a jury must be convened to deal with a case where there is no factual dispute (yet the emotionalism of the evidence may be overwhelming),[2] this Court must still decline to follow this state procedural statute, which is at variance with the long-established federal procedure embodied in Fed. R. Civ. Pro. 56, that where there is "no genuine issue as to any of the materials facts . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has unanimously held that such a state procedural rule cannot control the procedure applicable in this federal Court, even when memorialized in a state statute. *See Herron v. S. Pac. Co.*, 283 U.S. 91, 94-95 (1931) (state constitution cannot mandate jury trial in federal court); *see also Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 536

2 The unfortunate circumstances frequently presented by a case brought by a beneficiary of life insurance following the death of a loved one cannot color the application of the law to the facts of the case. *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 589-90 (Tenn. Ct. App. 2006).

(1958) (state cannot interfere in allocation of responsibilities between judge and jury in federal court); C. Wright & A. Miller, 9 Fed. Prac. & Procedure § 2303, at 61-62 (1995) (reviewing law). Therefore, this Court must follow the procedures established in the Federal Rules of Civil Procedure, and cannot ignore them to apply R.I. Gen. Laws § 27-4-10. *See* C. Wright, *supra*, at 57-58 ("It is now also clear that federal law determines whether there is a right to jury trial in a case in federal court and that state law is wholly irrelevant."). *See also Hanna v. Plumer,* 380 U.S. 460, 470 (1965).

**B. Plaintiff's Argument Discloses No Factual Dispute Regarding The Material Misrepresentations Made to CFLI in Connection with Mr. Littlefield's 2003 Life Insurance Application.**

1. Summary Judgment in Favor of the Insurer is Appropriate Where Applicant Justifies Nondisclosure by Claiming that Hernia and Related Physician Names Were Disclosed and a HIPPA Form Was Signed.

Boiled down to its essentials, Plaintiff's argument is that Mr. Littlefield fully disclosed to CFLI that he had had a hernia that was surgically repaired and that his failure to disclose the diagnosis of metastatic cancer must be excused because neither he nor his physicians knew he had cancer at the time he placed the application. Further, she argues, the physicians he named and the HIPPA form he signed shift the obligation to CFLI to ferret out the truth. Therefore, she concludes, there was no misrepresentation and this motion should be denied.

The strategically inaccurate articulation of CFLI's reason for declining to pay the policy that pervades Plaintiff's Memorandum also arose somewhat dramatically at the end of the deposition of Kim Ingram, CFLI's 30(b)(6) designee on its underwriting procedures, as well as the individual at CFLI responsible for making the decision to decline with respect to this policy. Throughout the deposition, Plaintiff's counsel focused

her questions on the theory that disclosure of the hernia absolved Mr. Littlefield of the obligation to answer truthfully and completely. At the very end of the deposition, she asked Ms. Ingram whether "there [is] anything I haven't asked you that you think is relevant to CFLI's denial of payment on Michael Littlefield's policy?" Ms. Ingram responded:

> A. You have not asked me if having the hernia was the basis for our denial of the claim.
> Q. Is having the hernia the basis of the denial of your claim?
> A. No. It is not.
> Q. What is the basis for the denial of your claim?
> A. Misrepresentation of the doctor and follow-up visits that occurred before the application after that May date that was stated on the paramed.

CFLI's Undisputed Facts ¶59. [Ingram Dep. at 153 l.21 to 154 l.12.] Attached hereto as Exhibit A.

Plaintiff ignores Mr. Littlefield's powerful testimony given shortly before his death, *see* CFLI's Undisputed Facts ¶ 60, which vividly describes how he felt and his many medical appointments in the spring and summer of 2003. In so doing, she effectively concedes that Mr. Littlefield affirmatively misrepresented that everything was fine in the aftermath of routine hernia surgery, as well as that he failed to disclose the myriad of hospital and physician visits, tests performed and medication prescribed as a result of the ongoing pain and the sensation of a "baseball there" from which he suffered both during the period immediately preceding and during the precise period when he applied for life insurance. CFLI's Undisputed Facts ¶¶ 16-30.

