C

Supreme Court of Rhode Island.
PRUDENTIAL INS. CO. OF AMERICA
v.
TANENBAUM.
**No. 1018.**

June 16, 1933.

Appeal from Superior Court, Providence and Bristol Counties; Hugh B. Baker, Presiding Justice.

Suit by the Prudential Insurance Company of America against Shandel Tanenbaum. From an adverse decree, respondent appeals.

Affirmed, and cause remanded.

West Headnotes

**Cancellation of Instruments ⚷13**
69k13 Most Cited Cases
Statute providing that question whether misstatement in procuring life policy contributed to contingency on which policy became payable should be for jury held not to deprive equity of jurisdiction to cancel policy for fraud because of death of insured within contestable period. Gen.Laws 1923, c. 342, § 53.

**Cancellation of Instruments ⚷13**
69k13 Most Cited Cases
Insurer may bring suit to cancel life policy for false representations in application after insured's death but within contestable period and before commencement of law action because, at that time, insurer had no adequate remedy at law.

**Equity ⚷377**
150k377 Most Cited Cases
In equity suit, respondent waived right to have issues framed to be tried by jury by proceeding without objection to have issues tried by court. Gen.Laws 1923, c. 341, § 7.

**Evidence ⚷14**
157k14 Most Cited Cases
Courts take judicial notice that cancer is serious disease.

**Insurance ⚷3001**
217k3001 Most Cited Cases
(Formerly 217k256.1)
In application for life policy, representation as to material fact which is false in fact need not have been fraudulently made.

**Insurance ⚷3003(11)**
217k3003(11) Most Cited Cases
(Formerly 217k292.1(3), 217k292.3)
One affected with cancer is not in "sound health" within meaning of insurance contract containing warranty as to sound health.

**Appeal and Error ⚷1009(3)**
30k1009(3) Most Cited Cases
Finding on conflicting evidence by justice sitting without jury will not be set aside unless it clearly fails to do justice.

**Insurance ⚷2958**
217k2958 Most Cited Cases
(Formerly 217k255)
Fact that specific answer is sought by insurer in application for policy makes that answer material, and when answer is untrue, policy will ordinarily be forfeited.

**Insurance ⚷3003(4)**
217k3003(4) Most Cited Cases
(Formerly 217k291.1, 217k291(1))
False answers by applicant for insurance to questions respecting his present health were material misstatements.

***147** Knauer & Fowler and Frank H. Bellin, all of Providence, for appellant.

McGovern & Slattery and James A. Higgins, all of Providence, for appellee.

Comstock & Canning and Andrew P. Quinn, all of Providence, for Industrial Trust Company, as amicus curiae.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

SWEENEY, Justice.

This bill in equity was brought to cancel two policies issued upon the life of Jacob Tanenbaum, now deceased, and payable to his wife. The respondent filed an answer and cross-bill and prayed that complainant be directed to pay her the amount of the policies. After hearing, final decree was entered dismissing the cross-bill and ordering the policies canceled. Respondent has brought the cause to this court by appeal from this decree.

Complainant asks to have the two policies canceled on the ground that Mr. Tanenbaum obtained their issuance by fraudulent statements. Respondent denies the alleged fraud.

The facts necessary to be stated in order to determine the rights of the parties are as follows: May 4, 1925, complainant issued two policies of insurance for $10,000 each upon the life of Jacob Tanenbaum of Providence; June 9 and July 14, Mr. Tanenbaum paid the semiannual premiums due thereon. Mr. Tanenbaum was operated upon at a hospital in New York City September 22, 1925, and died five days thereafter. The certificate of his death, which was signed by the house surgeon, stated that the "diagnosis during his last illness was carcinoma of rectum (primary) duration -- yrs. 2 mos. -- da. Contributory (secondary) operation."

The policies were issued in response to an application signed by Mr. Tanenbaum dated April 10. A copy of this application and his declarations to the medical examiner were attached to each policy and made a part of the contract.

The declarations to the medical examiner contained a series of questions, two of the questions and the answers thereto being: "8. Are you now in good health? Yes. 9. On ***148** what dates and for what complaints have you been attended by a physician during the past three years? None." The declarations were signed by Mr. Tanenbaum. Immediately above his signature he declared that all statements and answers to the questions were complete and true, and he agreed that they should become a part of the contract of insurance. He also waived all provisions of law forbidding any physician, or other person who had attended or examined him, from disclosing any knowledge or information thereby acquired.

In its bill complainant averred that at the time Mr. Tanenbaum signed the application for insurance and answered the questions asked by the medical examiner he was not in good health but was suffering from carcinoma, with its attendant symptoms; that in August and September, 1924, he was under treatment for intestinal disease; that during the spring and summer of 1925, both before and after he signed the application for insurance, he consulted several physicians for serious disorders in his stomach and intestines; that, with full knowledge he was suffering from these disorders, he made false answers to questions 8 and 9 with intent to deceive and defraud complainant and induce it to issue its policies of insurance; and that complainant would not have issued said policies had it known of the falsity of said answers.

Complainant also averred that November 11, 1925, respondent demanded payment of the face value of the policies; that it denied liability and offered to return the amount of the premiums paid.

Complainant further averred that by the terms of the policies they were incontestable after the expiration of one year from May 14, 1925, the date of their issuance, and that, as the respondent had not commenced an action at law to enforce payment of said policies, complainant might be unable to contest the validity of the policies unless relief were granted in equity.

Respondent filed an answer and cross-bill. She averred that Mr. Tanenbaum answered completely and truly all questions put to him by complainant's medical examiner. She denied that Mr. Tanenbaum was suffering from carcinoma or illness at the time. She admitted that a short time prior to his signing the application he complained of stomach trouble; that during this period he went to two or three physicians; that each of them stated his trouble to be imaginary rather than real; and that these

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

statements were related to complainant's medical examiner. She also alleged that Mr. Tanenbaum was in good health at the time he made the statements to the medical examiner. She further averred that if it should be held that he made the statement that he had not been attended by a physician within three years prior to the medical examination, the statement was not material misstatement and did not contribute in any way to the event upon which the policy became payable.

Respondent neither admitted nor denied that complainant would be unable to contest the validity of its policies after the lapse of one year from the date of their issuance. Respondent set up the allegations of her answer by way of cross-bill and claimed the benefit thereof as by statute provided, and prayed that complainant be required to pay her the amount due under the policies.

