C
West's General Laws of Rhode Island Annotated Currentness
Title 27. Insurance
Chapter 4. Life Insurance Policies and Reserves

**§ 27-4-10. Effect of misstatements in application for policy**

No misstatement made in procuring a policy of life insurance shall be deemed material or render the policy void unless this matter represented shall have actually contributed to the contingency or event on which the policy is to become due and payable. Whether this matter represented contributed to that contingency or event shall be a question for the jury.

P.L. 1931, ch. 1757, § 12.

**Codifications:** G.L. 1938, ch. 153, § 12.

LIBRARY REFERENCES

Insurance 3003(4), 3016.
Westlaw Key Number Searches: 217k3003(4); 217k3016.
C.J.S. Insurance §§ 283, 582, 702, 713, 773, 778.

RESEARCH REFERENCES

**Treatises and Practice Aids**

1 Causes of Action 2d 1, Causes of Action for Nonpayment of Life Insurance Benefits in Which Fraud, Misrepresentation, or Factual Misstatement Regarding Insured's State of Health is Raised as Defense.

NOTES OF DECISIONS

**Jury instructions 5**
**Life and health insurance policies 1**
**Materiality of false statements 3**
**Pleadings 4**
**Questions for jury 6**
**Review 7**
**Surrender of policy 2**
1. Life and health insurance policies

Many misrepresentations on an application for accident and health insurance are material as a matter of law, but they cannot be such if the only ailments not mentioned are of so slight and temporary a character that jury could reasonably find that the representations were "substantially", even if not "literally", true. Bouley v. Continental Cas. Co., 1972, 454 F.2d 85. Insurance 3003(9)

Where an application for life insurance recites that the answers and statements in this application "are warranted to be full, complete, and true," and that, if they are not so, the policy issued thereon "shall be null and void," and also stipulates that the answers which it contains are parts of the policy, the policy and the application together

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

constitute the written agreement of insurance, and both the insured and the beneficiary under the policy are bound by the warranty of the answers and statements in the application, although some of the questions and answers are of such a character as to preclude the idea that the parties intended to make them the subject of warranty. Hubbard v. Mutual Reserve Fund Life Ass'n, 1900, 100 F. 719, 40 C.C.A. 665. Insurance 🔑 3003(2)

The question in an application for life insurance, as to how long since the applicant consulted or was attended by a physician, refers to a consultation about some substantial injury or ailment, and not concerning a slight and temporary indisposition. Hubbard v. Mutual Reserve Fund Life Ass'n, 1900, 100 F. 719, 40 C.C.A. 665. Insurance 🔑 3003(10)

The question, "How long since you consulted or were attended by a physician?" was answered by an applicant for life insurance, "Not since childhood," and because of such answer no answer was recorded to the question, "For what disease or ailment?" In an action on the policy, the evidence showed that within five years preceding the application the applicant complained to a physician of having suffered from priapism for a number of years, and that he was treated for such supposed difficulty continuously for over six months, when he was sent to another physician, who pronounced his trouble dyspepsia, and prescribed for him accordingly. Held that, conceding that the applicant as a matter of fact was free from each disease, the evidence showed a breach of the warranty given in the application, that the applicant had not "consulted" physicians for a supposed persistent ailment, nor been "attended" nor "prescribed for" by them. Hubbard v. Mutual Reserve Fund Life Ass'n, 1900, 100 F. 719, 40 C.C.A. 665. Insurance 🔑 3003(10)

Where an applicant for life insurance represents in his application that he has never had any illness, local disease, or infirmity, and that he has not since childhood consulted or been attended by a physician for any disease or ailment, when in fact he was supposed to suffer for a number of years from priapism, and has consulted physicians, and been prescribed for for such ailment, he may be guilty of such fraudulent design in obtaining the insurance as will avoid the policy. Hubbard v. Mutual Reserve Fund Life Ass'n, 1900, 100 F. 719, 40 C.C.A. 665. Insurance 🔑 3003(11)

Statute providing for situations involving misstatements in application for policy of life insurance was controlling where decedent had denied in his application that he had been treated or examined within five years but had in fact been examined and treated on several occasions within two months of date of his application. Gen.Laws 1956, § 27-4-10. Paradise v. John Hancock Mut. Life Ins. Co., 108 R.I. 700, 279 A.2d 453 (1971). Insurance 🔑 3003(10)

