# TAB B

STATE OR RHODE ISLAND
KENT, SC

SUPERIOR COURT

COLLEEN LITTLEFIELD, individually and as Executrix of the Estate of Michael Littlefield, and as Parent and Next Best Friend of ELIZABETH LITTLEFIELD, a Minor
Plaintiffs

Vs

CA No. 05-0334

JOHN ABADIER, M.D. a/k/a WAHID J. ABADIER, M.D., and KENT GENERAL & VASCULAR SURGEONS, INC.

**PLAINTIFF, COLLEEN LITTLEFIELD AS EXECUTRIX OF THE ESTATE OF MICHAEL LITTLEFIELD ANSWERS TO INTERROGATORIES PROPOUNDED BY DEFENDANT, KENT GENERAL & VASCULAR SURGEONS, INC.**

1. Please identify yourself, stating your relationship to Michael Littlefield, your full name, social security number, date of birth, residential address, business address and occupation, and the date, court and docket number of your appointment as Executrix of the Estate of Michael Littlefield.

ANSWER 1: I am the widow of Michael Littlefield, Colleen Martha Littlefield, Objection to providing social security number as it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence: Date of Birth: 58; Address: REDACTED, North Kingstown, Rhode Island 02852; Occupation: Homemaker. Appointment: July 20, 2005, Probate Court of the Town of North Kingstown, # 6097.

2. Please state Michael Littlefield's date of birth, social security number, residential address, business address and occupation.

ANSWER 2: Date of Birth: /69; Social Security No: Address: REDACTED North Kingstown, Rhode Island 02852;

3. Please describe Michael Littlefield's educational background, stating the name, location, and dates of attendance at each educational institution, a description of his course of studies, and the degree, honors, or other recognitions, if any, he received.

ANSWER 3:

**REDACTED**

4. Please describe Michael Littlefield's complete employment history, if any, stating as to each job:

a. the dates of his employment;
b. the name and address of his employer;
c. his job title;
d. a description of his job responsibilities;
e. his hourly, weekly or monthly rate of compensation;
f. the average number of hours per week he worked; and
g. his reason for leaving each job.

ANSWER 4:

**REDACTED**

5. Please describe Michael Littlefield's residential history for the past ten years, indicating with respect to each such residence:

a. the address;
b. the dates during which he resided at each address; and
c. the names of any other persons who resided with him at each address.

ANSWER 5: 1995-2002: t, West Warwick, RI 2002-2005, North Kingstown, Rhode Island. I resided with him during this time as did our daughter, Littlefield since her birth on , 1999.

**REDACTED**

6. If Michael Littlefield underwent or received any treatment for any mental or emotional disturbance, please state as to each such mental or emotional disturbance:

   a. the nature of the mental or emotional disturbance;
   b. the nature and extent of the treatment; and
   c. the names and addresses of each doctor, practitioner, counselor, hospital, clinic or institution treating him.

ANSWER 6: **REDACTED**

7. Please state for each occasion on which Michael Littlefield had contact with each defendant, or with anyone who you allege to be an agent or employee of any defendant:

   a. the date and time of the day of the contact;
   b. the length of time the defendant was with him;
   c. the place where the contact occurred;
   d. the purpose of the contact;
   e. the substance of any conversations with the defendant, or any alleged agent or employee of the defendant, indication who said what to whom;
   f. the nature and extent of each examination that was performed on him and the identity of each alleged agent or employee of the defendant who performed an examination; and
   g. the nature and extent of any treatment or instructions given to the plaintiff by any defendant or by any alleged agent or employee of the defendant.

ANSWER 7: Objection. This interrogatory is overly broad and unduly burdensome, in that it seeks information concerning numerous contacts with the Defendants over an unlimited period of time. Without waiving this objects, I would suspect that my husband had numerous contacts with the agents or employees of Defendant, Kent General & Vascular Surgeons during his hernia surgery at Kent County Hospital on April 24, 2003, and at other times while receiving follow up and additional treatment. Presumably, information concerning such contacts would be as noted in Michael Littlefield's medical records at Kent County Hospital.

In addition, my husband Michael detailed some contacts that he had with Defendant in his deposition which was taken on April 14, 2005. In that deposition my husband testified to the following:

On April 17, Michael saw Dr. Abadier, who examined him and told him that he had a hernia on his right and on his left side and that he needed to make an appointment for a bilateral hernia repair.

