# TAB C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COLLEEN LITTLEFIELD
Plaintiff
vs. C.A. No. 06-157
CATHOLIC FAMILY LIFE INSURANCE COMPANY
Defendant

30(b)(6) DEPOSITION OF KIM INGRAM
Tuesday, February 20, 2007
9:30 a.m.
Law Office of Karen Davidson
One Ship Street
Providence, Rhode Island

---------- Ellen Zappia, RPR ----------
Capitol Court Reporting, Inc.
931 Jefferson Boulevard, Suite 2003
Warwick, Rhode Island 02886
(401) 739.3600



INDEX

WITNESS: KIM INGRAM


EXAMINATION BY: PAGE:
Ms. Davidson 4

PLAINTIFF'S EXHIBITS MARKED: PAGE:
1 Subpoena 29
2 Document Bates No. CFL000587-588 89
3 Document Bates No. CFL000553-557 96
4 Document Bates No. CFL000454-455 97
5 Document Bates No. CFL000091 98
6 Document Bates No. CFL000079,83 82,71,72,85,86,87,84,73 99
7 Document Bates No. CFL00014 107
8 Document Bates No. DC00005 108
9 Document Bates No. DC00001-4 108
10 Document Bates No. CFL000001-4 109
11 Document Bates No. CFL000006-7 114
12 Document Bates No. CFL000018-19 116
13 CFLI Illustration of Proposed Coverage 118
14 Document Bates No. CFL000076 123
15 Document Bates No. CFL000077 125
16 Document Bates No. CFL000045,46 47,48,53,54,32,33,49,50,55,51, 52,35,34,67,30,25,24,31,28,27,29, 26,38,36,43,44,41,42,39,40 125
17 Document Bates No. CFL000447,452 145
18 Document Bates No. CFL000453 148




APPEARANCES

For Plaintiff:

KAREN DAVIDSON, ESQ.

LAW OFFICE OF KAREN DAVIDSON

One Ship Street

Providence, Rhode Island 02903

For Defendant:

PATRICIA A. SULLIVAN, ESQ.

EDWARDS ANGELL PALMER & DODGE LLP

2800 Financial Plaza

Providence, Rhode Island 02903



(Proceedings commenced at 9:30 a.m.)
KIM RENEE ELIZABETH INGRAM,
after having been first duly sworn under oath, was questioned and testified as follows:
EXAMINATION BY MS. DAVIDSON:
Q. May I have your full name, please.
A. Kim Renee Elizabeth Ingram.
Q. And where do you live, Kim?
A. In Menomonee Falls, Wisconsin.
Q. And that's outside of Milwaukee?
A. Correct.
Q. And who lives with you there?
A. My husband and my daughter and my son.
Q. Could you briefly tell me what your educational background is.
A. Yes. I have an undergraduate degree from the College of Holy Cross in Worcester, Massachusetts. I have a graduate degree from Cardinal Stritch University. I have an associate's in insurance regulatory compliance. Chartered life underwriting degree. Chartered financial consultant degree. A fellowship in life insurance management degree. An associate's in customer service. Let's see. Licensed in four or five states for life,

101

Littlefield would have signed with Don Demers on August 23rd, '03?

A. Yes, this looks like that form.

Q. Authorizing you to get all and any medical information you need to determine if he should be able to get a policy?

A. Yes.

Q. And the next page is CFL 82, and basically it's the same as the first one, but it's got a copy of a check there to Catholic Family for 96.20. So is it fair to say that when you apply with an agent and fill out one of these forms you give a first payment of some sort? Is that what this is?

A. Yes.

Q. And if you look at the next page -- two of them go together, CFL 71 and 72, is this the form created by Catholic Family Life Insurance for medical examinations done by paramedicals in 2003?

A. It's a form Catholic Family used in 2003 for their parameds in the State of Rhode Island, yes.

Q. And do you know when this form was developed?

A. I don't.

Q. And this form is as a result of a medical

102

examination that Michael had with someone named Donna Carroll on behalf of CFLI, is that right?

A. Correct.

Q. And when CFLI looks at this form to determine if insurance is appropriate for someone such as Michael Littlefield, you rely on the information on this form as completed by Donna Carroll, correct?

A. When we're reviewing our selection of risk we would rely on this information on this form as completed and signed by both the proposed insured and the medical examiner. The medical examiner is just there to ask the questions. It's the proposed insured's answers that we're relying on.

Q. So the handwriting, however, is all in Donna Carroll's handwriting except in the right lower signature page which is signed by Michael Littlefield, correct?