CFLI's Memorandum lays out its argument why these misrepresentations admitted by Mr. Littlefield must result in summary judgment if they are material, *see* Memorandum at 31-39, as well as that providing the names of doctors and signing a

HIPPA form does not excuse such misrepresentation. *Id.* at 37-38. These arguments will not be repeated here. Rather, we bring to the Court's attention additional authority, leading to the conclusion that summary judgment is appropriate where the undisputed facts reveal a failure to respond accurately to multiple questions in the insurance application process, creating the illusion of good health, when (as with Mr. Littlefield) in fact the applicant is suffering from symptoms for which he is actively seeking medical attention.

In a case sadly similar to this one, *LeBus v. Northwestern Mutual Life Ins. Co.*, 55 F.3d 1374 (8th Cir. 1995), the applicant consulted his physician for what he originally thought was a cold but the focus of the consultation and treatment quickly changed from treatment of a cold to diagnostics regarding a mass in the lung. *Id.* at 1376. The factual record on the motion for summary judgment required the court to assume that, at the time of the application on which he disclosed only that he was being treated for a cold, the applicant had had a series of follow up appointments, knew that the x-ray had revealed a mass, but had not been told that he had cancer and did not believe his condition was serious. *Id.* at 1377-78. In granting summary judgment in favor of the insurer, the district court concluded that the failure to disclose the appointments, diagnostic tests and the x-ray depicting the abnormal mass were material misrepresentations, and that the applicant's belief that his condition was a cold and not cancer was immaterial. *Id.*

The Eighth Circuit affirmed, holding that:

> Even if [applicant] did not appreciate the seriousness of his condition and did not have a definitive diagnosis of cancer, the request for reinstatement form **obligated him to reveal the consultations to give the insurance company an opportunity to assess their importance and his then-existing physical condition.** . . . [T]he true facts present a much different picture than the [applicant's] singular cryptic

> response of "Dr. LaFond-cold." [The applicant's] actual consultations of October 18 and October 21, 1001, suggest a serious health condition.

*Id.* at 1378-79 (emphasis supplied).

2. Summary Judgment In Favor Of The Insurer Is Appropriate Where Applicant Seeks to Justify Nondisclosure Of Medical Appointments Based On Physician Reassurance That Everything Seems Okay.

Plaintiff argues that Dr. Abadier's disregard of Mr. Littlefield's medical complaints, symptoms and test results (for which the medical malpractice action is now pending) justified the failure to disclose all of his medical appointments, emergency room visit, diagnostic testing and medication prescription during the spring and summer of 2003. CFLI's Memorandum addresses this argument at 36-37; the additional argument below focuses on cases from the Rhode Island Supreme Court.

In *Columbian Nat. Life Ins. Co. v. Indus. Trust Co.*, 57 R.I. 325, 190 A. 13 (1937), the Rhode Island Supreme Court addressed plaintiff's claim that the applicant's failure to disclose various medication appointments was justified by the applicant's belief that he was did not have angina pectoris. *Id.* at 19. The court held that the failure to disclose that he had consulted a physician for cardiac pains was a material misrepresentation, justifying verdict in favor of the insurer. *Id.* at 15, 19. It noted that the applicant knew he had had attacks of cardiac pain serious enough for him to see a doctor, and that one doctor had told him it was angina, but he did not believe it, and he knew from the questions in the application that the insurer deemed it material whether he had been ill. The insurer was entitled to a truthful answer to whether he had consulted a physician, so that it could determine whether to find out more by asking for medical records. *Id.*

Similarly, in *Prudential Ins. Co. of Am. v. Tanenbaum*, 167 A. 147 (R.I. 1933), the Rhode Island Supreme Court affirmed judgment in favor of the insurer, despite plaintiff's claim that the applicant had been seeking medical treatment for stomach pain, but his physicians had told him his trouble was imaginary rather than real, and that the applicant had told the insurance agent about these medical visits. *Id.* at 148. The court found that none of this excused the falsity of his written response in the affirmative to the insurer's question whether he was in good health or his failure to include the medical visits in the response to the question whether he had been attended by a physician in the prior three years. *Id.* at 147-48. Interestingly, in *Tanenbaum*, the court noted that the death certificate indicated that the duration of the last illness that caused death (cancer) was two months, a period that commenced after the issuance of the policy. *Id.* at 147. It ignored the death certificate and focused instead on the applicant's failure to disclose his discomfort and the medical appointments in connection with that discomfort in concluding that the policy was void as a result of the failure to disclose:

> [Insurer] was entitled to receive correct information as to applicant's prior treatment by physicians so it could decide upon the information given by these physicians, or otherwise, whether it would accept the risk. . . . The fact that a specific answer was sought by the insurer in an application for an insurance policy makes that answer material. When such an answer is untrue the policy will ordinarily be forfeited.