The essential issues raised by the pleadings were: Did the medical examiner write the answers to questions 8 and 9 as given by Mr. Tanenbaum? If so, were his answers true?

The trial occupied several days, and much testimony, factual and opinion, was introduced in support of the contentions of each party. The trial justice found that the medical examiner asked Mr. Tanenbaum the questions on the printed form for the medical examination and wrote the answers given by Mr. Tanenbaum or by some one for him and in his presence; that Mr. Tanenbaum knew the contents of the paper and signed it, and was bound by the statements therein. The trial justice held that the answers to questions 8 and 9 were material to the risk; that Mr. Tanenbaum's answers to these questions were untrue because his health had not been good for about eight months before the date of the application; that he had been attended by three physicians during this time; and that his untrue answers constituted fraud sufficient to vitiate the policies.

[1] We have frequently held that the finding of facts from conflicting evidence made by a justice sitting without a jury is entitled to great weight and will not be set aside unless such finding clearly fails to do justice between the parties. Raferty v. Reilly, 41 R. I. 47, 102 A. 711; Preble v. Higgins, 43 R. I. 10, 109 A. 707.

That Mr. Tanenbaum's answers to questions 8 and 9 were not true is clearly shown by the evidence. Respondent admits in her answer that Mr. Tanenbaum was attended by two physicians within the three years preceding the date of his application for insurance. The evidence conclusively proves this fact. One of these physicians testified that he diagnosed Mr. Tanenbaum's trouble as possible cancer and recommended that X-ray pictures be taken, which was done September 12, 1924. Mr. Tanenbaum went to Boston August 7, 1925, to consult an eminent medical specialist. This specialist testified that Mr. Tanenbaum told him he had been troubled with heartburn for about a year and a half. After a careful examination this specialist diagnosed Mr. Tanenbaum's trouble as cancer of advanced stage which had been growing ***149** for at least a year. A physician, in answering a hypothetical question, was of the opinion that Mr. Tanenbaum was afflicted with the cancer about eighteen months.

Questions 8 and 9 are unambiguous and required a statement of facts from Mr. Tanenbaum. Complainant was entitled to receive correct information as to applicant's prior treatment by physicians so it could decide upon the information given by these physicians, or otherwise, whether it would accept the risk. The local medical examiner testified he asked the questions of Mr. Tanenbaum and wrote his answers correctly and that, if he had been informed by Mr. Tanenbaum that he had been treated by physicians, it would have been his duty to have reported this fact to the company. The chief medical examiner for complainant testified that the answers to these questions were crucial on the question of the acceptance of an applicant; and that, if the complainant, through him, had known of the facts testified to by the physicians who had treated Mr. Tanenbaum, the company would not have issued the policies.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[2] Respondent contends that the false answers to questions 8 and 9 were not material misstatements and did not contribute in any way to the event upon which the policy became payable. The contention cannot be sustained. In Wells v. Great Eastern Casualty Co., 40 R. I. 222, 100 A. 395, 397, this court said: "It has been the long-settled rule in this state that 'statements in an application for insurance, made as of the applicant's own knowledge, upon which the contract is based, are warranties.' " The opinion cited our cases supporting this proposition. Other cases to the same effect are: Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; Travelers' Ins. Co. v. Pomerantz, 246 N. Y. 63, 158 N. E. 21; Metropolitan Life Ins. Co. v. Shaw, 30 Ga. App. 97, 117 S. E. 106; Bellestri-Fontana v. N. Y. Life Ins. Co., 234 Mich. 424, 208 N. W. 427; Simpson v. Metropolitan Life Ins. Co. (Mo. App.) 282 S. W. 454.

[3] The fact that a specific answer is sought by the insurer in an application for an insurance policy makes that answer material. When such an answer is untrue the policy will ordinarily be forfeited. Leadman v. AEtna Life Ins. Co. (W. Va.) 163 S. E. 716. In Raives v. Raives et al. (C. C. A.) 54 F.(2d) 267, 269, it was held that representations made by an applicant for insurance, to the effect that within a specified period he had not consulted a physician concerning his health, were material; when false amounted to fraud on the insurer, who had relied upon them in issuing a policy, and rendered the insurance void. The court said: "The answer was made to be relied upon and was relied upon. Since it was willfully false, the intention to deceive follows as a matter of law. Claflin v. Commonwealth Ins. Co., 110 U. S. 81, 95, 3 S. Ct. 507, 28 L. Ed. 76."

Some of the cases in which the insurer has been held not liable to a beneficiary, on account of an untrue statement by the insured to the effect that he had not been treated by a physician within a specified period or that he was in good health, are: Fountain & Herrington, Inc., v. Mutual Life Ins. Co. of New York (C. C. A.) 55 F.(2d) 120; Metropolitan Life Ins. Co. v. McDonald, 246 Ky. 109, 54 S.W.(2d) 625; Panopoulos v. Metropolitan Life Ins. Co., 96 Pa. Super. Ct. 415; Leadman v. Aetna Life Ins. Co., supra; Raives v. Raives, supra; State Bank & Trust Co. v. Conn. Gen. Life Ins. Co., 109 Conn. 67, 145 A. 565.

[4][5] The uncontroverted testimony proves that carcinoma was the primary cause of the death of Mr. Tanenbaum. Courts take judicial notice of the fact that cancer is a serious disease. One affected with cancer is not in sound health within the meaning of an insurance contract containing a warranty as to sound health. Champion v. Life & Cas. Ins. Co. of Tenn. (Ala. App.) 141 So. 363.

[6] Respondent earnestly contends that the last clause in section 5037 (chapter 342, § 53), Gen. Laws 1923 (now section 12, chap. 1757, Pub. Laws 1931), gives her an absolute right to have a jury trial and bars complainant from proceeding in equity to procure a cancellation of the policies. The section reads: "No misstatement made in procuring a policy of life insurance shall be deemed material or render the policy void unless the matter thus represented shall have actually contributed to the contingency or event on which the policy is to become due and payable; and whether the matter so represented contributed to said contingency or event, in any case, shall be a question for the jury."