Under Rhode Island common law, life policy procured by material false representation by insured which he warranted to be true is voidable by insurer, irrespective of whether representation contributed to insured's death. Columbian Nat. Life Ins. Co. v. Industrial Trust Co., 57 R.I. 325, 190 A. 13 (1937), reargument denied 57 R.I. 468, 190 A. 787. Insurance 🔑 3001

Difference exists between obtaining contract of life insurance through misrepresentation of fact, and existence of that fact as condition upon which contract is dependent. Gen.Laws 1923, c. 342, § 53. Chorney v. Metropolitan Life Ins. Co., 54 R.I. 261, 172 A. 392 (1934). Insurance 🔑 3003(2)

Statutory provision relating to effect of misstatement made in procuring life insurance policy held inapplicable to condition contained in policy. Gen.Laws 1923, c. 342, § 53. Chorney v. Metropolitan Life Ins. Co., 54 R.I. 261, 172 A. 392 (1934). Insurance 🔑 3001

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

False answers by applicant for insurance to questions respecting his present health were material misstatements. Prudential Ins. Co. of America v. Tanenbaum, 53 R.I. 355, 167 A. 147 (1933). Insurance 3003(4)

One affected with cancer is not in "sound health" within meaning of insurance contract containing warranty as to sound health. Prudential Ins. Co. of America v. Tanenbaum, 53 R.I. 355, 167 A. 147 (1933). Insurance 3003(11)

In application for life policy, representation as to material fact which is false in fact need not have been fraudulently made. Prudential Ins. Co. of America v. Tanenbaum, 53 R.I. 355, 167 A. 147 (1933). Insurance 3001

Laws 1902, p. 75, c. 997, amending Gen.Laws 1896, c. 244, and providing that no misstatement made in procuring a policy of life insurance shall be deemed material, or avoid the policy, unless the matter thus represented shall have actually contributed to the contingency or event on which the policy is to become due and payable, requiring submission of such fact to the jury, and providing that it shall take effect on and after its passage, is not retroactive, and does not apply to contracts existing at the time of its enactment. Petition for reargument, 1902, 51 A. 1049, 24 R.I. 7, 96 Am.St.Rep. 698, granted. Leonard v. State Mut. Life Assur. Co., 27 R.I. 121, 61 A. 52, 114 Am.St.Rep. 30 (1905). Insurance 3003(4)

An infant is not bound by his warranties in an application for life insurance, and the company cannot set up the falsity of such warranties as a defence to a suit on a policy by the beneficiary. O'Rourke v. John Hancock Mut. Life Ins. Co., 23 R.I. 457, 50 A. 834, 91 Am.St.Rep. 643 (1902). Insurance 3001

Where an application for insurance provided that the medical examiner should put certain questions, and fill out the answers in his own handwriting, and the answers to such questions were not signed by the insured after they were reduced to writing, it cannot be contended that there was a contradiction of a warranty in that part of the application, since there was nothing to show that the answers as written were the insured's, and hence no warranty existed. Leonard v. New England Mut. Life Ins. Co., 22 R.I. 519, 48 A. 808 (1901). Insurance 3003(7)

Where an applicant for a life insurance policy warrants his answers to be true, and the policy provides that the answers in the application shall form a part of the contract and that any untrue answer will render the policy void, the answers of the applicant in relation to the extent of his use of intoxicating liquors and to hemorrhages are warranties. Sweeney v. Metropolitan Life Ins. Co., 19 R.I. 171, 36 A. 9, 61 Am.St.Rep. 751 (1896). Insurance 3003(11); Insurance 3019

A life insurance company issued a policy dated July 6, 1892, on an application which contained the following questions and answers: "Has this company ever refused to issue a policy on this life?" Answer, "No." "Have any members of your immediate family (parents, brothers or sisters) ever been or are they now affected with consumption? If so, state age, and relationship, and whether living or dead." Answer, "Yes, mother died of phthisis, aged 37." The facts were that the applicant had made an application to the company for insurance April 3, 1892, which had been rejected; that the applicant's sister had died of consumption June 25, 1891, at the age of about 21 years, and that the applicant knew the cause of her sister's death. The policy expressly made the application a part thereof, and it was also stipulated therein and in the application that if the statements or answers in the application were in any respect untrue, the policy should be void. The assured died of consumption or phthisis August 23, 1893, at the age of about 23 years. Held, that the policy was void. Jerrett v. John Hancock Mut. Life Ins. Co., 18 R.I. 754, 30 A. 793 (1894). Insurance 3003(11)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