When he came for surgery on April 24, 2003, Dr. Abadier told him that he was running behind, he had had complication with his first patient, and that he would be wheeling Michael in for surgery within twenty (20) minutes. When he woke up after surgery, Dr. Abadier came to explain that he was unable to do his left side and that the surgery was difficult because he usually puts in a balloon that separates tissue and allows him to go in with another instrument which unrolls the mesh repair over the tear. He said he had done a lot of dissecting. Dr. Abadier said that was the only way to get at it and that it was complicated enough where he just had to wrap him up and call it a day because there was no way he was even going to get to the other side at least not on that day. The next day, Michael complained he was black and blue, he was given a shot of Demerol. The next time he saw Dr. Abadier, it was approximately May 1. Dr. Abadier indicated there was a lot of bruising there. Michael told him that he was in a lot of pain, and that he had never heard of laparoscopic surgery having so much black and blue.

On or about May 15, Michael returned. Dr. Abadier assured him that everything was okay and that he would have some setbacks, but that the repair was intact.

The next visit, about June 2, Dr. Abadier apparently told Michael that there was a lot of swelling. He offered him more Vicodan. This was for the pain that Michael told him was in his lower right hand quadrant.

On or about June 12, Michael apparently told Dr. Abadier that he could not do his job, physically. Dr. Abadier told him that he looked better and seemed to be resting more. Michael said he was resting but not working. Dr. Abadier reassured him that he was okay.

Following the CT Scan on June 18, 2003, Michael received a call from Dr. Abadier's secretary. He was told that they were concerned and noted that the result of the CT scan showed that there was either an abscess or a mass there. He was told that they were immediately going to set up another test which was going to be a Barium Enema X-ray test.

Following the Barium Enema X-ray test, Dr. Abadier spoke with Michael and told him there was a pocket of dried blood, that it was because of some bleeding in and around the area of the surgery and that it was okay and there was nothing to worry about and that it would pass through, that it was not a problem.

Michael last saw Dr. Abadier on or about August 25, 2003. He told Dr. Abadier that it still felt as though there was a baseball there in his abdomen. Dr. Abadier told

Michael that the repair was still intact and that there was nothing for him to worry about. I reserve the right to supplement this answer as discovery develops.

8. Please describe in complete detail the specific conduct by each of the defendants that you contend was not in keeping with good medical practice.

ANSWER 8: Objection to the extent that this interrogatory seeks and/or otherwise requires expert medical opinion. Without waiving this objection, and answering as a layperson, it is my understanding that Dr. Abadier failed to properly follow up on my husband, Michael Littlefield's medical condition and imaging studies and medical complaints in June of 2003 and thereafter. As a result, my husband's appendiceal cancer was not diagnosed until 2004, in which time his cancer had spread and was not treatable, resulting in his death. I reserve the right to supplement this answer as discovery develops.

9. Please state all facts upon which you base your claim that the conduct of each defendant caused or contributed to some injury to Michael Littlefield.

ANSWER 9: Answering as a layperson, it is my understanding that given my husband's complaints as well as the results of the June 18, 2003 CT Scan and June 20, 2003, Barium Enema, further work up and testing was necessary to diagnosis my husband's condition. It is further my understanding that, had Dr. Abadier properly undertaken further testing and examination, my husband's cancer would have been earlier diagnosed. See also my answer to Interrogatory No. 8 above. I reserve the right to supplement this answer as discovery develops.

10. Please state the name, current address or location of each person who was a witness to or has any knowledge of, any occurrence, event, fact, circumstance or discoverable matters upon which your claim is based or founded, specifying to what occurrence, event, fact, circumstance, or discoverable matters each such person was a witness or had knowledge.

ANSWER 10: Objection to the extent that this interrogatory seeks and/or requests information which is protected by the attorney work product privilege as to experts not yet retained. Without waiving this objection, in addition to the medical providers from Kent County Hospital, Rhode Island Hospital, University Medicine Foundation as identified in the medical records. **REDACTED** In addition, my husband gave a deposition on April 14, 2005, prior to his death. I reserve the right to supplement this answer as discovery develops.