A. Correct.

Q. And on the second page, that is the CFL 72 page, why are these sections crossed out?

A. Because she did not perform this information. You could -- she didn't perform or didn't ask this information.

103

Q. And --

A. You'd have to ask Donna Carroll about that.

Q. But would that have been because CFL instructed you not to ask that information or did she just make her own determination that she wasn't going to ask that information?

A. This is information that she as a paramed would not have been qualified to ascertain for us. So she could not have asked this information.

Q. And Michael Littlefield didn't sign this one but Donna Carroll did, correct?

A. Correct.

Q. And one of the things required in 5E is an examination of the abdomen, correct?

A. My numbers are cut off here. So is this --

MS. SULLIVAN: My copy is also cut off. I know there are many copies that are not cut off in the file.

Q. Mine is good a one. Want to look at 5E?

A. This is a paramedical exam. She would not have asked that information.

Q. So she did not ask or examine for any abnormality in the abdomen, correct?

A. No. She did not ask the questions that were

104

crossed out. She would have asked the, "Do you have pertinent information not brought out above" question.

Q. So she didn't ask any of the questions, but she answered the last one? I don't follow.

A. She didn't ask the questions that are crossed out, and I'm quite sure you could ask Donna Carroll this. The question is, "Do you have pertinent information not brought out above?" There's an answer to this question, which would indicate that she would have asked that one. It is not crossed out, and there's an indication of her note.

Q. And that's not signed by Michael Littlefield, right?

MS. SULLIVAN: Objection. Isn't this a two-part document?

MS. DAVIDSON: It is.

MS. SULLIVAN: Two-page document.

MS. DAVIDSON: It is a two-page document.

Q. I'm asking if this page, 72, is signed by Michael Littlefield.

MS. SULLIVAN: Okay.

A. Because this page comes as a one-page two-sided document, this document is signed by Mr. Littlefield.
Q. So you're saying that the document, the signature on page one applies to the page two.
A. Correct.
Q. Now, the next thing is CFL 85, 86.
A. Looks like different --
Q. The next page.
A. Okay.
Q. 86, 87. And is this -- this is a notice that agents give to prospective insureds, is that right?
MS. SULLIVAN: Hang on a minute. And we're now talking about?
MS. DAVIDSON: 85.
MS. SULLIVAN: What is a three-page form, 85 through 87.
A. This is not a complete form. There's other information that goes along with this where they do a comparison of the policies. But is this notice regarding a replacement of life insurance? It's something that the agent would have had to have given to the proposed insured to sign before we



would have even considered looking at the new application, yes.
Q. And then the following page, which is CFL 84, I think is also a part of that. It's signed on the same day, August 25th, '03.
A. This piece is not a part. The illustration disclosure is not a part of the replacement paperwork. The illustration disclosure is part of the application paperwork that's presented on -- in the illustrated policy and that's determined by plan, face amount and it has nothing to do with whether or not you're replacing. So even if you're not replacing coverage, you would have to sign this form if it was appropriate to do so for that product.
Q. And then the last page, please, 73, dated September 12th, '03, is this a request of Don Demers to submit additional information to CFLI?
A. This is the policy transmittal that comes on top of the new policy and it's a request to our agent to get the following items completed and returned to the home office.
Q. That's it for that one.
And this one, which will be number



seven. Can you tell me what this is.
(Plaintiff's Exhibit 7, was marked for identification)
A. I think this is one page, and there's other pages that aren't with this, that the agent's statement and the reasoning for recommending replacement of existing insurance. So there's -- it's a two-step process. There's a process where they have the applicant sign all of the required forms by state and the notice. And it says that take a look at this, think about this before you move on. That has to come in before we can do any underwriting in the case. And then this is a Catholic Family, please now, Mr. Agent, give us some more information about what's going on with this case and what's involved when there's replacement of a case.
Q. And what's he give as the reason for replacement?
A. "Does not" -- whatever that is, "meet" I'm guessing at some of this handwriting. This would -- I guess that the next word is "insured's" -- I can throw out a possibility of words and I would say if I was guessing, and I am, that this is "needs."



Q. So that's the reason Don Demers issued this or did this application.
MS. SULLIVAN: Objection. Go ahead.
A. This is to say that these are the reasons that you're proposing replacement of existing insurance. Existing life insurance in favor of a new life insurance policy.
(Plaintiff's Exhibit 8, was marked for identification)
Q. Looking at Exhibit 8, which is DCO 5 and asking you is this your request to EMSI to do certain work with regard to Mr. Demers?
A. This is EMSI's form. We just send them a note electronically or verbally and say we need these tests and this paramed. They generate. This is not our document. This is a document that it's generated on their side.
Q. So they create this at your request. Is that right?
A. They create the -- for their records. They do the tests, they conduct the paramedical interviews at our request.
(Plaintiff's Exhibit 9, was marked for identification)