*Id.* *See also LeBus v. Northwestern Mutual Life Ins. Co.,* 55 F.3d 1374, 1376 (8th Cir. 1995) (applicant's belief that his condition was a cold and not cancer was immaterial).

3. Summary Judgment in Favor of the Insurer Is Appropriate Where the Only Factual Dispute Is the Oral Representations Made to the Agent

A factual dispute regarding oral statements made by the agent or oral disclosure made to the agent is immaterial where the written disclosures were filled in and made



PRV_907046_1.DOC/PSULLIVAN

available to Mr. Littlefield, who signed to affirm their accuracy and completeness – this argument is addressed in CFLI's Memorandum at 34-36. Additional authority to the same effect is presented here.

When the applicant declares in writing that the statements made on the application are true and complete, as Mr. Littlefield repeatedly did here, CFLI's Undisputed Facts ¶¶ 34, 40, 54-56, his beneficiary cannot later claim that the misrepresentations were somehow attributable to the paramedic or the agent by claiming the agent instructed the applicant to lie. *New England Life Ins. Co. v. Taverna*, 2002 WL 718755, at *11 (E.D.N.Y. 2002). Once the applicant signs the application declaring that it is true and complete, the fact that a life policy with a material misrepresentation in the application may be voided is not altered by the beneficiary's claim that the agent has knowledge of the misrepresentation. *Id.* at *11-12. *See also Smith v. Tenn. Farmers Life Reassurance Co.*, 210 SW.3d 584, 586, 591 & n.7 (Ct. App. Tenn. 2006) (widow's claim that her husband answered the questions completely and truthfully, but insurance agent recorded his answers incorrectly, immaterial when applicant signed application after it was filled out by the agent).

An additional reason why the disputed oral communications with the agent are irrelevant and must be disregarded arises when the contract of insurance contains a clause stating that the application and policy formed the entire contract between the parties so that extraneous evidence, such as oral communications with the agent, cannot be introduced to modify the terms. *New England Life Ins. Co. v. Taverna*, 2002 WL 718755, at *11 (E.D.N.Y. 2002). Here the insurance contract for the 2003 policy is clear:

> The **CONTRACT is this policy, together with the application** and any riders. Our Articles of Incorporation and By-laws also are part of the contract.
>
> . . . .
>
> The contract consists of:
>
> a. this policy;
> b. any additional benefits provided by rider;
> c. the attached application;
> d. any required medical examination or declaration of insurability; and
> e. our Amended and Restated Articles of Incorporation and By-Laws, as amended from time to time.
>
> . . .
>
> All statements made in the application are representations and not warranties. We cannot use any statement to invalidate the policy nor to defend against a claim unless that statement is contained in the written application.
>
> **No agent** or person other than the President or Secretary **has the authority to change or modify this policy or waive any of its provisions.**

Compl., Refiled Ex. 1, at 5, 12 (emphasis supplied). Thus, as in *Taverna*, the contract pertaining to the 2003 policy itself is clear that the contract is limited to the policy, application and paramedical examination, so that oral statements made by or to the agent are not part of the policy and that oral statements made by the agent cannot change or modify the policy.

For all of the foregoing additional reasons, the factual dispute regarding what was said during the meeting with Mr. Demers on August 25, 2003, is irrelevant; the written application contained material misrepresentations that justify summary judgment in favor of CFLI.

4. CFLI Has Sustained Its Burden of Establishing That Michael Littlefield's <u>Misrepresentations Were Material</u>.

Plaintiff has presented no expert or other evidence to suggest a factual dispute regarding the materiality of these misrepresentations. Thus, the undisputed record,

consisting of the questions in the application forms themselves, supplemented by the testimony of CFLI's employees and the Affidavit of Kim Ingram, establishes that accurate disclosures would have resulted in follow-up inquiry regarding medical records, which in this case would have resulted in denial of the insurance. CFLI's Undisputed Facts ¶ 59. Such evidence is overwhelmingly sufficient to establish materiality at a matter of law, which is discussed in CFLI's Memorandum at 27-29. In this Reply, CFLI's discusses only additional authorities pertinent to the issue of materiality, including cases from the Rhode Island Supreme Court.