Passing the question whether respondent waived her right to challenge the jurisdiction of the court by not demurring to the bill or by not pleading the statute in bar, and proceeding to trial on the issues raised by her answer and cross-bill in which she prayed that the amount of the policies be ordered paid to her (see Setchell Auto Parts v. Artamian & Sutcliffe, 50 R. I. 144, 146 A. 87), we will consider the question now presented by respondent.

In Wells v. Great Eastern Cas. Co., supra, this court held the statute did not apply to a case where an insurance company had rescinded a policy during the life of the insured on the ground that a material statement contained in the application was untrue, and sustained the ruling of the trial justice that such

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

untrue statement was a false and fraudulent representation as to a material fact and a "false warranty" which justified the company in rescinding the contract. In ***150**Home Life Ins. Co. v. Zuribowitz (R. I.) 87 A. 25, the superior court took jurisdiction of a bill in equity brought to cancel a life insurance policy on the ground of misrepresentation by the insured of his age. When construing a statute very similar to ours, in Pacific Mutual Life Ins. Co. of Cal. v. Glaser, 245 Mo. 377, 150 S. W. 549, 45 L. R. A. (N. S.) 222, the court held that equity had jurisdiction to cancel a policy during the lifetime of the insured on account of untrue answers made by him in his application for insurance. As a general rule an insurance company may maintain a bill in equity, within the contestable period and during the life of the insured, to cancel a policy because of fraud on his part. 32 C. J. 1268.

Does the statute invoked by respondent deprive equity of jurisdiction to cancel a policy on the ground of fraud because of the death of the insured within the contestable period? We find nothing in the statute to support such a construction.

In this case the policy was to become payable upon the death of Mr. Tanenbaum. One of the alleged misstatements was that he was in good health when, in fact, he had a cancer which caused his death 130 days after he was examined by complainant's medical examiner. If this be so, the misstatement would be deemed material and render the policy void.

Respondent contends that this issue can be determined only by a jury as required by the last clause in said statute which reads: "and whether the matter so represented contributed to said contingency or event, in any case, shall be a question for the jury." There would be force in respondent's contention if she had brought an action to enforce complainant's liability on the policies. There is a distinction between an action at law to enforce liability on an insurance policy and a bill in equity to procure its cancellation on the ground of fraud. In an action at law clearly the statute would apply.

Complainant avers that it is without adequate remedy at law because each policy contains a provision which precludes it from contesting the validity of the policies, except for nonpayment of premiums, after the expiration of one year from their date. Thirteen days before the expiration of the year, complainant filed this bill. If it had waited until the expiration of the year, it could make no defense to any action at law which might be brought by respondent to enforce liability on the policies. In Murray v. State Mutual Life Ins. Co., 22 R. I. 524, 48 A. 800, 53 L. R. A. 742, it was held that the insurer was bound by the incontestable clause contained in its policy and after the lapse of the period specified was precluded from setting up a defense based upon false and fraudulent answers made by the insured in his application. This case is quoted with approval in Feierman v. Eureka Life Ins. Co. of Baltimore, 279 Pa. 507, 124 A. 171, 32 A. L. R. 646. In this case it appeared that the insured died within the contestable period, but proof of death was filed thereafter. The court held that the great weight of authority supported the position that the insurer must disavow liability within the contestable period by seeking to have the policy canceled. Judgment was ordered for plaintiff because the company did not act within two years from the date of the issuance of the policy. When construing an incontestable clause in Mohr v. Prudential Ins. Co., 32 R. I. 177, 78 A. 554, the court held that after the expiration of the contestable period defendant could not contest liability on the ground that the insured was not in good health at the time of the delivery of the policy. See, also, Killian v. Metropolitan Life Ins. Co., 251 N. Y. 44, 166 N. E. 798, 64 A. L. R. 956.

[7] Respondent had six years from the death of Mr. Tanenbaum within which to commence an action against complainant to enforce payment of the policies. By not commencing her action within one year from the date of the policies she would prevent complainant from making a defense of fraud. This fact makes it manifest that complainant had no remedy at law and that its only remedy was in a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

court of equity. In New York Life Ins. Co. v. McCarthy (C. C. A.) 22 F. (2d) 241, it was held that complainant had a right to bring a bill in equity to cancel a policy for false representations in the application after the death of the insured but within the contestable period and before the commencement of an action at law because, at that time, complainant had no adequate remedy at law. See, also, Metropolitan Life Ins. Co. v. Carter, 252 Mich. 432, 233 N. W. 370; New York Life Ins. Co. v. Steinman, 103 N. J. Eq. 403, 143 A. 529; Pacific Mutual Life Ins. Co. of Cal. v. Glaser, supra.

[8] Respondent could have asked the court to frame issues to be tried by a jury. Section 4984 (chapter 341, § 7), Gen. Laws 1923. She waived her right to this form of trial by proceeding, without objection, to have the issues tried by the court.

[9] Respondent contends that the bill should be dismissed because actual fraud is alleged in the bill and was not found by the court. The court found, after a careful consideration of the testimony, that the answers by the insured to questions 8 and 9 in the application were untrue and constituted fraud. The testimony fully supports the finding of facts and the conclusion follows as a matter of law. It is generally held that a representation as to a material fact which is false in fact need not have been fraudulently made. 32 C. J. 1286. In Leonard v. State Mutual Life Assurance Co., 24 R. I. 7, 51 A. 1049, 1050, 96 Am. St. Rep. 698, in reply to plaintiff's claim that an untrue answer did not ***151** avoid the policy because innocently made, the court said: "Falsity, not fraud, is the basis of liability on a warranty." It was held that: "The answer being untrue, and being a part of the contract, and relating to a matter within the knowledge of the applicant, it must be regarded as a material misstatement, which avoids the contract." See, also, Wells v. Great Eastern Cas. Co., supra; Stango v. Metropolitan Life Ins. Co., 162 A. 533, 10 N. J. Misc. 1128; Kerpchak v. John Hancock Mut. Life Ins. Co., 97 N. J. Law, 196, 117 A. 836.

After a careful consideration of the evidence and the law applicable thereto, we find no error in the decree.

The appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

53 R.I. 355, 167 A. 147

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H

Court of Appeals of Tennessee.
Neva June SMITH
v.
TENNESSEE FARMERS LIFE REASSURANCE COMPANY et al.
**No. M2005-00404-COA-R3CV.**

Nov. 18, 2005 Session.
June 14, 2006.
Permission to Appeal Denied by Supreme Court Nov. 13, 2006.