An application for a life insurance provided that the policy should be void if the statements in the application were untrue, and declared that the applicant knew that untrue answers or suppressions of facts as to her health would vitiate the policy. Held, that where both the mother and sister of an applicant, who afterwards died of consumption, had died of that disease, the applicant's failure to mention the sister's death avoided the policy, though the doctor who examined her had previously rejected her, during her mother's life, as being liable to contagion from the latter. Jerrett v. John Hancock Mut. Life Ins. Co., 18 R.I. 754, 30 A. 793 (1894). Insurance 🔑 3001

2. Surrender of policy

Where the application for accident policy required the applicant to say whether an accident policy had ever been canceled, it would not have been a misrepresentation to state that none had been canceled where one had been voluntarily surrendered; there being a distinction between cancellation and surrender. Wells v. Great Eastern Cas. Co., 40 R.I. 222, 100 A. 395 (1917), reargument denied 40 R.I. 320, 101 A. 6. Insurance 🔑 3023

3. Materiality of false statements

Gen.Laws 1909, c. 292, § 53, as to materiality of false statements, does not apply to statement that insured's accident policy had never been canceled by another company, and if such statement is false, even though not material, the policy is voidable at the insurer's option. Wells v. Great Eastern Cas. Co., 40 R.I. 222, 100 A. 395 (1917), reargument denied 40 R.I. 320, 101 A. 6. Insurance 🔑 3023

4. Pleadings

It was an abuse of discretion for trial court to refuse to allow mortgagee, against which mortgagor's surviving spouse had brought action based on mortgagee's failure to take action to compel creditor life insurer to pay under the policy, to amend its answer so as to remove its admission that the insurer was liable to mortgagee under the policy in order to allow mortgagee to produce evidence to demonstrate that, because of misrepresentations made in application by mortgagor, insurer was not liable under the policy. Gen.Laws 1956, § 27- 4-10; Rules of Civil Procedure, rule 15(a). Ricard v. John Hancock Mut. Life Ins. Co., 113 R.I. 528, 324 A.2d 671 (1974). Mortgages 🔑 124

If the applicant falsely stated that no policy of accident insurance had been canceled, the application making such statement a warranty, the insurer under plea of general issue might show the fraud of such statement, and that it had canceled the policy during insured's life. Wells v. Great Eastern Cas. Co., 40 R.I. 222, 100 A. 395 (1917), reargument denied 40 R.I. 320, 101 A. 6. Insurance 🔑 3571

5. Jury instructions

In action on group life creditor policy, where jury was instructed according to controlling statute providing for situations involving misstatements in application, refusal of requested instruction that it was necessary, to defeat recovery on policy, for deceased to have had knowledge of his serious condition at time he applied for insurance coverage was not error. Gen.Laws 1956, § 27-4-10. Paradise v. John Hancock Mut. Life Ins. Co., 108 R.I. 700, 279 A.2d 453 (1971). Insurance 🔑 3579

6. Questions for jury

Where question of whether mortgagor's alleged representation in application for creditor life insurance contributed to the death of the mortgagor was for a jury, question of whether mortgagee's failure to sue insurer

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

was a breach of its implied promise to mortgagor and whether such breach resulted in loss to mortgagor's surviving spouse also presented a question of fact for a jury. Gen.Laws 1956, § 27-4-10; Rules of Civil Procedure, rule 50(a). Ricard v. John Hancock Mut. Life Ins. Co., 113 R.I. 528, 324 A.2d 671 (1974). Mortgages 🔑 124

In action upon a life policy providing that the insurer incurred no liability until policy had been delivered and the first premium had actually been paid to and accepted by the insurer during the lifetime and continued insurability of the applicant, whether continuing representations of the insured that he had not visited doctors or hospitals nor had an electrocardiogram taken contributed to the contingency upon which the policy became due and payable was question for jury. Gen.Laws 1956, § 27-4-10. Madsen v. Metropolitan Life Ins. Co., 90 R.I. 176, 156 A.2d 203 (1959). Insurance 🔑 3016