11. For each occasion on which Michael Littlefield was convicted and/or sentenced on conviction for a misdemeanor within the past five (5) years, or convicted and/or sentenced on conviction for a felony within the past ten (10) years, please state:

a. the nature of the crime of which Michael Littlefield was convicted;
b. the date of the conviction:
c. the court, title and docket number of any such conviction; and.
d. the sentence imposed.

ANSWER 11:

**REDACTED**

12. If Michael Littlefield participated in or overheard any conversations involving any representative of any defendant concerning the alleged occurrence, please state as to each such conversation:

a. the name and address of each person involved in the conversation;
b. the date, time and place of the conversation; and
c. the content or substance of the conversation indication who said what to whom.

ANSWER 12: Please see my answer to Interrogatory No. 7 above as well as the deposition of Michael Littlefield.

13. If Michael Littlefield was afflicted with or suffered from any medical condition, injury, illness or disability during the ten years prior to the alleged occurrence or since the time of the alleged occurrence, please state:

a. a full and complete description of any such condition, including its nature, extent and severity;
b. the duration of time, in months and days, that he had any such condition prior to the alleged occurrence;
c. the nature and extent of any treatment or care he received from any such condition;
d. the names and addresses of any doctor or hospital involved with any examination, treatment, or care of any such condition; and the dates of each and every such examination, treatment or care for any such condition.

ANSWER 13: Answering as a layperson, my husband saw the following medical providers:

1. Kent County Hospital
455 Tollgate Road
Warwick, RI 02886
ER Visit 8/13/00

Admission: 4/24/03 (including pre-op records)

ER Visit 5/21/03

ER Visit 1/25/01

ER Visit 3/17/02

ER Visit 3/30/03

ER Visit 4/13/03

ER Visit 9/26/03

ER Visit 9/28/03

X-ray report 8/13/00, 9/27/03

2. Dr. Wahid Abadier, M.D.
Kent General & Vascular Surgeons, Inc.
455 Tollgate Road
Warwick, RI 02886
4-7-03- 8/25/03

3. Dr. Plakyil Joseph, M.D.
Hematology & Oncology Associates
1220 Pontiac Avenue
Cranston, RI 02920
8/24/04-5/25/05

4. Pierre Manzo, M.D.
University Medical Foundation
1 James P. Murphy Hwy.
West Warwick, RI 02893
9/5/00-4/13/05

5. Rhode Island Medical Imaging
5840 Post Road
East Greenwich, RI 02818
2/12/04 (C-Spine report)
6/19/04 (MRI,C-Spine )
7/27/04 (CT Abdomen)

8/26/04, CT Chest, MRI Abdomen

6. Thomas K Shanian, M.D.
593 Eddy Street
Providence, RI 02903
7/28/04-8/26/04

7. Rhode Island Hospital
593 Eddy Street
Providence, RI 02903
ER Visit, & Admission
5/6/95-5/7/95, 5/12/95 clinic

Liver Biopsy 8/13/04

Port Placement 9/10/04

Removal of Port 1/18/05

8. Stephen Jarrow, D.C.
5840 Post Road
East Greenwich, RI 02818
2/12/04 x-ray
3/2/04 office visit

9. Dr. Randal Updegrove
University Orthopedics, Inc.
1351 South County Trail
East Greenwich, RI 02818
6/18/04

14. Please give an account, itemized as fully and as carefully as you can, of all losses and expenses which were incurred by Michael Littlefield or on his behalf as a result of the alleged occurrence stating in your answer those losses or expenses which are attributable to hospitals, doctors, nursing, medicines, medical appliances, lost wages, and any other damages.

ANSWER 14: Objection to the extent that this interrogatory seeks and/or otherwise requires expert medical and economic opinion. Without waiving this objection, following his diagnosis of cancer in 2004, my husband, Michael incurred medical bills as follows:

**REDACTED**

REDACTED

REDACTED

As to the lost wages, I am in the process of compiling further information concerning my husband's earnings and will supplement this answer at such time as this information is obtained. As to lost earning capacity and future lost wages, Plaintiff agrees to timely supplement this interrogatory at such time as wage and earning information has been compiled and an expert economist has been retained. Experts have not yet been retained.

15. If you expect to call any expert witnesses at trial, please state for each such expert:

   a. the expert's name, address, and occupation;
   b. the subject matter on which the expert is expected to testify;
   c. the substance of all facts and opinions to which the expert is expected to testify;
   d. a summary of the grounds for each such opinion of the expert.