The cases are clear that a finding that the insurer would not have issued the policy had the truth been disclosed is unnecessary; rather, the insurer must demonstrate that it was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability. *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W. 3d 584, 590 (Tenn. Ct. App. 2006). Thus, the questions the insurer asks on its application can be used by the court to determine the types of conditions the insurer considers relevant to the risk of loss so that untruthful answers to the questions is sufficient to establish materiality, especially when coupled with testimony of insurance company representatives regarding how truthful answers would have affected the decision to issue the policy. *Id. See also Columbian Nat. Life Ins. Co. v. Industrial Trust Co.*, 57 R.I. 325, 190 A. 13, 19 (R.I. 1937) (when the language of the application form asks whether the applicant had been ill and whether he had consulted a physician, those were matters material to the insurer's determination, and the failure to provide complete answers is a material representation).

In *Smith*, the Court carefully lays how to determine a case like this one. Whether the applicant made misrepresentations is a question of fact; here the failure to disclose Mr. Littlefield's medical appointments, hospital visits, diagnostic procedures and medication are undisputed. *Id.* at 589. The remaining issue for this Court requires it to focus on the specific misrepresentations that are undisputed; the determination whether a particular misrepresentation increases the insurance company's risk of loss is a question of law for the court. *Id.*

For example, in *Jerrett v. John Hancock Mut. Ins. Co.*, 18 R.I. 754, 30 A. 793 (1894), the Rhode Island Supreme Court focused on the applicant's failure to disclose that her sister had died of tuberculosis. In light of the insurer's underwriting rule that death from consumption in each of two succeeding generations would cause rejection of the applicant, failure to disclose was found to be material and the claim of the beneficiary was rejected. *Id.* at 93.

In *New England Life Ins. Co. v. Taverna*, 2002 WL 718755 (E.D.N.Y. 2002), the Court granted the insurer's motion for summary judgment in the face of undisputed evidence that the medical forms completed during the paramedical examination and the underwriter interview omitted, *inter alia*, repeated medical consultations for back pain and a prescription for pain, including an appointment on that same day he filled out the first part of the application. *Id.* at *3. For the conclusion that the misrepresentations were material, the court relied on sworn testimony by a qualified representative of the insurer that disclosure of these appointments and the prescription, together with truthful disclosure of his employment history, would have caused the insurer to decline to issue the insurance. *Id.* at *5. The court held that it is the applicant's duty to disclose <u>every</u>

fact bearing on or pertaining in any way the insurability of his life, especially where specific questions are put to him calling for such information. *Id* at *7. Partial disclosure is as much a misrepresentation as a false affirmative statement. *Id.*

## III. **THE LOCAL RULES OF THIS COURT DO NOT PROHIBIT CITATION TO UNPUBLISHED OPINIONS.**

In its Memorandum in support of this motion for summary judgment, several of the cases CFLI cited are unpublished opinions from other jurisdictions. Plaintiff contends that this is "shameful." Plaintiff's Memorandum at 25. In support, Plaintiff relies on the Local Rules of the First Circuit. However, Circuit Court rules are not applicable to a Memorandum filed in this Court, and this Court's Local Rules do not limit a litigant's ability to rely on such unpublished cases. Moreover, Appellate Rule 32.1 was recently amended to bring the Rules of Appellate Procedure into conformity with the reality that unpublished opinions are now freely available electronically. Obviously, cases from other jurisdictions are not binding precedent, whether published or not, and CFLI did not present them as such. Rather those cases were cited because they present analogous factual patterns and are instructive regarding how other courts have dealt with undisputedly material misrepresentations in emotionally charged life insurance cases.

## IV. **CONCLUSION.**

For all of the foregoing reasons, Defendant CFLI respectfully requests that this Court grant its Motion for Summary Judgment.

/s/ Patricia A. Sullivan
Patricia A. Sullivan (#2120)
EDWARDS ANGELL PALMER
& DODGE LLP

2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

Attorneys for Defendant
Catholic Family Life Insurance
Company

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of September, 2007, a true and accurate copy of the within *Reply Memorandum in Support of CFLI's Motion for Summary Judgment* was served by ECF on:

Karen Davidson, Esq.
One Ship Street
Providence, RI 02903

/s/ Patricia A. Sullivan