**Background:** After insurer denied claim for life insurance benefits on ground that insured had made misrepresentations that had increased its risk of loss, beneficiary of policy brought action against insurer to recover benefits. The Chancery Court, Franklin County, Jeffrey F. Stewart, Chancellor, found that misrepresentations had not increased insurer's risk of loss. Insurer appealed.

**Holdings:** The Court of Appeals, William C. Koch, Jr., P.J., M.S., held that:
(1) insured's failure to disclose his conviction for driving under the influence (DUI) was a misrepresentation that increased insurer's risk of loss, and thus insurer was within its statutory rights to decline to pay benefits under policy, and
(2) failure of insured to read the policy application before he signed it did not insulate him from misrepresentation.
Reversed and remanded.

West Headnotes

**[1] Appeal and Error ⚿1008.1(4)**
30k1008.1(4) Most Cited Cases
Appellate court will give great weight to a trial court's factual findings that rest on determinations of credibility.

**[2] Appeal and Error ⚿846(5)**
30k846(5) Most Cited Cases
If the trial court has not made a specific finding of fact on a particular matter, appellate court will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness.

**[3] Appeal and Error ⚿1012.1(1)**
30k1012.1(1) Most Cited Cases
Reviewing findings of fact in a bench trial requires an appellate court to weigh the evidence to determine in which party's favor the weight of the aggregated evidence falls. Rules App.Proc., Rule 13(d).

**[4] Appeal and Error ⚿1012.1(1)**
30k1012.1(1) Most Cited Cases
In weighing the evidence on review of the trial court's findings of fact, appellate court will determine there is a reasonable probability that a proposition is true when there is more evidence in its favor than there is against it; thus, the prevailing party is the one in whose favor the evidentiary scale tips, no matter how slightly. Rules App.Proc., Rule 13(d).

**[5] Appeal and Error ⚿931(1)**
30k931(1) Most Cited Cases
A presumption of correctness requires appellate courts to defer to a trial court's findings of fact. Rules App.Proc., Rule 13(d).

**[6] Appeal and Error ⚿931(1)**
30k931(1) Most Cited Cases
Because of the presumption of correctness, an appellate court is bound to leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. Rules App.Proc., Rule 13(d).

**[7] Appeal and Error ⚿1012.1(3)**
30k1012.1(3) Most Cited Cases
For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. Rules App.Proc., Rule 13(d).

**[8] Appeal and Error ⚿842(2)**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

30k842(2) Most Cited Cases

**[8] Appeal and Error ⚷931(2)**
30k931(2) Most Cited Cases
Appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues.

**[9] Insurance ⚷2958**
217k2958 Most Cited Cases

**[9] Insurance ⚷2959**
217k2959 Most Cited Cases
An insurance company is statutorily authorized to deny a claim for benefits if the insured made intentional misrepresentations on the application for
insurance or if the insured made misrepresentations that increased the insurer's risk of loss. West's T.C.A. § 56-7-103.

**[10] Insurance ⚷2985**
217k2985 Most Cited Cases
In the context of a bench trial, determining whether an insured intentionally misrepresented information, as would authorize insurance company to deny a claim for benefits, is a question of fact. West's T.C.A. § 56-7-103.

**[11] Insurance ⚷2985**
217k2985 Most Cited Cases
Determining whether a particular misrepresentation made by an insured increases an insurance company's risk of loss, as would authorize insurance company to deny a claim for benefits, is a question of law for the court. West's T.C.A. § 56-7-103.

**[12] Appeal and Error ⚷931(1)**
30k931(1) Most Cited Cases

**[12] Appeal and Error ⚷931(2)**
30k931(2) Most Cited Cases
Determinations of whether an insured intentionally misrepresented information, as would authorize insurance company to deny a claim for benefits, are questions of fact entitled to a presumption of correctness on appeal, but determinations of whether a particular misrepresentation made by an insured increases an insurance company's risk of loss are questions of no that are not entitled to such presumption. West's T.C.A. § 56-7-103.

**[13] Appeal and Error ⚷893(1)**
30k893(1) Most Cited Cases
Trial court's conclusion that insured's misrepresentations did not increase insurance company's risk of loss would be reviewed de novo. Rules App.Proc., Rule 13(d).

**[14] Insurance ⚷2958**
217k2958 Most Cited Cases
A misrepresentation in an application for insurance increases the insurance company's risk of loss, as would authorize insurance company to deny a claim for benefits, if it naturally and reasonably influences the judgment of the insurer in making the contract. West's T.C.A. § 56-7-103.

**[15] Insurance ⚷2958**
217k2958 Most Cited Cases
A misrepresentation in an application for insurance need not involve a hazard that actually produced the loss in question in order to be found to have increased the insurance company's risk of loss, as would authorize insurance company to deny a claim for benefits. West's T.C.A. § 56-7-103.

**[16] Insurance ⚷2958**
217k2958 Most Cited Cases
Courts may use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss, for purposes of determining if insured made misrepresentations that increased the insurer's risk of loss. West's T.C.A. § 56-7-103.

**[17] Insurance ⚷2958**
217k2958 Most Cited Cases

**[17] Insurance ⚷2960**
217k2960 Most Cited Cases
To deny coverage based on a misrepresentation the insured made that increased the insurer's risk of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

loss, a finding that the insurer would not have issued the policy had the truth been disclosed is unnecessary; a showing that the insurer was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss. West's T.C.A. § 56-7-103.

**[18] Insurance ⚷2958**
217k2958 Most Cited Cases
Statute authorizing an insurance company to deny a claim for benefits if the insured made misrepresentations that increased the insurer's risk of loss does not require a "material" increase in the risk of loss; the correct inquiry is simply whether the misrepresentation increased the insurance company's risk of loss. West's T.C.A. § 56-7-103.

**[19] Insurance ⚷3001**
217k3001 Most Cited Cases
Insured's failure to disclose his conviction for driving under the influence (DUI) was a misrepresentation that increased insurer's risk of loss, and thus insurer was within its statutory rights to decline to pay benefits under life insurance policy; one of insurer's underwriters testified that insured's truthful disclosure of his DUI conviction, by itself, would have resulted in an increased premium and that the DUI conviction, in combination with insured's medical conditions, could very well have caused the insurer to decline to insure him. West's T.C.A. § 56-7-103.