7. Review

An application for life insurance provided that the medical examiner should put the questions and fill out the answers in his own handwriting. The jury found that the insured did not sign the application after it was reduced to writing. On motion for judgment non obstante on the ground that by this finding it appeared that there was no sufficient application as a consideration for the policy, wherefore the defendant was entitled to judgment upon the general issue: Held, that as the answers were required to be written by the company's own officer, making him the agent of the company for this purpose, and as the jury found that the answers were not written in before the application was signed, there was no finding that the answers as written were the answers of the insured, hence no contradiction of a warranty, for there was no warranty; and as the answers were given to the only person authorized to receive them, and there was nothing to show that the answers as given were false, the verdict was correct. Leonard v. New England Mut. Life Ins. Co., 22 R.I. 519, 48 A. 808 (1901). Insurance 🔑 3003(1)

Gen. Laws, 1956, § 27-4-10, **RI ST § 27-4-10**

Current with all 2007 legislation

Copr. © 2007 Thomson/West.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

West's General Laws of Rhode Island Annotated Currentness
Title 27. Insurance
Chapter 25. Rhode Island Fraternal Code

**→§ 27-25-23. Exemptions**

Except as provided in this chapter, societies shall be governed by this chapter and are exempt from all other insurance law provisions unless they are expressly designated therein, or unless it is specifically made applicable by this chapter.

P.L. 1984, ch. 201, § 2.

LIBRARY REFERENCES

Insurance 1236.
Westlaw Key Number Search: 217k1236.

Gen. Laws, 1956, § 27-25-23, **RI ST** § **27-25-23**

Current with all 2007 legislation

Copr. © 2007 Thomson/West.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

West's General Laws of Rhode Island Annotated Currentness
Title 27. Insurance
Chapter 25. Rhode Island Fraternal Code

**→ § 27-25-34. Unfair methods of competition and unfair and deceptive acts and practices**

Every society authorized to do business in this state shall be subject to the laws and regulations of the commissioner of insurance prohibiting unfair trade practices, including laws and regulations concerning discrimination, rebating, and misrepresentation; provided, however, that nothing in the provisions shall be construed as applying to or affecting the right of any society to determine its eligibility requirements for membership, or be construed as applying to or affecting the offering of benefits exclusively to members or persons eligible for membership in the society by a subsidiary corporation or affiliated organization of the society.

P.L. 1984, ch. 201, § 2.

CROSS REFERENCES

Civil Rights Act, see § 42-112-1 et seq.

Fair Employment Practices Act, see § 28-5-1 et seq.

LIBRARY REFERENCES

Insurance 1244(2).
Westlaw Key Number Search: 217k1244(2).

Gen. Laws, 1956, § 27-25-34, **RI ST § 27-25-34**

Current with all 2007 legislation

Copr. © 2007 Thomson/West.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C
West's General Laws of Rhode Island Annotated Currentness
Title 27. Insurance
Chapter 29. Unfair Competition and Practices

**→ § 27-29-4. Unfair methods of competition and unfair or deceptive acts or practices defined**

The following are defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

(1) Misrepresentations and false advertising of policies or contracts. Making, issuing, circulating, or causing to be made, issued, or circulated, any estimate, illustration, circular, or statement, sales presentation, omission, or comparison misrepresenting the terms of any policy issued or to be issued or the benefits, conditions, or advantages promised by any policy or the dividends or share of the surplus to be received on any policy, or making any false or misleading statement as to the dividends or share of surplus previously paid on any policy, or making any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, or using any name or title of any policy or class of policies misrepresenting the true nature of that policy or class of policies, or making any misrepresentation to any policyholder insured in any company including any intentional misquote of a premium rate, for the purpose of inducing or tending to induce the policyholder to lapse, forfeit, or surrender his or her insurance, or misrepresenting for the purpose of effecting a pledge or assignment of or effecting a loan against any policy, or misrepresenting any policy as being share or stock;

(2) False information and advertising generally. Making, publishing, disseminating, circulating, or placing before the public or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public in a newspaper, magazine, or other publication, or in the form of a notice, circular, pamphlet, letter, or poster, or over any radio or television station, or in any other way, an advertisement, announcement, or statement containing any assertion, representation, or statement with respect to the business of insurance or with respect to any person in the conduct of his or her insurance business which is untrue, deceptive, or misleading;