ANSWER 15: No determination has been as to experts who are expected to testify. Plaintiff agrees to timely supplement this interrogatory answer as such time as experts have been determined and retained.

16. Please describe in complete detail all payments that were received from any health care insurer or collateral source for treatment provided to Michael Littlefield, indicating with respect to each, the payer, the payee, the amount of payment, the date of payment and a brief description of the medical services for which payment was made.

ANSWER 16:

REDACTED

17. Please identify all diaries, journals, notebooks, calendars, films, videotapes or other documents prepared by Michael Littlefield or on his behalf, other than materials which were specifically prepared at the request of plaintiffs' counsel, which record, reflect or relate to the events at issue in this case, and the injuries the plaintiff alleges were caused by the defendants.

ANSWER 17: Objection to the extent that this interrogatory seeks and/or otherwise requests information which is protected by the attorney work product privilege. Without waiving this objection, my husband, Michael Littlefield's videotaped deposition was taken on April 14, 2005. Counsel for Defendant Abadier was in attendance at that deposition. Notes utilized at that deposition by Michael are in the possession of my attorneys. Otherwise, to the best of my knowledge, none other than Michael Littlefield's medical records.

18. Please describe in complete detail all other claims, demand or lawsuits that have been brought by or on behalf of Michael Littlefield against any person or entity for damages or injuries of any sort within the ten (10) years prior to his death, identifying in your answer the parties to the claim or lawsuit, the nature of the claim, the injuries and damages for which compensation was sought, and the outcome or resolution of the claim or lawsuit.

ANSWER 18:

**REDACTED**

19. Identify any and all learned or authoritative treatises or other items you intend to use or rely upon at trial and, in doing so, specify the book, journal, or other publication, together with dates and pages of such publications upon which reliance will be placed.

ANSWER 19: Objection to the extent that this interrogatory seeks and/or otherwise requests information which is protected by the attorney work product privilege. Plaintiff further objects to this interrogatory to the extent that it seeks information concerning counsel's mental impressions, cross-examination and trial strategy. Without waiving these objections, to the extent that Plaintiff will use and/or rely upon learned treatises at trial as free standing, affirmative evidence, (not for cross examination) Plaintiff agrees to timely provide information responsive to this interrogatory in accordance with RIGL §9-19-30. Plaintiff has not yet determined which if any learned treatises will be so introduced into evidence.

20. If you are bringing a claim based on lack of informed consent, please:

a. list each medical risk of harm attendant to the treatment in question;
b. describe all bases for your contention that such risks were material, indication in your answer the incidence or frequency with which such risks reportedly occur;

c. identify which of the listed risks you contend would have persuaded you to refuse to consent to the treatment in question, and explain why that is the case; and,

d. describe all facts upon which you rely to support your contention that the defendant failed to advise or inform you of each risk.

ANSWER 20: Answering as a layperson, my husband was not advised of the risks that he had another condition including cancer, which required treatment at the time he was seeing Dr. Abadier. Had my husband been advised of the risks and alternatives of treatment, namely, doing further follow-up workup and diagnostic testing, he would have consented to obtain said tests in order to further work up and diagnosis his condition in 2003. I reserve the right to supplement this answer as discovery develops and at such time as experts are retained. Experts have not yet been retained.

Plaintiff,

COLLEEN LITTLEFIELD as Executrix of the Estate of MICHAEL LITTLEFIELD

STATE OF RHODE ISLAND
COUNTY OF

Subscribed and sworn to before me this 31st day of ______, 2007.

Notary Public

My commission Expires: 6/30/09

As to objections:

Vincent D. Morgera, Esquire (#2052)
Mark H. Grimm, Esquire (#3130)
VINCENT D. MORGERA, Ltd.
One Turks Head Place, Ste. 1110
Providence, RI 02903
Phone: 401-456-0300
Fax: 401-421-3005

**CERTIFICATION**

I hereby certify that I mailed a true copy of the within to the following counsel of record on the 18 day of August, 2007, by First Class Mail, postage prepaid.

John J. Barton, Esquire
Andrea Coletta, Attorney
TAYLOR, DUANE, BARTON & GILMAN, LLP
10 Dorrance Street Suite 700
Providence, RI 02903

Seth Bowerman, Esquire
BOWERMAN & TAYLOR GUERTIN
One Turks Head Place Suite 1300
Providence, RI 02903

[signature]