**[20] Insurance ⚷3001**
217k3001 Most Cited Cases
Failure of insured and his wife to read the application or other forms connected to the application for life insurance policy before they signed them did not insulate them from consequences of misrepresentation that increased insurer's risk of loss, authorizing insurer to deny claim for benefits. West's T.C.A. § 56-7-103.

**[21] Insurance ⚷2959**
217k2959 Most Cited Cases
The failure to read an application for insurance does not insulate an applicant from errors or omissions in a signed application.

**[22] Contracts ⚷93(2)**
95k93(2) Most Cited Cases
A party's signature binds him or her as matter of law to the representations in the signed document.
***586** Robert B. Littleton and David L. Johnson, Nashville, Tennessee, for the appellant, Tennessee Farmers Life Reassurance Company.

Clinton H. Swafford, Winchester, Tennessee, for the appellee, Neva June Smith.

WILLIAM C. KOCH, Jr., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, Jr., JJ., joined.

OPINION

WILLIAM C. KOCH, Jr., P.J., M.S.

This appeal involves a dispute between an insurance company and the widow of a deceased policyholder. Following the policyholder's death, the insurance company declined to honor the policy because it had ascertained that the policyholder's application for insurance contained misrepresentations regarding matters that, if known, would have affected its decision to issue the policy. The policyholder's widow filed suit in the Chancery Court for Franklin County to force the company to honor the policy. Following a bench trial, the trial court found that the policyholder had made misrepresentations on his application but that these misrepresentations did not increase the insurance company's risk of loss. Accordingly, the trial court ordered ***587** the insurance company to pay the policyholder's widow and estate $115,000. The insurance company has appealed. We have determined that the evidence does not support the trial court's conclusion that the policyholder's misrepresentations did not increase the insurance company's risk of loss.

**I.**

John Wayne Smith and Neva June Smith operated a chicken farm in Decherd, Tennessee for many years. In 1993, when Mr. Smith was approximately 52 years old, they decided to purchase insurance on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Mr. Smith's life as a hedge against their business debt. They discussed this insurance with an agent of Tennessee Farmers Life Reassurance Company (Tennessee Farmers). After Tennessee Farmers informed them that it was unable to offer the type of insurance the Smiths were looking for, they purchased a life insurance policy from another company.

In 1999 John Spence, a Tennessee Farmers agent, contacted the Smiths to tell them that he could provide them with similar insurance coverage at a lower premium. The Smiths decided to replace their existing insurance policy with a Tennessee Farmers policy. On June 1, 1999, Mr. Spence filled out and Mr. Smith signed an application for a ten year level term life insurance policy. [FN1]

FN1. Mr. Spence made several errors when he filled out the application. He failed to note that the policy being purchased would replace an existing insurance policy, and he erroneously noted that Mr. Smith had Tennessee Farmers automobile insurance. There is no evidence that these oversights affected the Smiths' decision to purchase the insurance policy at issue in this case.

During the required medical examination on August 7, 1999, the examining nurse asked Mr. Smith questions and recorded his answers on a form that Mr. Smith later signed. Among the questions Mr. Smith was asked were "Have you ever [b]een arrested and/or treated for any alcohol or drug related problems?" and "In the past 2 years have you ... had a [driver's] license revoked or suspended ... ?" Mr. Smith answered "no" to each of these questions, even though his driver's license had been suspended in 1998 as a result of a DUI conviction. Based on Mr. Smith's application and medical examination, Tennessee Farmers issued Mr. Smith a $115,000 life insurance policy with a "preferred rating" that became effective on August 9, 1999.

Mr. Smith died from a heart attack on June 12, 2001, and thereafter, Ms. Smith filed a claim with Tennessee Farmers. Because Mr. Smith's death occurred within two years of the effective date of his life insurance policy, Tennessee Farmers opened an investigation into Ms. Smith's claim. [FN2] Tennessee Farmers reviewed Mr. Smith's medical records and also interviewed Ms. Smith. The investigation revealed that Mr. Smith had not been truthful in his answers during the medical examination on August 7, 1999.

FN2. The policy contained a two-year "Incontestable Clause," after which Tennessee Farmers would be contractually prevented from contesting payment of most claims. Tennessee Farmers customarily investigates all claims that occur within the contestable time frame.

Tennessee Farmers informed Ms. Smith of the results of its investigation in a letter dated August 17, 2001. The company explained:

Based on information provided by you, we obtained copies of his [Mr. Smith's] medical records from Dr. Karen Tidmore, Dr. Nicholas Petrochko, Dr. Dewey Hood, and Southern Tennessee ***588** Medical Center. These records provide details of some significant medical problems that your husband did not reveal to us.

According to medical records received from Dr. Karen A. Tidmore your husband had been diagnosed with chronic obstructive pulmonary disease and peptic ulcer disease. The records from Southern Tennessee Medical Center also contain details of his being treated for peptic ulcer disease and possible bleeding ulcer. These records also state that he was drinking 2 quarts of beer per day. Dr. Tidmore also had made note of alcohol use several times. In the statement given by you, you said that he had been arrested for driving under the influence. According to information we have received, this occurred in 1998.

If we had been aware of his arrest for DUI, we would have automatically applied a substandard rating on his policy, which would have been an extra charge of $3.50 per thousand dollars of insurance for 2 years. Additionally, if we had been aware of his peptic ulcer disease, significant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

alcohol use, and chronic obstructive pulmonary disease, we would have ordered additional medical information. The best offer we could have made would have been a very high substandard rate, which would have required a substantial increase in his premium. For his policy to have then become in effect he would have had to accept our counteroffer and paid the higher premium. It is very likely, with additional medical information, we would not have been able to insure your husband at all.

Accordingly, Tennessee Farmers informed Ms. Smith that it was contesting her claim but that it would return the $1,774.52 in premiums that had been paid on the policy.