(3) Defamation. Making, publishing, disseminating, or circulating, directly or indirectly, or aiding, abetting, or encouraging the making, publishing, disseminating, or circulating of any oral or written statement or any pamphlet, circular, article of literature which is false or maliciously critical of or derogatory to the financial condition of an insurer, and which is calculated to injure any person engaged in the business of insurance;

(4) Boycott, coercion, and intimidation. Entering into any agreement to commit, or by any concerted action committing, any act of boycott, coercion, or intimidation resulting in or tending to result in unreasonable restraint of, or monopoly in, the business of insurance;

(5)(i) False financial statements. Knowingly filing with any supervisory or other public official, or knowingly making, publishing, disseminating, circulating, or delivering to any person, or placing before the public or causing directly or indirectly, to be made, published, disseminated, circulated, delivered to any person, or placed before the public any false material statement of financial condition of an insurer; or

(ii) Knowingly making any false entry of a material fact in any book, report, or statement of any insurer or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

knowingly omitting to make a true entry of any material fact pertaining to the business of the insurer in any book, report, or statement of the insurer;

(6) Stock operations and advisory board contracts. Issuing or delivering or permitting agents, officers, or employees to issue or deliver agency company stock or other capital stock, or benefit certificates or shares in any common law corporation, or securities of any special or advisory board contracts or other contracts of any kind promising returns and profits as an inducement to insurance;

(7)(i) Unfair discrimination. Making or permitting any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any policy of life insurance or of life annuity or in the dividends or other benefits payable on any such policy or life annuity, or in any other of the terms and conditions of the policy; or

(ii) Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable under any policy or contract, or in any of the terms or conditions of that policy, or in any other manner;

(iii) Making or permitting any unfair discrimination between individuals or risks of the same class and of essentially the same hazards by refusing to issue, refusing to renew, canceling, or limiting the amount of insurance coverage on a property or casualty risk because of the geographic location of the risk, unless:

(A) The refusal, cancellation, or limitation is for a business purpose that is not a pretext for unfair discrimination; or

(B) The refusal, cancellation, or limitation is required by law or regulation;

(iv) Making or permitting any unfair discrimination between individuals or risks of the same class and of essentially the same hazards by refusing to issue, refusing to renew, canceling, or limiting the amount of insurance coverage on a residential property risk, or the personal property contained in the residential property risk, because of the age of the residential property, unless:

(A) The refusal, cancellation, or limitation is for a business purpose that is not a pretext for unfair discrimination; or

(B) The refusal, cancellation, or limitation is required by law or regulation;

(v) Refusing to insure, refusing to continue to insure, or limiting the amount of coverage available to an individual because of the sex or marital status of the individual; nothing in this subsection shall prohibit an insurer from taking marital status into account for the purpose of defining persons eligible for dependent benefits; or

(vi) To terminate, or to modify coverage, or to refuse to issue or refuse to renew any property or casualty policy solely because the applicant or insured or any employee of either is mentally or physically impaired; provided, that this subsection shall not apply to accident and health insurance sold by a casualty insurer and, provided that this subsection shall not be interpreted to modify any other provision of law relating to the termination, modification, issuance or renewal of any insurance policy or contract;

(8)(i) Rebates. Except as otherwise expressly provided by law, knowingly permitting or offering to make or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

making any policy or agreement as to the policy other than as plainly expressed in the policy issued on it, or paying or allowing or giving or offering to pay, allow, or give, directly or indirectly, as inducement to the policy, any rebate of premiums payable on the policy, or any special favor or advantage in the dividends or other benefits on the policy, or any valuable consideration or inducement not specified in the policy, or giving, selling, or purchasing or offering to give, sell, or purchase as inducement to the policy, or in connection with the policy, any stocks, bonds, or other securities of any insurance company or other corporation, association, or partnership, or any dividends or profits accrued on the security, or anything of value not specified in the policy;

(ii) Nothing in subdivision (7) of this section or paragraph (i) of this subdivision shall be construed as including within the definition of discrimination or rebates any of the following practices:

(A) In the case of any contract of life insurance policies or life annuity, annuities paying bonuses to policyholders or abating their premiums in whole or in part out of surplus accumulated from nonparticipating insurance; provided, that any bonuses or abatement of premiums shall be fair and equitable to policyholders and for the best interests of the company and its policyholders;

(B) In the case of life insurance policies issued on the industrial debit plan, making allowance to policyholders who have continuously for a specified period made premium payments directly to an office of the insurer in an amount which fairly represents the saving in collection expenses; and

(C) Readjustment of the rate of premium for a group insurance policy based on the loss or expense experience under it, at the end of the first or any subsequent policy year of insurance under the policy, which may be made retroactive only for the policy year;

(9)(i) Free choice of insurance producer or insurer. When any person, firm, or corporation engaged in the business of lending money on the security of real or personal property, or in the business of negotiating, purchasing, selling, or holding loans on the security of real property, or in the business of building, selling, or financing the sale or purchase of real property, or any trustee, director, officer, agent, or other employee of that person, firm, or corporation, requires that property insurance be procured for the property, the borrower, debtor, or purchaser shall have free choice of insurance producer and insurer through or by which the insurance is to be placed or written, subject only to the right of the builder, creditor, lender, or seller:

(A) To require evidence, to be produced at a reasonable time prior to commencement or renewal of risk, that the insurance providing reasonable coverage has been obtained in an amount equal to the amount required by the builder, creditor, lender, or seller;

(B) To require insurance in an insurer authorized to do business and having a licensed resident insurance producer agent in this state; and

(C) To refuse to accept insurance in a particular insurer on reasonable grounds related to solvency;

(ii) When any contractor or subcontractor is required to procure a surety bond or policy of insurance with respect to any building or construction contract which is about to be, or which has been bid or entered into, the contractor or subcontractor shall have free choice of insurance producer and insurer through or by which the surety bond or insurance is to be written; provided, that the owner or contractor shall have the right: (A) to require evidence, to be produced at a reasonable time prior to commencement or renewal of risk, that the insurance providing reasonable coverage has been obtained in an amount equal to the amount required by the builder, creditor, lender, or seller; (B) to require insurance in an insurer authorized to do business and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

having a licensed resident insurance producer in this state; and (C) to refuse to accept insurance in a particular insurer on reasonable grounds related to solvency; provided, that the owner or contractor shall have the right to approve the form, sufficiency, or manner of execution of the surety bond or policy or insurance furnished by the insurance company or insurance producer selected by the contractor or subcontractor;

(iii) No person who lends money or extends credit may:

(A) Solicit insurance for the protection of real property after a person indicates interest in securing a first mortgage credit extension until that person has received a commitment in writing from the lender as to a loan or credit extension;

(B) Unreasonably reject a policy furnished by the borrower for the protection of the property securing the creditor lien. A rejection shall not be deemed unreasonable if it is based on reasonable standards, uniformly applied, relating to the extent of coverage required and the financial soundness and the services of an insurer. The standards shall not discriminate against any particular type of insurer, nor shall the standards call for rejection of a policy because it contains coverage in addition to that required in the credit transaction;

(C) Require that any borrower, mortgagor, purchaser, insurer, or insurance producer pay a separate charge, in connection with the handling of any policy required as security for a loan on real estate, or pay a separate charge to substitute the policy of one insurer for that of another. This subsection does not include the interest that may be charged on premium loans or premium advancements in accordance with the terms of the loan or credit document;

(D) Use or disclose, without the prior written consent of the borrower, mortgagor, or purchaser taken at a time other than the making of the loan or extension of credit, information relative to a policy which is required by the credit transaction, for the purpose of replacing the insurance; or

(E) Require any procedures or conditions of duly licensed insurance producers or insurers not customarily required of those insurance producers or insurers affiliated or in any way connected with the person who lends money or extends credit;

(iv) Every person who lends money or extends credit and who solicits insurance on real and personal property subject to paragraph (iii) of this subdivision shall explain to the borrower in writing that the insurance related to the credit extension may be purchased from an insurer or insurance producer of the borrower's choice, subject only to the lender's right to reject a given insurer or insurance producer as provided in paragraph (iii)(B) of this subdivision. Compliance with disclosures as to insurance required by truth in lending laws or comparable state laws shall be compliance with this subsection;

(v) This requirement for a commitment shall not apply in cases where the premium for the required insurance is to be financed as part of the loan or extension of credit involving personal property transactions;

(vi) The commissioner shall have the power to examine and investigate those insurance related activities of any person or insurer that the commissioner believes may be in violation of this section. Any affected person may submit to the commissioner a complaint or material pertinent to the enforcement of this section;

(vii) Nothing in this section shall prevent a person who lends money or extends credit from placing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

insurance on real or personal property in the event the mortgagor, borrower, or purchaser has failed to provide required insurance in accordance with the terms of the loan or credit document;

(viii) Nothing contained in this section shall apply to credit life or credit accident and health insurance.