On September 30, 2002, Ms. Smith, as beneficiary of the policy and representative of Mr. Smith's estate, filed suit against Tennessee Farmers in the Chancery Court for Franklin County seeking to recover $115,000 in insurance benefits. Tennessee Farmers defended on the ground that it had a right to deny the claim under Tenn.Code Ann. § 56-7-103 (2000) because Mr. Smith had made misrepresentations that had increased its risk of loss. Following a bench trial, the trial court found that Mr. Smith had, in fact, made misrepresentations in his application materials. However, the trial court also concluded that these misrepresentations had not increased Tennessee Farmers' risk of loss and, therefore, that Ms. Smith was entitled to recover $115,000 in benefits available under the policy. Tennessee Farmers has appealed.

**II.**

[1][2] The standards this court uses to review the results of bench trials are well-settled. With regard to a trial court's findings of fact, we will review the record de novo and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." We will also give great weight to a trial court's factual findings that rest on determinations of credibility. *In re Estate of Walton,* 950 S.W.2d 956, 959 (Tenn.1997); *B & G Constr., Inc. v. Polk,* 37 S.W.3d 462, 465 (Tenn.Ct.App.2000). If, however, the trial court has not made a specific finding of fact on a particular matter, we will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn.1997).

[3][4] Reviewing findings of fact under Tenn. R.App. P. 13(d) requires an appellate court to weigh the evidence to determine in which party's favor the weight of ***589** the aggregated evidence falls. There is a "reasonable probability" that a proposition is true when there is more evidence in its favor than there is against it. Thus, the prevailing party is the one in whose favor the evidentiary scale tips, no matter how slightly. *Parks Props. v. Maury County,* 70 S.W.3d 735, 741 (Tenn.Ct.App.2001); *Realty Shop, Inc. v. RR Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn.Ct.App.1999).

[5][6][7] Tenn. R.App. P. 13(d)'s presumption of correctness requires appellate courts to defer to a trial court's findings of fact. *Fell v. Rambo,* 36 S.W.3d 837, 846 (Tenn.Ct.App.2000). Because of the presumption, an appellate court is bound to leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. *Parks Props. v. Maury County,* 70 S.W.3d at 742. Thus, for the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn.Ct.App.2000).

[8] The presumption of correctness in Tenn. R.App. P. 13(d) applies only to findings of fact, not to conclusions of law. Accordingly, appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues. *Johnson v. Johnson,* 37 S.W.3d 892, 894 (Tenn.2001); *Nutt v. Champion Int'l Corp.,* 980 S.W.2d 365, 367 (Tenn.1998); *Knox County Educ. Ass'n v. Knox County Bd. of Educ.,* 60 S.W.3d 65,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

71 (Tenn.Ct.App.2001); *Placencia v. Placencia,* 48 S.W.3d 732, 734 (Tenn.Ct.App.2000).

[9][10][11][12] Tenn.Code Ann. § 56-7-103 authorizes an insurance company to deny a claim for benefits in two circumstances--if the insured made intentional misrepresentations on the application for insurance or if the insured made misrepresentations that increased the insurer's risk of loss. In the context of a bench trial, determining whether an insured intentionally misrepresented information is a question of fact. *Womack v. Blue Cross and Blue Shield of Tenn.,* 593 S.W.2d 294, 295 (Tenn.1980); *State Farm Gen. Ins. Co. v. Wood,* 1 S.W.3d 658, 661 n. 5 (Tenn.Ct.App.1999). However, determining whether a particular misrepresentation increases an insurance company's risk of loss is a question of law for the court. *Broyles v. Ford Life Ins. Co.,* 594 S.W.2d 691, 693 (Tenn.1980); *Vermont Mut. Ins. Co. v. Chiu,* 21 S.W.3d 232, 235 (Tenn.Ct.App.2000). Therefore, the former determinations are entitled to a presumption of correctness on appeal but not the latter.

[13] The trial court stopped short of finding that Mr. Smith's misrepresentations and omissions were intentional. [FN3] Instead, it based its decision on its conclusion that Mr. Smith's misrepresentations did not increase Tennessee Farmers' risk of loss. Therefore, in accordance with Tenn. R.App. P. 13(d), we must review the record de novo without affording the trial court's conclusion a presumption of correctness.

FN3. The trial court speculated that Mr. Smith could have been confused by the questions which asked about arrests for alcohol related problems but not specifically about arrests for driving while intoxicated or which asked about suspended or revoked driver's licenses rather than restricted licenses such as the one that Mr. Smith was issued following his DUI conviction.

**III.**

As we begin our legal analysis, we are not unmindful of the unfortunate circumstances ***590** presented in this case. It is not lost on us that Mr. Smith already had life insurance that was not contestable and that the policy at issue in this case replaced that insurance. We also understand that Mr. Smith's death occurred less than two months before the policy at issue in this case would have become uncontestable. These circumstances, however, cannot color the application of the law to the facts of this case.

**A.**

[14][15] Tenn.Code Ann. § 56-7-103 authorizes an insurance company to deny a claim if the insured obtains the policy after misrepresenting a matter that increased the company's risk of loss. A misrepresentation in an application for insurance increases the insurance company's risk of loss if it naturally and reasonably influences the judgment of the insurer in making the contract. *Vermont Mut. Ins. Co. v. Chiu,* 21 S.W.3d at 235; *Sine v. Tennessee Farmers Mut. Ins. Co.,* 861 S.W.2d 838, 839 (Tenn.Ct.App.1993); *Seaton v. National Grange Mut. Ins. Co.,* 732 S.W.2d 288, 288-89 (Tenn.Ct.App.1987). It need not involve a hazard that actually produced the loss in question. *Loyd v. Farmers Mut. Fire Ins. Co.,* 838 S.W.2d 542, 545 (Tenn.Ct.App.1992).

[16][17] The courts may use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss. *Johnson v. State Farm Life Ins. Co.,* 633 S.W.2d 484, 487 (Tenn.Ct.App.1981). Additionally, the courts frequently rely on the testimony of insurance company representatives to establish how truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy. *See, e.g., Bagwell v. Canal Ins. Co.,* 663 F.2d 710, 712 (6th Cir.1981); *Vermont Mut. Ins. Co. v. Chiu,* 21 S.W.3d at 235. A finding that the insurer would not have issued the policy had the truth been disclosed is unnecessary; a showing that the insurer was denied information that it, in good

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss. *Vermont Mut. Ins. Co. v. Chiu,* 21 S.W.3d at 235; *Loyd v. Farmers Mut. Fire Ins. Co.,* 838 S.W.2d at 545.