(10) Notice of free choice of insurance producer or insurer. Every debtor, borrower, or purchaser of property with respect to which insurance of any kind on the property is required in connection with a debt or loan secured by the property or in connection with the sale of the property, shall be informed in writing by the builder, creditor, lender, or seller, of his or her right of free choice in the selection of the insurance producer and insurer through or by which the insurance is to be placed. There shall be no interference, either directly or indirectly, with the borrower's, debtor's, or purchaser's free choice of an insurance procedure and of an insurer which complies with the requirements of this section, and the builder, creditor, lender, seller, owner, or contractor shall not refuse the policy tendered by the borrower, debtor, purchaser, contractor, or subcontractor. Upon notice of any refusal of the tendered policy, the insurance commissioner shall order the builder, creditor, lender, seller, owner, or contractor to accept the tendered policy, if the commissioner determines that the refusal is not in accordance with the requirements of this section. Failure to comply with an order of the insurance commissioner shall be deemed a violation of this section;

(11) Using insurance information to detriment of another. Whenever the instrument requires that the purchaser, mortgagor, or borrower furnish insurance of any kind on real property being conveyed or is collateral security to a loan, the mortgagee, vendor, or lender shall refrain from disclosing or using any and all insurance information to his or her or its own advantage and to the detriment of either the borrower, purchaser, mortgagor, insurance company, or agency complying with the requirements relating to insurance;

(12) Prohibited group enrollments. No insurer shall offer more than one group policy of insurance through any person unless that person is licensed, at a minimum, as an insurance producer. This prohibition shall not apply to employer-employee relationships, or to any of these enrollments;

(13) Failure to maintain complaint handling procedures. No insurer shall fail to maintain a complete record of all the complaints it received since the date of its last examination pursuant to the general laws providing for examination of insurers. This record shall indicate the total number of complaints, their classification by line of insurance, the nature of each complaint, the disposition of each complaint, and the time it took to process each complaint. For the purposes of this subsection, "complaint" means any written communication primarily expressing a grievance;

(14) Misrepresentation in insurance applications. Making false or fraudulent statements or representations on or relative to an application for a policy, for the purpose of obtaining a fee, commission, money, or other benefit from any insurers, insurance producer, or individual person; and

(15) Requiring that repairs be made to an automobile at a specified auto body repair shop or interfering with the insured's or claimant's free choice of repair facility. The insured or claimant shall be promptly informed by the insurer of his or her free choice in the selection of an auto body repair shop. Once the insured or claimant has advised the insurer that an auto body repair shop has been selected, the insurer may not recommend that a different auto body repair shop be selected to repair the automobile. An auto body repair shop may file a complaint with the department of business regulation alleging a violation of this subdivision (15). Whenever the department of business regulation has reason to believe that an insurer has violated this subdivision (15), the department shall conduct an investigation and may convene a hearing. A complaint filed by an auto body repair shop must be accompanied by a statement written and signed by the insured or claimant setting forth the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

factual basis of the complaint, and the insured or claimant must voluntarily appear and testify at any administrative proceedings on the complaint.

P.L. 1958, ch. 53, § 4; P.L. 1966, ch. 54, § 1; P.L. 1976, ch. 201, § 1; P.L. 1993, ch. 180, § 24; P.L. 1997, ch. 342, § 1; P.L. 2004, ch. 488, § 1.

CROSS REFERENCES

Aiding and abetting crimes, prosecution, see § 11-1-3.

Civil Rights Act, see § 42-112-1 et seq.

Fair Employment Practices Act, see § 28-5-1 et seq.

ADMINISTRATIVE CODE REFERENCES

Life insurance solicitation, see R.I. Code R. 02 030 027.