**B.**

[18] The trial court's findings reflect that its decision was incorrectly based on whether Mr. Smith's misrepresentations were "sufficient to materially increase the risk of loss to the insurance carrier." [FN4] While other courts have used the "materially increase the risk of loss" phrasing, [FN5] Tenn.Code Ann. § 56-7-103 does not require a "material" increase in the risk of loss before an insurance claim can be rejected. It is the misrepresentation that must be material, and the statute clearly states that a misrepresentation will not be deemed material unless it increases the risk of loss to the insurer. Therefore, the correct inquiry in cases involving Tenn.Code Ann. § 56-7-103 is simply whether ***591** the misrepresentation increased the insurance company's risk of loss.

FN4. The trial court stated: "So it boils down to whether his [Mr. Smith's] failure to disclose his D.U.I. in Marion County would be sufficient to materially increase the risk of loss to the insurance carrier such as would void this policy and require me then to grant judgment for the insurance carrier in this particular case."

FN5. *See, e.g., Seaton v. National Grange Mut. Ins. Co.,* 732 S.W.2d at 288; *Sloop v. Mut. of Omaha Ins. Co.,* 55 Tenn.App. 656, 663- 64, 404 S.W.2d 265, 268 (1965).

[19] One of Tennessee Farmers' underwriters testified that Mr. Smith's truthful disclosure of his DUI conviction, by itself, would have resulted in an increased premium. [FN6] The underwriter also testified that the DUI conviction, in combination with Mr. Smith's medical conditions, could very well have caused the company to decline to insure him. The underwriter alluded to the fact that persons with DUI convictions have a higher risk of death, especially deaths caused by automobile accidents. This conclusion is, as we phrased it in *Vermont Mut. Ins. Co. v. Chiu,* 21 S.W.3d at 237, a matter of common sense.

FN6. Ms. Smith notes correctly that, according to the same Tennessee Farmers policies discussed by the underwriter, Mr. Smith's life insurance policy should have had a higher rate due to the fact that he was an admitted smoker. This fact is irrelevant, however, to the question of whether Mr. Smith's omission resulted in a higher risk of loss to the insurer. Ms. Smith is not entitled to rely on the possibility that Tennessee Farmers might have mistakenly issued a standard rate policy even if it had known of the DUI, and such a mistake would not be evidence that the insurer did not consider the issue in question to increase its risk of loss.

Thus, based on our de novo review of the evidence, we find that the record contains sufficient evidence to support a conclusion that the disclosure of Mr. Smith's DUI conviction would have naturally and reasonably influenced Tennessee Farmers' decision regarding the issuance of his life insurance policy. It follows that Mr. Smith's failure to disclose his DUI conviction is a misrepresentation that increased Tennessee Farmers' risk of loss for the purpose of Tenn.Code Ann. § 56-7-103 and, therefore, that Tennessee Farmers was well within its statutory rights to decline to pay benefits under the policy to Ms. Smith.

**IV.**

[20][21][22] Ms. Smith seeks to buffer the effect of Tenn.Code Ann. § 56-7-103 on her claim by pointing out that neither she nor Mr. Smith read the applications or other forms connected to the application for Mr. Smith's insurance policy before they signed them. [FN7] We have addressed the "but I didn't read it" defense many times before, and the law in Tennessee on this issue has been long settled. The failure to read an application for insurance does not insulate an applicant from errors

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

or omissions in a signed application. A party's signature binds him or her as matter of law to the representations in the signed document. *Beasley v. Metropolitan Life Ins. Co.*, 190 Tenn. 227, 232, 229 S.W.2d 146, 148 (1950). *Giles v. Allstate Ins. Co., Inc.*, 871 S.W.2d 154, 156 (Tenn.Ct.App.1993); *Montgomery v. Reserve Life Ins.*, 585 S.W.2d 620, 622 (Tenn.App.1979).

FN7. Ms. Smith has never claimed that Mr. Smith answered the questions fully and truthfully and that Mr. Spence or the nurse recorded his answers incorrectly. Even if she had, Tenn.Code Ann. § 56-7-103 would still have applied as long as Mr. Smith thereafter signed the application filled out by the agent. *McPherson v. Fortis Ins. Co.*, No. M2003-00485-COA-R3-CV, 2004 WL 1123529, at *4-7 (Tenn. Ct.App. Jan 12, 2004) (No Tenn. R.App. P. 11 application filed). However, the outcome could have been different had Mr. Smith signed a blank application that was later filled out by the insurance agent. *Bland v. Allstate Ins. Co.*, 944 S.W.2d 372, 375-78 (Tenn.Ct.App.1996); *Berryhill v. Mut. Benefit Health and Accident Ass'n*, 37 Tenn.App. 303, 306-07, 262 S.W.2d 878, 879- 80 (1953).

**V.**

We reverse the judgment and remand the case to the trial court with directions ***592** to enter a judgment in favor of Tennessee Farmers Life Reassurance Company and for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal to Neva June Smith for which execution, if necessary, may issue.

210 S.W.3d 584

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Court of Appeals of Georgia, Division No. 2.
SOVEREIGN CAMP, W. O. W.,
v.
BEARD.
**No. 11551.**

Jan. 20, 1921.

Syllabus by the Court.

"Where both parties to a cause consent that the court direct a verdict, though each moves that it be directed in his own favor, neither party can complain that the court erred in directing a verdict, though the losing party may except upon the ground that the verdict directed is erroneous." Mims v. Johnson, 8 Ga. App. 850, 70 S. E. 139 (1).

"Any verbal or written representations of facts by the assured to induce the acceptance of the risk, if material, must be true, or the policy is void." Civ. Code 1910, § 2480. The questions presented for determination in such a case are: (1) Was the representation false? (2) Was it made in reference to a matter material to the risk? Mutual Life Ins. Co. v. Bolton, 22 Ga. App. 566, 569, 96 S. E. 442. The trial judge, by consent of parties, having passed on these questions, and the effect of his judgment being that any misrepresentation of fact made by the insured related only to immaterial matters and did not constitute any misstatements affecting the risk, and there being sufficient evidence to support such finding, the verdict will not be disturbed.