LIBRARY REFERENCES

Insurance ⚿1560 to 1578.
Westlaw Key Number Searches: 217k1560 to 217k1578.
C.J.S. Insurance §§ 47, 91, 441.

RESEARCH REFERENCES

**Treatises and Practice Aids**

Federal Reg. of Real Estate & Mortgage Lending § 13:43, Rhode Island.

NOTES OF DECISIONS

**Equal protection of laws 1**
**Insurance coverage 3**
**Insurance premiums 2**
**Title insurance 4**

1. Equal protection of laws

University providing basic medical care, and health insurer providing supplemental coverage, had not violated equal protection clause even though fees were same for male and female students, and females incurred obstetrical and gynecological expenses in effect subsidized by male students; there had been no allegation of intentional discrimination, as required for equal protection claim. U.S.C.A. Const.Amend. 14. Lee v. Life Ins. Co. of North America, 1993, 829 F.Supp. 529, affirmed 23 F.3d 14, certiorari denied 115 S.Ct. 427, 513 U.S. 964, 130 L.Ed.2d 340. Colleges And Universities ⚿ 9.20(1); Constitutional Law ⚿ 224(2); Insurance ⚿ 1521

Statutes relating to rates charged subscribers of nonprofit hospital and medical service corporations did not result in unreasonable discrimination against such corporations in favor of competing commercial insurers and did not deprive the corporations of equal protection of the laws. Gen.Laws 1956, §§ 27-19-6, 27-20-6; U.S.C.A.Const. Amend. 14. Hospital Service Corp. of Rhode Island v. West, 112 R.I. 164, 308 A.2d 489 (1973).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Constitutional Law 🔑 242; Insurance 🔑 1518

2. Insurance premiums

An agent of a life insurance company who was entitled to a commission of fifty per cent. of the first premium on every policy issued by the company for insurance effected by him, and whose duty it was to collect the first premium, effected insurance on a life for which the company issued a policy. The annual premium on the policy was of the same amount as would have been required for any other person of the same age, sex, condition of health, and hope of longevity. The agent took the promissory note of the insured payable to himself as agent for one half of the premium, and relinquished the residue in consideration of the insured's agreement to furnish the agent with the names of persons to be insured. The agent accounted with the company for its part of the premium. Held, that the transaction was not in violation of Pub.Laws R.I. ch. 673, which prohibits life insurance companies organized or doing business in this State from discriminating as to premiums charged on policies. Quigg v. Coffy, 18 R.I. 757, 30 A. 794 (1894). Insurance 🔑 1567; Insurance 🔑 2005

3. Insurance coverage

Insurance applicant established a prima facie claim of discrimination by health insurer under the ADA, where insurer refused to offer applicant an insurance policy based on his pre-existing medical conditions. Americans with Disabilities Act of 1990, § 302, 42 U.S.C.A. § 12182. Marques v. Harvard Pilgrim Healthcare of New England, Inc., 883 A.2d 742 (2005). Civil Rights 🔑 1042; Insurance 🔑 1518

The safe harbor provision permits those insurers which are subject to the ADA to make otherwise discriminatory insurance decisions, including the denial of coverage, if those decisions are based upon either sound actuarial principles or reasonably anticipated experience. ; Americans with Disabilities Act of 1990, § 501, 42 U.S.C.A. § 12201(c). Marques v. Harvard Pilgrim Healthcare of New England, Inc., 883 A.2d 742 (2005). Civil Rights 🔑 1042; Insurance 🔑 1518

4. Title insurance

Mortgage company's business policy of refusing to accept title insurance policies issued by particular title insurer in connection with home mortgage loans did not violate Rhode Island statute prohibiting any interference either directly or indirectly with borrower's, debtor's or purchaser's free choice of agent and of insurer; Rhode Island statute referred to property insurance, not title insurance. R.I. Gen.Laws 1956, § 27-29-4(10). Mortgage Guarantee & Title Co. v. Commonwealth Mortg. Co., Inc., 1990, 730 F.Supp. 469, affirmed 915 F.2d 1557. Consumer Credit 🔑 4

Gen. Laws, 1956, § 27-29-4, **RI ST** § **27-29-4**

Current with all 2007 legislation

Copr. © 2007 Thomson/West.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.