The act of 1914 "for the regulation and control of benefit societies," etc. (Acts 1914, p. 100, § 4; Park's Code, § 2564), does not change the law, so as to render a certificate of insurance issued by a fraternal benefit society null and void on account of untrue, but immaterial, statements contained in the application; and this is the rule, although the statements contained in the application are warranted to be true, with the further proviso that, if any of them be untrue, the policy shall become null and void.

Error from Superior Court, Colquitt County; W. E. Thomas, Judge.

Action by Ruby Beard against the Sovereign Camp, Woodmen of the World. Judgment for plaintiff, and defendant brings error. Affirmed.

West Headnotes

**Insurance 2986**
217k2986 Most Cited Cases
(Formerly 217k723)
Acts 1914, p. 100, Park's Ann.Civ.Code, § 2564t, for the regulation and control of benefit societies, does not render inapplicable to fraternal societies the provision of Civ.Code 1910, § 2480, requiring representations to be material in order to invalidate the policy, though the statements are warranted to be true, with a proviso that, if they are untrue, the policy shall be null and void.

**Appeal and Error 997(3)**
30k997(3) Most Cited Cases
Where, in an action on an insurance policy, both parties moved for a directed verdict, the trial judge's finding, on sufficient evidence, that any misrepresentation by insured related only to immaterial matters, will not be disturbed.

**Insurance 2955**
217k2955 Most Cited Cases
(Formerly 217k253)
Under Civ.Code 1910, § 2480, providing that representations by assured, if material, must be true, the questions are whether the representation was false, and whether it was made in reference to a matter material to the risk.

**Trial 177**
388k177 Most Cited Cases
Where both parties to a cause consent that the judge direct a verdict, though each moves that it be directed in his favor, neither party can complain that the court erred in directing the verdict, though the losing party may except on the ground that the verdict which was directed was erroneous.

***629** L. L. Moore, of Moultrie, for plaintiff in error.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

D. P. Starr and Shipp & Kline, all of Moultrie, for defendant in error.

JENKINS, P. J.

[1][2][3] Only the third division of the syllabus requires elaboration, since counsel for plaintiff in error, in their admirable brief, properly concede that the judge who determined the case, sitting as both court and jury, was authorized by the evidence to find that the misstatements of fact in the application were not of a material character, and that in view of the decisions of the Supreme Court and of this court, if this contract is to be construed by the same rules of law as contracts of insurance issued by old-line companies are, the judgment below should be affirmed. As was said by Judge Pottle speaking for this court in the case of AEtna Life Ins. Co. v. Conway, 11 Ga. App. 557, 560, 75 S. E. 915, 917:

> "It is immaterial whether the statements made by the applicant for insurance were representations or warranties, since the effect of such statements must be determined by the provisions of these sections of the Code [sections 2479, 2480, 2481, 2483] without reference to whether the statements may be regarded technically as representations or as warranties."

The argument of counsel is therefore based entirely upon the contention that the recent statute above referred to, when taken in connection with the terms of the contract here involved, imposes a different rule, and that in the case of a fraternal benefit society the warranties must be strictly enforced as such, whether material or immaterial, and consequently it did not lie within the province of the court below to pass upon the question of their materiality. Section 4 of the act of 1914 (Park's Code, § 2564t), which counsel rely upon, is, indeed, broad and sweeping in the language used, and provides as follows:

> "Except as herein provided, such societies shall be governed by this act, and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relation with the state, but for every other purpose, and no law hereafter enacted shall apply to them, unless they be expressly designated therein."

The only question for us to determine is therefore whether the intention of the lawmakers was thus to repeal by implication the Code sections relating to the construction of ***630** insurance contracts, wherein it is provided that in order that a policy of insurance shall be avoided on account of misstatements made by the insured, they shall be such as shall materially affect the risk, or whether their intention was, as the caption of the act itself provides, merely to pass--

> "An act for the regulation and control of all fraternal benefit societies; to prescribe their admission into this state; the amount of license fee for each society; how they shall be excluded from the state; and for other purposes."

In referring to the caption, we, of course, are not attempting to pass upon any constitutional question, since no such question has been raised, and its determination, if it had been, would lie beyond the jurisdiction of this court, but are seeking only to interpret the true intention of the Legislature in enacting the statute referred to. Civil Code 1910, § 4 (9). In so doing--

> "Nothing is better settled than that the intention of the General Assembly in the passage of a law is derivable as well from the caption of the act as from the body of the act itself." Wimberley v. Ga. So. & Fla. R. Co., 5 Ga. App. 263, 265, 63 S. E. 29.

Although the section quoted says in terms that such societies shall be governed by this act exclusively, "not only in governmental relations with the state, but for every other purpose," we think that the true intent and purpose of the act manifestly relates to their duties and responsibilities as a corporate entity in their relations to the state, to the public, and to its members, and that it was in no wise intended to legislate upon the construction of contracts. In other words the *society* shall be *governed* by the act exclusively, all of its duties as a corporate entity, both to the state in its governmental function, to its members, and to the public being distinctly and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

independently laid down and defined; but it is not the purpose or intent of the act to legislate upon the construction of its certificates of indemnity, and thus inferentially or by implication to repeal, so far as these societies are concerned, the settled rules of construction governing insurance contracts. We feel the better assured as to the correctness of this view by reference to the similar construction given by the Supreme Court to corresponding provisions of law, which while not identical or so broad in the language used, were nevertheless similar in purpose and meaning. At the time the decision in Fraternal Life, etc., Ass'n v. Evans, 140 Ga. 284, 78 S. E. 915, was rendered, a section of the law governing fraternal benefit societies provided that--

> "Such orders or associations shall be governed by this section, and shall be exempt from the provisions of the insurance laws of this state."

In that case it was clearly recognized by the Supreme Court that sections 2479, 2480, 2481 and 2483 of the Civil Code (1910), governing the construction of insurance contracts, remained applicable to such societies. The similar and corresponding section now under consideration is merely an amplification of the provision for the regulation and government of such corporate entities, pertaining to their duties and responsibilities to the state, the public, and their members, and was not intended to change radically or materially the provision previously enacted, or to legislate inferentially or by implication upon the settled rule of construction governing contracts of insurance.

Judgment affirmed.

STEPHENS and HILL, JJ., concur.

26 Ga.App. 130, 105 S.E. 629

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.